# No. 22-2858

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

John Does 1-2, Jane Does 1-3, Jack Does 1-750, Joan Does 1-750,
*Plaintiffs-Appellants*,

v.

Kathy Hochul, in her official capacity as Governor of the State of New York, Howard A. Zucker, in his official capacity as Commissioner of the New York State Department of Health, Trinity Health, Inc., New York-Presbyterian Healthcare System, Inc., Westchester Medical Center Advanced Physician Services, P.C., as assignee of WMC Health,

*Defendants-Appellees.*

On Appeal from United States District Court for the Eastern District of New York, No. 1:21-cv-05067-AMD-TAM, Hon. Ann M. Donnelly

## JOINT APPENDIX

Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid
Liberty Counsel
P.O. Box 540773
Orlando, FL 32854
(407) 875-1776
court@lc.org
*Counsel for Appellants*

Jacqueline Phipps Polito
Eric Train
Littler Mendelson, P.C.
375 Woodcliff Dr., Ste 2D
Fairport, NY 14450
(585) 203-3400
jpolitto@littler.com
*Counsel for Trinity Health, Inc.*

Lisa M. Velazquez
Bruce A. Birenboim
Michael Gertzman
Jonathan H. Hurwitz
Gregory Laufer
Emily Vance
Paul, Weiss, Rifkind,
Warton & Garrison, P.C.
1285 Ave. of the Americas
New York, N.Y. 10019
(212) 373-3000
lvelazquez@paulweiss.com
*Counsel for N.Y.-Presbyterian Healthcare System, Inc.*

Mark Stephen Grube
N.Y. Office of Attorney General
New York, NY 10005
Mark.grube@ag.ny.gov
*Counsel for State Appellees*

Marc. A. Sittenreich
Anthony R. Prinzivalli
Garfunkel Wild, P.C.
111 Great Neck Road, Ste. 503
Great Neck, NY 11021
(516) 393-2263
mkeane@garfunkelwild.com
*Counsel for Westchester Medical Ctr Advanced Physician Services*

# **TABLE OF CONTENTS**

District Court Docket Sheet…………………………………………………...001

Dkt. 1, Verified Complaint for Temporary Restraining Order, Preliminary and Permanent Injunctive Relief, Declaratory Relief, and Damages…………………021

Dkt. 1-7, Exhibit A to Verified Complaint, Governor's Covid-19 Vaccine Mandate …………………………………………………………...…….073

Dkt. 1-8, Exhibit B to Verified Complaint, New York State Department of Health's Order for Summary Action……………………………….………077

Dkt. 1-9, Exhibit C to Verified Complaint, New York State Department of Health's Section 2.61 Rule Change……………………………...…084

Dkt. 1-10, Exhibit D to Verified Complaint, Jane Doe 2's Request for Accommodation Acceptance……………………………………...…...109

Dkt. 1-11, Exhibit E to Verified Complaint, Email Communications between Jane Doe 2 and New York-Presbyterian…………………………….……...110

Dkt. 1-12, Exhibit F to Verified Complaint, Jane Doe 1's Religious Accommodation from New York Presbyterian …………………….…...111

Dkt. 1-13, Exhibit G to Verified Complaint, New York Presbyterian's Revocation of Jane Doe 1's Religious Accommodation……………….……..113

Dkt. 1-14, Exhibit H to Verified Complaint, Westchester Advanced Physician Services Response to Jane Doe 2 Request ………………………...…...116

Dkt. 1-15, Exhibit I to Verified Complaint, Jane Doe 3 Approved Religious Accommodation from Trinity……………………………………….......118

Dkt. 1-16, Exhibit J to Verified Complaint, Trinity's Revocation of Jane Doe 3's Approved Religious Accommodation……...……..……………...……...119

Dkt. 1-17, Exhibit L to Verified Complaint, Liberty Counsel's Letter to State Defendants………………………………………………….…...120

i

Dkt. 28, Order on Motion for Temporary Restraining Order………………….128

Dkt. 35, Memorandum and Order on Motion for Temporary Restraining Order...129

Dkt. 36, Transcript of September 13, 2021 Hearing on Motion for Temporary Restraining Order………………………………………………………...133

Dkt. 81, State Defendants Notice of Motion to Dismiss…………………………215

Dkt. 83, Trinity Health Corporation Notice of Motion to Dismiss……………….217

Dkt. 84, NewYork-Presbyterian Notice of Motion to Dismiss………………..…219

Dkt. 87, Westchester Medical Center Advanced Physicians Services Notice of Motion to Dismiss ……………………………………………………………221

Dkt. 91, Memorandum and Order on Plaintiffs' Motion to Proceed Using Pseudonyms……………………………………………………………………...223

Dkt. 93, Interim Protective Order……………………………………………...243

Dkt. 101, New York-Presbyterian Notice of Supplemental Authority…...………247

Dkt. 102, New York-Presbyterian Notice of Supplemental Authority…………...247

Dkt. 103, Plaintiffs Response to Supplemental Authority………………………..250

Dkt. 104, New York-Presbyterian Response Letter……………………………...256

Dkt. 107, Notice of Appeal……………………………………………………259

Transcript of August 2, 2022 Hearing on Motions to Dismiss……………………260

APPEAL,ACO

# U.S. District Court
## Eastern District of New York (Brooklyn)
## CIVIL DOCKET FOR CASE #: 1:21-cv-05067-AMD-TAM

Does et al v. Hochul et al

Assigned to: Judge Ann M Donnelly

Referred to: Magistrate Judge Taryn A. Merkl

Cause: 42:1983 Civil Rights Act

Date Filed: 09/10/2021

Date Terminated: 09/30/2022

Jury Demand: None

Nature of Suit: 440 Civil Rights: Other

Jurisdiction: Federal Question

**Plaintiff**

**John Does**
*1-2*

represented by **Horatio G. Mihet**
Liberty Counsel
1053 Maitland Center Commons Blvd
Maitland, FL 32751
407-875-1776
Fax: 407-875-0770
Email: hmihet@lc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger Gannam**
Liberty Counsel
PO Box 540774
Orlando, FL 32854
407-875-1776
Fax: 407-875-0770
Email: rgannam@lc.org
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Joseph Schmid**
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
407-875-1776
Fax: 407-875-0770
Email: dschmid@lc.org
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jane Does**
*1-3*

represented by **Horatio G. Mihet**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Roger Gannam**
(See above for address)
*LEAD ATTORNEY*
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Daniel Joseph Schmid**
(See above for address)
*PRO HAC VICE*
*ATTORNEY TO BE NOTICED*

**Plaintiff**

**Jack Does**                                    represented by   **Horatio G. Mihet**
*1-750*                                                          (See above for address)
*TERMINATED: 04/04/2022*                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Roger Gannam**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Daniel Joseph Schmid**
                                                                 (See above for address)
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

**Plaintiff**

**Joan Does**                                    represented by   **Horatio G. Mihet**
*1-750*                                                          (See above for address)
*TERMINATED: 04/04/2022*                                        *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Roger Gannam**
                                                                 (See above for address)
                                                                 *LEAD ATTORNEY*
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

                                                                 **Daniel Joseph Schmid**
                                                                 (See above for address)
                                                                 *PRO HAC VICE*
                                                                 *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Kathy Hochul**                                 represented by   **Seth J. Farber**
*in her official capacity as Governor of the*                    N.Y.S. Office of the Attorney General
*State of New York*                                              120 Broadway

24th Floor
New York, NY 10271
212-416-8029
Fax: 212-416-6075
Email: seth.farber@ag.ny.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Howard A. Zucker**                    represented by    **Seth J. Farber**
*in his official capacity as Commissioner of*            (See above for address)
*the New York State Department of Health*                *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**Trinity Health, Inc.**                represented by    **Jacqueline Phipps Polito**
                                                         Littler Mendelson
                                                         375 Woodcliff Drive, Suite 2D
                                                         Fairport, NY 14450
                                                         585-203-3400
                                                         Fax: 585-203-3414
                                                         Email: jpolito@littler.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Erin Train**
                                                         Littler Mendelson
                                                         375 Woodcliff Dr.
                                                         Suite 2d
                                                         Fairport, NY 14450
                                                         585-203-3402
                                                         Email: etrain@littler.com
                                                         *ATTORNEY TO BE NOTICED*

**Defendant**

**New York-Presbyterian Healthcare**    represented by    **Bruce Alan Birenboim**
**System, Inc.**                                         Paul, Weiss, Rifkind, Wharton & Garrison
                                                         1285 6th Avenue
                                                         33rd Floor
                                                         New York, NY 10019
                                                         212-373-3165
                                                         Fax: 212-492-0165
                                                         Email: bbirenboim@paulweiss.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **Gregory F Laufer**
                                                         Paul Weiss Rifkind Wharton & Garrison
                                                         LLP
                                                         1285 Avenue Of The Americas
                                                         New York, NY 10019
                                                         212-373-3000
                                                         Fax: 212-492-0441

Email: glaufer@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Liza M. Velazquez**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: lvelazquez@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Michael E. Gertzman**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: mgertzman@paulweiss.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Emily A. Vance**
Paul, Weiss, Rifkind, Wharton & Garrison LLP
1285 Avenue of the Americas
New York, NY 10019
212-373-3000
Email: evance@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Jonathan H. Hurwitz**
Paul, Weiss, Rifkind & Wharton
1285 Avenue Of The Americas
New York, NY 10019
212-373-3000
Fax: 212-757-3990
Email: jhurwitz@paulweiss.com
*ATTORNEY TO BE NOTICED*

**Defendant**

**Westchester Medical Center Advanced Physician Services, P.C.**
*as assignee of*
WMC Health

represented by **Anthony Ryan Prinzivalli**
Garfunkel Wild, P.C.
111 Great Neck Road
Great Neck, NY 11021
516-393-2512
Fax: 516-918-5639
Email: aprinzivalli@garfunkelwild.com
*ATTORNEY TO BE NOTICED*

**Marc Andrew Sittenreich**
Garfunkel Wild P.C.

111 Great Neck Road
Great Neck, NY 11021
(516)393-2500
Fax: (516)918-5606
Email: msittenreich@garfunkelwild.com
*ATTORNEY TO BE NOTICED*

**Michael Joseph Keane**
Garfunkel Wild P.C.
111 Great Neck Road, suite 503
Great Neck, NY 11021
516-393-2263
Fax: 516-466-5964
Email: mkeane@garfunkelwild.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/10/2021 | 1 | COMPLAINT *(VERIFIED) FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES* against All Plaintiffs filing fee $ 402, receipt number ANYEDC-14827150 Was the Disclosure Statement on Civil Cover Sheet completed -NO., filed by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Civil Cover Sheet, # 2 Proposed Summons Hochul, # 3 Proposed Summons Zucker, # 4 Proposed Summons Trinity, # 5 Proposed Summons New York-Presbyterian, # 6 Proposed Summons WMC Health, # 7 Exhibit A - COVID-19 Vaccine Mandate, # 8 Exhibit B - Dept of Health Aug 18 Order, # 9 Exhibit C - Dept of Health Aug 26 Amendment, # 10 Exhibit D - John Doe 2 Religious Accommodation Approved, # 11 Exhibit E - John Doe 2 Religious Accommodation Revoked, # 12 Exhibit F - Jane Doe 1 Religious Accommodation Approved, # 13 Exhibit G - Jane Doe 1 Religious Accommodation Revoked, # 14 Exhibit H - Jane Doe 2 Religious Accommodation Rejected, # 15 Exhibit I - Jane Doe 3 Religious Accommodation Approved, # 16 Exhibit J - Jane Doe 3 Religious Accommodation Revoked, # 17 Exhibit K - Liberty Counsel Letter) (Gannam, Roger) (Entered: 09/10/2021) |
| 09/10/2021 | 2 | MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW* by Jack Does, Jane Does, Joan Does, John Does. (Gannam, Roger) (Entered: 09/10/2021) |
| 09/10/2021 | | Case Assigned to Judge Ann M Donnelly and Magistrate Judge Taryn A. Merkl. Please download and review the Individual Practices of the assigned Judges, located on our website. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. (Bowens, Priscilla) (Entered: 09/10/2021) |
| 09/10/2021 | | Notice: Re: Incomplete Civil Cover Sheet (MISSING SECOND PAGE FORM). All questions *** INCLUDING the CERTIFICATION OF ARBITRATION ELIGIBILITY*** section on the second page needs to be answered. Please resubmit Civil Cover Sheet. (Bowens, Priscilla) (Entered: 09/10/2021) |
| 09/10/2021 | 3 | Summons Issued as to All Defendants. (Attachments: # 1 WMC summons, # 2 NY Presbyterian summons, # 3 Zucker summons, # 4 Trinity summons) (Bowens, Priscilla) (Entered: 09/10/2021) |
| 09/10/2021 | 4 | In accordance with Rule 73 of the Federal Rules of Civil Procedure and Local Rule 73.1, the parties are notified that *if* all parties consent a United States magistrate judge of this |

| | | |
|---|---|---|
| | | court is available to conduct all proceedings in this civil action including a (jury or nonjury) trial and to order the entry of a final judgment. Attached to the Notice is a blank copy of the consent form that should be filled out, signed and filed electronically **only if all** parties wish to consent. The form may also be accessed at the following link: http://www.uscourts.gov/uscourts/FormsAndFees/Forms/AO085.pdf. **You may withhold your consent without adverse substantive consequences**. **DO NOT return or file the consent <u>unless</u> all parties have signed the consent.** (Bowens, Priscilla) (Entered: 09/10/2021) |
| 09/10/2021 | 5 | This attorney case opening filing has been checked for quality control. See the attachment for corrections that were made, if any. (Bowens, Priscilla) (Entered: 09/10/2021) |
| 09/10/2021 | 6 | Civil Cover Sheet.. Re 1 Complaint,,,, by Jack Does, Jane Does, Joan Does, John Does (Gannam, Roger) (Entered: 09/10/2021) |
| 09/10/2021 | 7 | MOTION to Appear Pro Hac Vice Filing fee $ 150, receipt number ANYEDC-14827740. by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Affidavit in Support of Pro Hac Vice Admission, # 2 Certificate of Good Standing) (Gannam, Roger) (Entered: 09/10/2021) |
| 09/10/2021 | 8 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW* (Attachments: # 1 Exhibit A - E-mail to Defendants or Counsel, # 2 Exhibit B - E-mail to Known Government Counsel) (Gannam, Roger) (Entered: 09/10/2021) |
| 09/10/2021 | | Email Notification Test - DO NOT REPLY (Marziliano, August) (Entered: 09/10/2021) |
| 09/11/2021 | | SCHEDULING ORDER: Motion Hearing set for 9/13/2021 02:15 p.m. by Telephone before Judge Eric R. Komitee. The Court will hold a telephone hearing on Plaintiffs' motion for a temporary restraining order at 2:15 p.m. on September 13, 2021. Plaintiffs and Defendants will have thirty minutes each for their arguments; counsel for the various Defendants shall divide this time amongst themselves as they see fit. The Courtroom Deputy, Alicia Guy, will email Plaintiffs' counsel the dial-in information for those who intend to speak at the hearing. Plaintiffs' counsel must share this dial-in information with Defendants' counsel who also intend to speak. Members of the public and other attendees may listen to the proceeding by dialing 888-808-6929, and using access code 564-7824.Ordered by Judge Eric R. Komitee on 9/11/2021. (Richards, David) (Entered: 09/11/2021) |
| 09/11/2021 | 9 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re Scheduling Order,,, (Attachments: # 1 Exhibit A - E-mail to Defendants or Counsel, # 2 Exhibit B - E-mail to Known Government Counsel) (Gannam, Roger) (Entered: 09/11/2021) |
| 09/11/2021 | 10 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re Scheduling Order,,, *(CORRECTED)* (Attachments: # 1 Exhibit A - E-mail Notice of Hearing to Defendants or Counsel, # 2 Exhibit B - E-mail Notice of Hearing to Known Government Counsel) (Gannam, Roger) (Entered: 09/11/2021) |
| 09/13/2021 | 11 | NOTICE of Appearance by Jacqueline Phipps Polito on behalf of Trinity Health, Inc. (aty to be noticed) (Polito, Jacqueline) (Entered: 09/13/2021) |
| 09/13/2021 | 12 | MOTION to Appear Pro Hac Vice *of Horatio G. Mihet* Filing fee $ 150, receipt number ANYEDC-14829710. by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Affidavit Mihet Affidavit in Support of PHV Motion, # 2 Exhibit Mihet Certificate of Good Standing) (Mihet, Horatio) (Entered: 09/13/2021) |

| 09/13/2021 | 13 | NOTICE of Appearance by Liza M. Velazquez on behalf of New York-Presbyterian Healthcare System, Inc. (aty to be noticed) (Velazquez, Liza) (Entered: 09/13/2021) |
|---|---|---|
| 09/13/2021 | 14 | NOTICE of Appearance by Bruce Alan Birenboim on behalf of New York-Presbyterian Healthcare System, Inc. (aty to be noticed) (Birenboim, Bruce) (Entered: 09/13/2021) |
| 09/13/2021 | 15 | NOTICE of Appearance by Michael E. Gertzman on behalf of New York-Presbyterian Healthcare System, Inc. (aty to be noticed) (Gertzman, Michael) (Entered: 09/13/2021) |
| 09/13/2021 | 16 | NOTICE of Appearance by Jonathan H. Hurwitz on behalf of New York-Presbyterian Healthcare System, Inc. (aty to be noticed) (Hurwitz, Jonathan) (Entered: 09/13/2021) |
| 09/13/2021 | 17 | NOTICE of Appearance by Gregory F Laufer on behalf of New York-Presbyterian Healthcare System, Inc. (aty to be noticed) (Laufer, Gregory) (Entered: 09/13/2021) |
| 09/13/2021 | 18 | NOTICE of Appearance by Emily A. Vance on behalf of New York-Presbyterian Healthcare System, Inc. (aty to be noticed) (Vance, Emily) (Entered: 09/13/2021) |
| 09/13/2021 | 19 | Corporate Disclosure Statement by New York-Presbyterian Healthcare System, Inc. (Velazquez, Liza) (Entered: 09/13/2021) |
| 09/13/2021 | 20 | MEMORANDUM in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW* filed by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 09/13/2021) |
| 09/13/2021 | 21 | MOTION to Appear Pro Hac Vice *of Daniel J. Schmid* Filing fee $ 150, receipt number ANYEDC-14830044. by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Declaration Schmid Declaration ISO PHV Motion) (Mihet, Horatio) (Entered: 09/13/2021) |
| 09/13/2021 | 22 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW / DECLARATION OF SHAUN E. SMITH* filed by New York-Presbyterian Healthcare System, Inc.. (Attachments: # 1 Exhibit A to Smith Declaration) (Velazquez, Liza) (Entered: 09/13/2021) |
| 09/13/2021 | 23 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW Supplemental Authorities and Circumstances* (Attachments: # 1 Exhibit A - News Article) (Mihet, Horatio) (Entered: 09/13/2021) |
| 09/13/2021 | 24 | NOTICE of Appearance by Michael Joseph Keane on behalf of Westchester Medical Center Advanced Physician Services, P.C. (aty to be noticed) (Keane, Michael) (Entered: 09/13/2021) |
| 09/13/2021 | 25 | NOTICE of Appearance by Marc Andrew Sittenreich on behalf of Westchester Medical Center Advanced Physician Services, P.C. (aty to be noticed) (Sittenreich, Marc) (Entered: 09/13/2021) |
| 09/13/2021 | 26 | NOTICE of Appearance by Anthony Ryan Prinzivalli on behalf of Westchester Medical Center Advanced Physician Services, P.C. (aty to be noticed) (Prinzivalli, Anthony) (Entered: 09/13/2021) |
| 09/13/2021 | 27 | NOTICE of Appearance by Seth J. Farber on behalf of Kathy Hochul, Howard A. Zucker (aty to be noticed) (Farber, Seth) (Entered: 09/13/2021) |
| 09/13/2021 | | ORDER: Motion to Appear Pro Hac 7 , is denied without prejudice. To apply for *pro hac vice* admission, Section 1.3(c) of the EDNY Local Civil Rules requires that an applicant's |

| | | |
|---|---|---|
| | | motion be accompanied by a certificate of the court for each of the states in which the applicant is a member of the bar, which has been issued within thirty (30) days of filing and states that the applicant is a member in good standing of the bar of that state court[].... In lieu of a certificate of good standing from the Florida Supreme Court, counsel included a certificate of good standing from an organization entitled The Florida Bar. This denial is without prejudice to counsel's being permitted to resubmit his *pro hac vice* application as soon as practicable. So Ordered by Magistrate Judge Taryn A. Merkl on 9/13/2021. (Devanathan, Deepa) (Entered: 09/13/2021) |
| 09/13/2021 | 28 | Minute Entry for proceedings held before Judge Eric R. Komitee: Hearing held on 9/13/2021 re 2 MOTION for Temporary Restraining Order . Discussion held. Decision reserved. (Electronically recorded.) (Guy, Alicia) (Entered: 09/13/2021) |
| 09/14/2021 | 29 | Letter MOTION for Reconsideration re Order on Motion for Leave to Appear Pro Hac Vice,,, by Jack Does, Jane Does, Joan Does, John Does. (Gannam, Roger) (Entered: 09/14/2021) |
| 09/14/2021 | 30 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW (Supplemental Authority)* (Attachments: # 1 Exhibit A - NDNY TRO - Dr. A. v. Hochul) (Gannam, Roger) (Entered: 09/14/2021) |
| 09/14/2021 | 31 | Letter *re: Issues Raised During 9/13/2021 Hearing* by New York-Presbyterian Healthcare System, Inc. (Velazquez, Liza) (Entered: 09/14/2021) |
| 09/14/2021 | 32 | Letter *Response to Defendant NewYork-Presbyterian's Letter Brief* by Jack Does, Jane Does, Joan Does, John Does (Gannam, Roger) (Entered: 09/14/2021) |
| 09/14/2021 | 33 | Letter *responding to ECF No. 30* by Kathy Hochul, Howard A. Zucker (Farber, Seth) (Entered: 09/14/2021) |
| 09/14/2021 | 34 | Letter *Responding to ECF No. 30* by New York-Presbyterian Healthcare System, Inc. (Attachments: # 1 Exhibit A) (Velazquez, Liza) (Entered: 09/14/2021) |
| 09/14/2021 | 35 | ORDER finding as moot 2 Motion for TRO. For the reasons stated herein, Plaintiffs' motion for a TRO is denied. Plaintiffs may apply to Judge Donnelly for a preliminary injunction. If Plaintiffs wish to proceed anonymously with this action, they must file (under seal) a motion that states the reasons why the Court should permit them to do so. This motion must be captioned a "Motion to Proceed Anonymously" and should be submitted by October 1, 2021; Defendants' opposition, if any, shall be due by October 20, 2021; and Plaintiffs' reply, if any, shall be due by November 1, 2021. Ordered by Judge Eric R. Komitee on 9/14/2021. (Richards, David) (Entered: 09/14/2021) |
| 09/15/2021 | 36 | TRANSCRIPT of Proceedings held on September 13, 2021, before Judge Komitee. Court Reporter/Transcriber ARIA SERVICES, INC. Email address: Aria@leinen.net. Transcript may be viewed at the court public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 10/6/2021. Redacted Transcript Deadline set for 10/18/2021. Release of Transcript Restriction set for 12/14/2021. (Hong, Loan) (Entered: 09/15/2021) |
| 09/16/2021 | | ORDER: Attorney Horatio G. Mihet's Motion to Appear Pro Hac Vice 12 is denied without prejudice. To apply for *pro hac vice* admission, Section 1.3(c) of the EDNY Local Civil Rules requires that an applicant's motion "be accompanied by a certificate of the court for each of the states in which the applicant is a member of the bar, which has been issued within thirty (30) days of filing and states that the applicant is a member in good standing of the bar of that state court[]...." In lieu of a certificate of good standing |

from the Florida Supreme Court, counsel included a certificate of good standing from an organization entitled The Florida Bar. This denial is without prejudice to counsel's being permitted to resubmit his *pro hac vice* application.

In addition, the Court is in receipt of Attorney Roger Gannam's Letter Motion for Reconsideration 29 , which is DENIED. Attorney Gannam is respectfully directed to refile his application for admission *pro hac vice* with the correct bar certificate should he seek to appear in this case, in accordance with the requirements of E.D.N.Y. Local Rule 1.3(c).

The Court is in also receipt of Attorney Daniel J. Schmid's Motion to Appear Pro Hac Vice 21 and takes it under advisement. Daniel J. Schmid is directed to provide the court with a certificate of good standing from the court for the State of Virginia, at which time the Court will rule on the motion. So Ordered by Magistrate Judge Taryn A. Merkl on 9/16/2021. (Devanathan, Deepa) (Entered: 09/16/2021)

| Date | No. | Description |
|---|---|---|
| 09/21/2021 | 37 | MOTION to Expedite *Briefing Schedule and Set Hearing on Motion for Preliminary Injunction* by Jack Does, Jane Does, Joan Does, John Does. (Gannam, Roger) (Entered: 09/21/2021) |
| 09/22/2021 | 38 | Letter *Responding to ECF No. 37* by New York-Presbyterian Healthcare System, Inc. (Velazquez, Liza) (Entered: 09/22/2021) |
| 09/22/2021 | 39 | MEMORANDUM in Opposition re 37 MOTION to Expedite *Briefing Schedule and Set Hearing on Motion for Preliminary Injunction by Letter to Judge Donnelly dated September 22, 2021* filed by Kathy Hochul, Howard A. Zucker. (Attachments: # 1 Exhibit Ex A - Judge Hurd Order of Sept 20, 2021 in Dr A case, # 2 Exhibit Ex B - Second Circuit Scheduling Order in We the Patriots) (Farber, Seth) (Entered: 09/22/2021) |
| 09/23/2021 | | The plaintiffs' application for an expedited briefing schedule 37 is denied. The defendants are directed to file their opposition to the plaintiffs' motion for preliminary injunction by October 5, 2021, and the plaintiffs are directed to file their reply, if any, by October 12, 2021. A hearing on the plaintiffs' motion for a preliminary injunction is scheduled for October 19, 2021 at 3:00 p.m. in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 9/23/2021. (Rosenthal, Joshua) (Entered: 09/23/2021) |
| 09/24/2021 | 40 | MOTION to Appear Pro Hac Vice *(Resubmitted)* Filing fee $ 150, receipt number ANYEDC-14870751. by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Declaration in Support of Resubmitted Motion to Appear Pro Hac Vice, # 2 Florida Supreme Court Certificate of Good Standing) (Gannam, Roger) (Entered: 09/24/2021) |
| 09/27/2021 | | ORDER: The Motion of Roger Gannam for Leave to Appear Pro Hac Vice (resubmitted) 40 is granted. The attorney shall register for ECF; registration is available online at the EDNY's homepage. Once registered, the attorney shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. So Ordered by Magistrate Judge Taryn A. Merkl on 9/27/2021. (Devanathan, Deepa) (Entered: 09/27/2021) |
| 10/01/2021 | 41 | MOTION for Protective Order *and to Proceed Using Pseudonyms* by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Exhibit A - Declaration of Daniel J. Schmid in Support of Motion, # 2 Exhibit B - Proposed Protective Order) (Gannam, Roger) (Entered: 10/01/2021) |
| 10/04/2021 | | ORDER RESPECTFULLY REFERRING MOTION: 41 MOTION for Protective Order *and to Proceed Using Pseudonyms* filed by Jane Does, Joan Does, Jack Does, John Does respectfully referred to Magistrate Judge Taryn A. Merkl. Ordered by Judge Ann M. |

| | | |
|---|---|---|
| | | Donnelly on 10/4/2021. Motion respectfully referred to Taryn A. Merkl. (Greene, Donna) (Entered: 10/04/2021) |
| 10/04/2021 | | ORDER: Defendants are directed to respond to Plaintiffs' Motion for Protective Order by **10/12/2021**. A telephonic Motion Conference will take place on **10/18/2021 at 3:15 p.m.** before Magistrate Judge Taryn A. Merkl. The parties are directed to call the toll-free number **(877) 336-1839**. The access code is **3914302**. The parties shall dial in five (5) minutes before the scheduled conference. Ordered by Magistrate Judge Taryn A. Merkl on 10/4/2021. (Devanathan, Deepa) Modified on 10/6/2021 to update the due date for Defendant's response (Chan, Kaity). (Entered: 10/04/2021) |
| 10/04/2021 | 42 | Letter MOTION for pre motion conference re 1 Complaint,,,, *with respect to anticipated motion to dismiss* by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 10/04/2021) |
| 10/04/2021 | 43 | Letter MOTION for pre motion conference *regarding proposed motion to dismiss the Complaint* by Westchester Medical Center Advanced Physician Services, P.C.. (Keane, Michael) (Entered: 10/04/2021) |
| 10/05/2021 | 44 | Letter MOTION for pre motion conference re 1 Complaint,,,, *regarding proposed motion to dismiss* by Trinity Health, Inc.. (Polito, Jacqueline) (Entered: 10/05/2021) |
| 10/05/2021 | 45 | MEMORANDUM in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW* filed by Trinity Health, Inc.. (Polito, Jacqueline) (Entered: 10/05/2021) |
| 10/05/2021 | 46 | Letter MOTION for pre motion conference *regarding proposed motion to dismiss the Complaint* by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 10/05/2021) |
| 10/05/2021 | 47 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW Declaration of Elizabeth Rausch-Phung* filed by Kathy Hochul, Howard A. Zucker. (Attachments: # 1 Exhibit Ex A - Emergency Regulation, effective Aug 26, 2021, # 2 Exhibit Ex B - CDC Scientific Brief - Emerging SARS CoV-2 variants, # 3 Exhibit Ex C -CDC paper - Delta Variant: What we know about the Science, # 4 Exhibit Ex D - News article- Univ of Buffalo researchers taking a closer look at the Delta Variant, # 5 Exhibit Ex E - News article - "Every case except one was Delta", # 6 Exhibit Ex F -CDC Science Brief- COVID-19 Vaccines and Vaccinations, # 7 Exhibit Ex G - CDC paper - SARS CoV-2 Variant Classifications & Definitions, # 8 Exhibit Ex H - Governor's June 23, 2021 Press Release, # 9 Exhibit Ex I - August 5, 2021 press Relesae - Statement from NYS Health Comm'r Zucker, # 10 Exhibit Ex J - Annals of Internal Medicine: "The case for mandating COVID-19 Vaccines for Healthcare Workers", # 11 Exhibit Ex K - Article - SARS-CoV-2 Antibody prevalence in England following the First Peak of the pandemic, # 12 Exhibit Ex L - Article - Excess Deaths from COVID-19 and Other Causes in the US, March 1, 2020 to January 2, 2021, # 13 Exhibit Ex M - Article - Risk of hospital admission with Coronavirus Disease 2019 in Healthcare Workers and their Households: Nationwide Linkage Cohort Study, # 14 Exhibit Ex N - Article - Safety and Immunogenicity of Anti-SARS-CoV-2 Messenger RNA Vaccines in Recpients of Solid Organ Transplants, # 15 Exhibit Ex O - Article - Major Health Care Professional Organizations Call for COVID-19 Mandates for all healthcare workers, # 16 Exhibit Ex P American Medical Association's "Why COVID-19 Vaccination should be required for Health Professionals, # 17 Exhibit Ex Q - Statement from American Associaion of Nurse Anesthesiology, # 18 Exhibit Ex R - Statement of American Association of Critical-Care Nurses, # 19 Exhibit Ex S - Statement of National Association of Neonatal Nurses, # 20 Exhibit Ex T- Statement from American College of Occupational and Environmental Medicine, # 21 Exhibit Ex U - July 26, 2021 V.A. News Release, # 22 Exhibit Ex V - |

August 12, 2021 Dep't of Health & Hum Servs News Release, # 23 Exhibit Ex W - CDC's "COVID-19 Vaccines for Healthcare Personnel", # 24 Exhibit Ex X - CDC paper "Disparities in COVID-19 Vaccination Coverage Among Health Care Personnel in Long Term Care Facilities in US, March 2021, # 25 Exhibit Ex Y - CDC paper "COVID-19 Outbreak Associated with a SARS-Co-V-2 R.1 Lineage Variant in a Skilled Nursing Facility After Vaccination - Kentucky, March 2021, # 26 Exhibit Ex Z - Executive Order No. 4, # 27 Exhibit Ex AA - Governor's September 27, 2021 Press Release, # 28 Exhibit Ex BB - Governor's September 28, 2021 Press Release, # 29 Exhibit Ex CC - AMA Article - Audiey Kao, MD, PhD on Mandating Vaccines for Health Care Workers, # 30 Exhibit Ex DD - CDC Paper - "Safety of COVID-19 Vaccines, # 31 Exhibit Ex EE - CDC Paper - COVID-19 Vaccines im Adults: Benefit-Risk Discussion, # 32 Exhibit Ex FF - CDC Paper - "Key things to know", # 33 Exhibit Ex GG - ABC News article- "Few People Medically Exempt from Getting COVID-19 Vaccine: Experts", # 34 Exhibit Ex HH - American College of Cardiology's Vaccine Induced thrombotic Thrombocytopena (VITT) and COVID-19 Vaccines: What Cardiovascular Clinicians Need to Know, # 35 Exhibit Ex II - FDA Paper - Emergency Use Authorization for Vaccines Explained, # 36 Exhibit Ex JJ - FDA December 11, 2020 News Release, # 37 Exhibit Ex KK - FDA December 18, 2020 News Release, # 38 Exhibit Ex LL - FDA February 27, 2021 News Release, # 39 Exhibit Ex MM - FDA May 10, 2021 News Release, # 40 Exhibit Ex NN - FDA August 12, 2021 News Release, # 41 Exhibit Ex OO - FDA Paper - Comirnaty and Pfizer-BioNTech COVID-19 Vaccine, # 42 Exhibit Ex PP - Article September 17, 2021 - FDA Commitee Votes Unanimously to Approve Pfizer Booster7, 2021 on, # 43 Exhibit Ex QQ - FDA September 22, 2021 News release, # 44 Exhibit Ex RR - CDC Paper - Who is Eligible for a COVID-19 Booster Shot?, # 45 Exhibit Ex SS - Moderna Website Text, # 46 Exhibit Ex TT - Pfizer Website Text, # 47 Exhibit Ex UU - Janssen Website Text, # 48 Exhibit Ex VV - Nebraska Medicine article - You asked, we answere: Do the COVID-19 Vaccines Contain Aborted Fetal Cells?, # 49 Exhibit Ex WW - North Dakota Dept of Health handout - COVID-19 Vaccines and Fetal Cell Lines, # 50 Exhibit Ex XX - CNN article - How Exactly Fetal Tissue is used for Medicine, # 51 Exhibit Ex YY - NBC News article - "What is Fetal Tissue research? And why is it important to Medicine?", # 52 Exhibit Ex ZZ - CDC Paper - Answering Patients' Questions About COVID-19 Vaccine and Vaccination, # 53 Exhibit Ex AAA - paper - Antibodies Elicited by MRNA-1273 Vaccination Bind More Broadly to the Recepto Binding Domain Than do those from SARS-CoV-2 Infection, # 54 Exhibit Ex BBB - paper - Naturally Enhanced Neutralizing Breadth Against SARS-CoV-2 One Year After Infection, # 55 Exhibit Ex CCC - Paper - Vaccines Beat Natural Immunity in Fight Against COVID-19, # 56 Exhibit Ex DDD - Paper - COVID-19 Breakthrough Infections in Vaccinated Health Care Workers, # 57 Exhibit Ex EEE - NYS Dept of Health's Frequently Asked Questions (AQs) Regarding the August 26, 2021 Prevention of COVID-19 Transmission by Covered Entities Emergency Regulation, # 58 Exhibit Ex FFF - CDC paper - Contraindications and Precautions, # 59 Exhibit Ex GGG - CDC paper - interim Clinical Considrations for Use of COVID-19 Vaccines Currently Approved or Authorized in the United States, # 60 Exhibit Ex HHH - Governor's September 28, 2021 Press Release "Governor Hochul Releases Encouraging Data Showing Impact of Health Care Staff Vaccine Mandate") (Farber, Seth) (Entered: 10/05/2021)

| 10/05/2021 | 48 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW Declaration of Vanessa Murphy* filed by Kathy Hochul, Howard A. Zucker. (Attachments: # 1 Exhibit Ex A - Emergency Regulation, effective Aug 26, 2021) (Farber, Seth) (Entered: 10/05/2021) |
| 10/05/2021 | 49 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM* |

| | | |
|---|---|---|
| | | *OF LAW Valerie Deetz* filed by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 10/05/2021) |
| 10/05/2021 | 50 | MEMORANDUM in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW State Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction* filed by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 10/05/2021) |
| 10/05/2021 | 51 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW Declaration of Jordy Rabinowitz* filed by Westchester Medical Center Advanced Physician Services, P.C.. (Attachments: # 1 Exhibit Ex. A- Sept. 15, 2021 Email) (Keane, Michael) (Entered: 10/05/2021) |
| 10/05/2021 | 52 | MEMORANDUM in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW WMCAPS' Memorandum of Law in Opposition to Plaintiffs' Motion for Preliminary Injunction* filed by Westchester Medical Center Advanced Physician Services, P.C.. (Keane, Michael) (Entered: 10/05/2021) |
| 10/05/2021 | 53 | MEMORANDUM in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW* filed by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 10/05/2021) |
| 10/05/2021 | 54 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW [Declaration of Shaun E. Smith]* filed by New York-Presbyterian Healthcare System, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B) (Velazquez, Liza) (Entered: 10/05/2021) |
| 10/05/2021 | 55 | AFFIDAVIT/DECLARATION in Opposition re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW [Declaration of Magdalena Sobieszczyk, MD, MPH]* filed by New York-Presbyterian Healthcare System, Inc.. (Attachments: # 1 Exhibit A, # 2 Exhibit B, # 3 Exhibit C, # 4 Exhibit D, # 5 Exhibit E, # 6 Exhibit F, # 7 Exhibit G, # 8 Exhibit H, # 9 Exhibit I, # 10 Exhibit J, # 11 Exhibit K, # 12 Exhibit L, # 13 Exhibit M, # 14 Exhibit N, # 15 Exhibit O, # 16 Exhibit P, # 17 Exhibit Q, # 18 Exhibit R, # 19 Exhibit S, # 20 Exhibit T, # 21 Exhibit U, # 22 Exhibit V, # 23 Exhibit W, # 24 Exhibit X, # 25 Exhibit Y, # 26 Exhibit Z, # 27 Exhibit AA, # 28 Exhibit BB, # 29 Exhibit CC, # 30 Exhibit DD, # 31 Exhibit EE, # 32 Exhibit FF, # 33 Exhibit GG, # 34 Exhibit HH, # 35 Exhibit II, # 36 Exhibit JJ, # 37 Exhibit KK, # 38 Exhibit LL, # 39 Exhibit MM, # 40 Exhibit NN, # 41 Exhibit OO, # 42 Exhibit PP, # 43 Exhibit QQ, # 44 Exhibit RR, # 45 Exhibit SS, # 46 Exhibit TT, # 47 Exhibit UU, # 48 Exhibit VV, # 49 Exhibit WW, # 50 Exhibit XX) (Velazquez, Liza) (Entered: 10/05/2021) |
| 10/08/2021 | 56 | Letter MOTION for Extension of Time to File Response/Reply as to 41 MOTION for Protective Order *and to Proceed Using Pseudonyms on consent*, Letter MOTION to Adjourn Conference *on consent* by Trinity Health, Inc.. (Polito, Jacqueline) (Entered: 10/08/2021) |
| 10/12/2021 | | SCHEDULING ORDER: In light of the Honorable David Hurd's decision in *Dr. A v. Hochul*, 21-cv-1009 (N.D.N.Y. October 12, 2021), in which he granted a preliminary injunction, the parties are directed to advise the Court no later than October 14, 2021, whether the pending motion for a preliminary injunction is moot for the reasons already |

| | | |
|---|---|---|
| | | identified in the Honorable Eric Komittee's order in this case 35 . Ordered by Judge Ann M. Donnelly on 10/12/2021. (Rosenthal, Joshua) (Entered: 10/12/2021) |
| 10/12/2021 | | ORDER: Letter Motion for Extension of Time to File Response/Reply 56 is granted, in part. The time for Defendants to respond to Plaintiffs' Motion for Protective Order 41 is extended, and is now due by **11/2/2021**, two weeks after the Preliminary Injunction hearing currently scheduled for 10/19/2021. Plaintiffs' Reply is due by **11/12/2021**. The Motion Conference scheduled for 10/18/2021 at 3:15 p.m. is adjourned to **11/16/2021 at 12:00 p.m.** before Magistrate Judge Taryn A. Merkl. The parties are directed to call the toll-free number **(877) 336-1839**. The access code is **3914302**. The parties shall dial in five (5) minutes before the scheduled conference. So Ordered by Magistrate Judge Taryn A. Merkl on 10/12/2021. (Devanathan, Deepa) (Entered: 10/12/2021) |
| 10/12/2021 | 57 | REPLY in Support re 2 MOTION for Temporary Restraining Order MOTION for Preliminary Injunction *AND INCORPORATED MEMORANDUM OF LAW* filed by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Exhibit 1 - Declaration of Employee Witness 1, # 2 Exhibit 2 - Declaration of Employee Witness 2, # 3 Exhibit 3 - Declaration of Employee Witness 3, # 4 Exhibit 4 - Declaration of Employee Witness 4, # 5 Exhibit 5 - Declaration of Employee Witness 5, # 6 Exhibit 6 - Declaration of Employee Witness 6, # 7 Exhibit 7 - Declaration of Employee Witness 7, # 8 Exhibit 8 - Declaration of Employee Witness 8, # 9 Exhibit 9 - Declaration of Employee Witness 9, # 10 Exhibit 10 - Declaration of Employee Witness 10, # 11 Exhibit 11 - Declaration of Employee Witness 11, # 12 Exhibit 12 - Declaration of Employee Witness 12, # 13 Exhibit 13 - Declaration of Employee Witness 13, # 14 Exhibit 14 - Declaration of Employee Witness 14, # 15 Exhibit 15 - Declaration of Employee Witness 15, # 16 Exhibit 16 - Declaration of Employee Witness 16, # 17 Exhibit 17 - Declaration of Employee Witness 17, # 18 Exhibit 18 - Declaration of Employee Witness 18, # 19 Exhibit 19 - Declaration of Employee Witness 19, # 20 Exhibit 20 - Declaration of Employee Witness 20, # 21 Exhibit 21 - Declaration of Employee Witness 21, # 22 Exhibit 22 - Declaration of Employee Witness 22, # 23 Exhibit 23 - Declaration of Employee Witness 23, # 24 Exhibit 24 - Declaration of Employee Witness 24, # 25 Exhibit 25 - Declaration of Employee Witness 25, # 26 Exhibit 26 - Declaration of Employee Witness 26, # 27 Exhibit 27 - Declaration of Employee Witness 27, # 28 Exhibit 28 - Declaration of Employee Witness 28, # 29 Exhibit 29 - Declaration of Employee Witness 29, # 30 Exhibit 30 - Declaration of Employee Witness 30, # 31 Exhibit 31 - Declaration of Employee Witness 31, # 32 Exhibit 32 - Declaration of Employee Witness 32) (Gannam, Roger) (Entered: 10/12/2021) |
| 10/12/2021 | 58 | RESPONSE to Motion re 43 Letter MOTION for pre motion conference *regarding proposed motion to dismiss the Complaint*, 42 Letter MOTION for pre motion conference re 1 Complaint,,,, *with respect to anticipated motion to dismiss*, 46 Letter MOTION for pre motion conference *regarding proposed motion to dismiss the Complaint*, 44 Letter MOTION for pre motion conference re 1 Complaint,,,, *regarding proposed motion to dismiss* filed by Jack Does, Jane Does, Joan Does, John Does. (Gannam, Roger) (Entered: 10/13/2021) |
| 10/13/2021 | | ORDER granting 42 , 43 , 44 and 46 Motions for Pre-Motion Conference. The conference will take place on November 3, 2021 at 2:30 p.m. in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 10/13/2021. (Rosenthal, Joshua) (Entered: 10/13/2021) |
| 10/13/2021 | | ORDER. On September 13, 2021, Daniel J. Schmid filed a motion for admission *pro hac vice*, along with an accompanying affidavit, in which he represented that he had requested a certificate of good standing from the Commonwealth of Virginia and would provide it expeditiously to the Court. (*See* ECF No. 21.1.) The Court took Mr. Schmid's motion under advisement on 9/16/21, indicating that the Court would rule on the motion upon his |

| | | |
|---|---|---|
| | | provision of a certificate of good standing. To date, Mr. Schmid has not submitted his certificate of good standing. Mr. Schmid is directed to provide his certificate of good standing by **10/20/2021**, after which the motion will be denied without prejudice if his application is not perfected. Ordered by Magistrate Judge Taryn A. Merkl on 10/13/2021. (Devanathan, Deepa) (Entered: 10/13/2021) |
| 10/14/2021 | 59 | Amended MOTION to Appear Pro Hac Vice *for Attorney Horatio G. Mihet* Filing fee $ 150, receipt number ANYEDC-14932063. by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Declaration Mihet Declaration, # 2 Exhibit Fl S Ct Certificate of Good Standing) (Mihet, Horatio) (Entered: 10/14/2021) |
| 10/14/2021 | 60 | Letter *responding to 10/21/2021 Scheduling Order* by Trinity Health, Inc. (Polito, Jacqueline) (Entered: 10/14/2021) |
| 10/14/2021 | 61 | Letter *Responding to Court's Scheduling Order of October 12, 2021* by Kathy Hochul, Howard A. Zucker (Farber, Seth) (Entered: 10/14/2021) |
| 10/14/2021 | 62 | Letter *responding to the Court's Order, dated October 12, 2021* by Westchester Medical Center Advanced Physician Services, P.C. (Sittenreich, Marc) (Entered: 10/14/2021) |
| 10/14/2021 | 63 | Letter *Responding to Judge Donnelly's 10/12/2021 Scheduling Order* by New York-Presbyterian Healthcare System, Inc. (Velazquez, Liza) (Entered: 10/14/2021) |
| 10/14/2021 | 64 | Letter *Brief re Mootness Inquiry* by Jack Does, Jane Does, Joan Does, John Does (Attachments: # 1 Exhibit A - Counsel Communications) (Mihet, Horatio) (Entered: 10/14/2021) |
| 10/15/2021 | | ORDER: The Amended Motion of Horatio G. Mihet for Leave to Appear Pro Hac Vice 59 is granted. The attorney shall register for ECF; registration is available online at the EDNY's homepage. Once registered, the attorney shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. So Ordered by Magistrate Judge Taryn A. Merkl on 10/15/2021. (Devanathan, Deepa) (Entered: 10/15/2021) |
| 10/18/2021 | | SCHEDULING ORDER: The hearing on the plaintiffs' motion for a preliminary injunction is adjourned *sine die* and the motion is held in abeyance pending a decision by the Second Circuit in *Dr. A v. Hochul*, No. 21-CV-1009 (N.D.N.Y. October 12, 2021). *See We The Patriots v. Hochul*, No. 21-2179 (2d Cir. Oct. 13, 2021) (scheduling briefing and oral argument in *Dr. A* and *We the Patriots*). Ordered by Judge Ann M. Donnelly on 10/18/2021. (Rosenthal, Joshua) (Entered: 10/18/2021) |
| 10/21/2021 | | ORDER: On September 13, 2021, Daniel J. Schmid filed a motion for admission *pro hac vice*, along with an accompanying affidavit, in which he represented that he had requested a certificate of good standing from the Commonwealth of Virginia and would provide it expeditiously to the Court. (*See* ECF No. 21-1.) The Court took Mr. Schmid's motion under advisement on September 16, 2021, indicating that the Court would rule on the motion upon his provision of a certificate of good standing. On October 13, 2021, the Court directed Mr. Schmid to provide his certificate of good standing by October 20, 2021, indicating that his motion would be denied without prejudice if his application was not perfected. Mr. Schmid has not submitted his certificate of good standing. Accordingly, the Motion to Appear Pro Hac Vice of Daniel J. Schmid 21 is denied without prejudice. Should Mr. Schmid seek to appear in this case, he is directed to reapply for admission *pro hac vice*, with the correct supporting documentation. Ordered by Magistrate Judge Taryn A. Merkl on 10/21/2021. (Devanathan, Deepa) (Entered: 10/21/2021) |

| | | |
|---|---|---|
| 10/21/2021 | 65 | MOTION to Appear Pro Hac Vice *of Erin Train* Filing fee $ 150, receipt number ANYEDC-14956538. by Trinity Health, Inc.. (Attachments: # 1 Affidavit of Erin Train, # 2 PA Certificate of Good Standing, # 3 NJ Certificate of Good Standing) (Train, Erin) (Entered: 10/21/2021) |
| 10/22/2021 | | ORDER: The Motion of Erin Train for Leave to Appear Pro Hac Vice 65 is granted. The attorney shall register for ECF; registration is available online at the EDNY's homepage. Once registered, the attorney shall file a notice of appearance and ensure that she receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. So Ordered by Magistrate Judge Taryn A. Merkl on 10/22/2021. (Devanathan, Deepa) (Entered: 10/22/2021) |
| 10/22/2021 | 66 | NOTICE of Appearance by Erin Train on behalf of Trinity Health, Inc. (notification declined or already on case) (Train, Erin) (Entered: 10/22/2021) |
| 11/01/2021 | | SCHEDULING ORDER: The pre-motion conference scheduled for November 3, 2021 at 2:30 p.m. regarding the defendants' anticipated motion to dismiss will now take place telephonically. Parties are directed to appear by telephone (line (888) 363-4734, access code 9057625). Ordered by Judge Ann M. Donnelly on 11/1/2021. (Rosenthal, Joshua) (Entered: 11/01/2021) |
| 11/02/2021 | 67 | RESPONSE in Opposition re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms* filed by Trinity Health, Inc.. (Polito, Jacqueline) (Entered: 11/02/2021) |
| 11/02/2021 | 68 | MEMORANDUM in Opposition re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms* filed by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 11/02/2021) |
| 11/02/2021 | 69 | RESPONSE to Motion re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms* filed by Westchester Medical Center Advanced Physician Services, P.C.. (Keane, Michael) (Entered: 11/02/2021) |
| 11/02/2021 | 70 | RESPONSE to Motion re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms by Letter to Judge Donnelly dated November 2, 2021* filed by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 11/02/2021) |
| 11/03/2021 | | MINUTE ENTRY AND ORDER: A pre-motion conference regarding the defendants' anticipated motion to dismiss was held by telephone before Judge Ann M. Donnelly on November 3, 2021. Horatio Mihet and Roger Gannam appeared for the plaintiffs. Seth Farber appeared for the defendants Kathy Hochul and Howard Zucker. Jacqueline Polito and Erin Train appeared for the defendant Trinity Health, Inc. Bruce Birenboim, Liza Velazquez and Emily Vance appeared for the defendant New York-Presbyterian Healthcare System, Inc. Anthony Prinzivalli and Marc Sittenreich appeared for the defendant Westchester Medical Center Advanced Physician Services, P.C.<br><br>Case called. Discussion held. The parties will file a joint status report by December 3, 2021 - assuming the Second Circuit has issued an opinion in *We The Patriots v. Hochul*, No. 21-2179 and *Dr. A v. Hochul*, No. 21-2566 - advising the Court whether the plaintiffs plan to file an amended complaint. Ordered by Judge Ann M. Donnelly. (Court Reporter Anthony Frisolone.) (Rosenthal, Joshua) (Entered: 11/03/2021) |
| 11/10/2021 | 71 | Consent MOTION for Extension of Time to File Response/Reply as to 69 Response to Motion, 70 Response to Motion, 67 Response in Opposition to Motion, 68 Memorandum in Opposition, 41 MOTION for Protective Order *and to Proceed Using Pseudonyms and Request for Expedited Consideration* by Jack Does, Jane Does, Joan Does, John Does. (Gannam, Roger) (Entered: 11/10/2021) |

| | | |
|---|---|---|
| 11/13/2021 | | ORDER: Motion for Extension of Time to File Response/Reply is granted, on consent. Plaintiffs' Reply in Support of their Motion to Proceed Using Pseudonyms and for Protective Order 41 is due by **11/22/2021**. The Motion Conference scheduled for 11/16/2021 at 12:00 p.m. is adjourned to **12/14/2021 at 2:00 p.m.** before Magistrate Judge Taryn A. Merkl. The parties are directed to call the toll-free number **(877) 336-1839**. The access code is **3914302**. The parties shall dial in five (5) minutes before the scheduled conference. So Ordered by Magistrate Judge Taryn A. Merkl on 11/13/2021. (Devanathan, Deepa) (Entered: 11/13/2021) |
| 11/22/2021 | 72 | REPLY to Response to Motion re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms* filed by All Plaintiffs. (Attachments: # 1 Exhibit A - Meet and Confer Email) (Mihet, Horatio) (Entered: 11/22/2021) |
| 12/02/2021 | 73 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms (Supplemental Authority)* (Gannam, Roger) (Entered: 12/02/2021) |
| 12/03/2021 | 74 | STATUS REPORT *(Joint) Regarding Amendment of Complaint* by Jack Does, Jane Does, Joan Does, John Does (Gannam, Roger) (Entered: 12/03/2021) |
| 12/03/2021 | | SCHEDULING ORDER: The Court is in receipt of 74 the parties' joint status report. Within 45 days of any decision by the Supreme Court on the pending *We the Patriots* and *Dr. A* injunction applications, the defendants will file their respective motions to dismiss. The plaintiffs will have 30 days to oppose, and the defendants will have 15 days to reply. Ordered by Judge Ann M. Donnelly on 12/3/2021. (Rosenthal, Joshua) (Entered: 12/03/2021) |
| 12/06/2021 | 75 | MOTION to Appear Pro Hac Vice *(Resubmitted for Daniel J. Schmid)* Filing fee $ 150, receipt number ANYEDC-15088320. by Jack Does, Jane Does, Joan Does, John Does. (Attachments: # 1 Declaration in Support of Resubmitted Motion to Appear Pro Hac Vice, # 2 Supreme Court of Virginia Certificate of Good Standing) (Gannam, Roger) (Entered: 12/06/2021) |
| 12/07/2021 | | ORDER: The Motion of Daniel J. Schmid for Leave to Appear Pro Hac Vice 75 is granted. The attorney shall register for ECF; registration is available online at the EDNY's homepage. Once registered, the attorney shall file a notice of appearance and ensure that he receives electronic notification of activity in this case. Also, the attorney shall ensure that the $150 admission fee be submitted to the Clerk's Office via filing the event *Pro Hac Vice Filing Fee*. So Ordered by Magistrate Judge Taryn A. Merkl on 12/7/2021. (Devanathan, Deepa) (Entered: 12/07/2021) |
| 12/10/2021 | 76 | Letter *re: Supplemental Authority* by New York-Presbyterian Healthcare System, Inc., Trinity Health, Inc. (Attachments: # 1 Exhibit A - December 1, 2021 Memorandum and Order in Doe v. City Univ. of New York et al) (Velazquez, Liza) (Entered: 12/10/2021) |
| 12/14/2021 | 77 | NOTICE of Appearance by Daniel Joseph Schmid on behalf of All Plaintiffs (aty to be noticed) (Schmid, Daniel) (Entered: 12/14/2021) |
| 12/14/2021 | | Minute Entry and Order: A telephonic Motion Hearing was held on 12/14/2021 before Magistrate Judge Taryn A. Merkl. Appearances by Daniel Schmid, Roger Gannam, and Horatio Mihet for Plaintiffs; Seth Farber for Defendants Kathy Hochul and Howard Zucker; Jacqueline Polito and Erin Train for Defendant Trinity Health, Inc.; Liza Velazquez, Emily Vance, and Leah Park for Defendant New York-Presbyterian Healthcare System, Inc.; Mark Sittenreich for Defendant Westchester Medical Center Advanced Physician Services, P.C. Discussion and arguments were held regarding Plaintiffs' Motion for Protective Order 41 . Decision reserved. Ordered by Magistrate |

| | | |
|---|---|---|
| | | Judge Taryn A. Merkl on 12/14/2021. (AT&T Log #2:05-3:05) (Devanathan, Deepa) (Entered: 12/14/2021) |
| 12/16/2021 | 78 | TRANSCRIPT of Proceedings held on December 14, 2021, before Judge Merkl. Court Transcriber: Abba Reporting. Email address: abbareporting@gmail.com. Transcript may be viewed at the court public terminal or purchased through the Court Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through PACER.File redaction request using event "Redaction Request - Transcript" located under "Other Filings - Other Documents". Redaction Request due 1/6/2022. Redacted Transcript Deadline set for 1/16/2022. Release of Transcript Restriction set for 3/16/2022. (Rocco, Christine) (Entered: 12/16/2021) |
| 01/05/2022 | 79 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms (Second Notice of Supplemental Authority)* (Attachments: # 1 Exhibit A - Does v. University of Colorado Order) (Mihet, Horatio) (Entered: 01/05/2022) |
| 01/19/2022 | 80 | Letter MOTION for Extension of Time to File *Defendants' Motions to Dismiss* by Westchester Medical Center Advanced Physician Services, P.C.. (Sittenreich, Marc) (Entered: 01/19/2022) |
| 01/20/2022 | | ORDER granting 80 Motion for Extension of Time to File. The defendants will file their moving papers by February 17, 2022; the plaintiffs will file their opposition papers by March 21, 2022; and the defendants will file their reply papers, if any, by April 4, 2022. Ordered by Judge Ann M. Donnelly on 1/20/2022. (Rosenthal, Joshua) (Entered: 01/20/2022) |
| 02/17/2022 | 81 | Notice of MOTION to Dismiss for Failure to State a Claim *by State Defendants* by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 02/17/2022) |
| 02/17/2022 | 82 | MOTION to Dismiss for Failure to State a Claim *State Defendants' Memorandum of Law in Support of Motion to Dismiss* by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 02/17/2022) |
| 02/17/2022 | 83 | MOTION to Dismiss for Failure to State a Claim by Trinity Health, Inc.. (Attachments: # 1 Memorandum in Support, # 2 Declaration of Jacqueline Phipps Polito, # 3 Declaration of Kathleen Hoffman) (Polito, Jacqueline) (Entered: 02/17/2022) |
| 02/17/2022 | 84 | MOTION to Dismiss for Failure to State a Claim by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 02/17/2022) |
| 02/17/2022 | 85 | MEMORANDUM in Support re 84 MOTION to Dismiss for Failure to State a Claim filed by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 02/17/2022) |
| 02/17/2022 | 86 | Letter *requesting an oral argument on New York-Presbyterian Healthcare System, Inc.'s Motion to Dismiss* by New York-Presbyterian Healthcare System, Inc. (Velazquez, Liza) (Entered: 02/17/2022) |
| 02/17/2022 | 87 | MOTION to Dismiss for Failure to State a Claim by Westchester Medical Center Advanced Physician Services, P.C.. (Attachments: # 1 Declaration, # 2 Exhibit A-Complaint, # 3 Memorandum in Support) (Sittenreich, Marc) (Entered: 02/17/2022) |
| 02/23/2022 | 88 | NOTICE by Jack Does, Jane Does, Joan Does, John Does re 41 MOTION for Protective Order *and to Proceed Using Pseudonyms (THIRD NOTICE OF SUPPLEMENTAL AUTHORITY)* (Gannam, Roger) (Entered: 02/23/2022) |
| 03/01/2022 | 89 | Letter *re: Plaintiffs' Notice of Supplemental Authority* by New York-Presbyterian Healthcare System, Inc., Trinity Health, Inc. (Attachments: # 1 Exhibit A - Air Force |

| | | |
|---|---|---|
| | | Officer Declarations, # 2 Exhibit B - Navy Seal 1 Declaration) (Velazquez, Liza) (Entered: 03/01/2022) |
| 03/18/2022 | 90 | Letter MOTION for Extension of Time to File Response/Reply as to 83 MOTION to Dismiss for Failure to State a Claim , 82 MOTION to Dismiss for Failure to State a Claim *State Defendants' Memorandum of Law in Support of Motion to Dismiss*, 84 MOTION to Dismiss for Failure to State a Claim , 87 MOTION to Dismiss for Failure to State a Claim by Jack Does, Jane Does, Joan Does, John Does. (Schmid, Daniel) (Entered: 03/18/2022) |
| 03/18/2022 | 91 | ORDER: For the reasons contained in the attached Memorandum and Order, Plaintiffs' motion for a protective order and to proceed under pseudonyms 41 is hereby granted, in part. The parties are respectfully directed to meet and confer and to submit a proposed protective order to the Court by **4/1/2022**, as well as a letter indicating how many of the Jack and Joan Doe Plaintiffs seek to proceed under a pseudonym, if any, and providing supplemental information and/or authority as to why these additional Plaintiffs should be allowed to proceed anonymously. The Court reserves the authority to revisit Plaintiffs' anonymity should the case proceed beyond the motion to dismiss stage. Ordered by Magistrate Judge Taryn A. Merkl on 3/18/2022. (Cahn, Gabriel) (Entered: 03/18/2022) |
| 03/21/2022 | | ORDER granting 90 Motion for Extension of Time to File Response/Reply. The plaintiffs will file their response by April 4, 2022; and the defendants will file their replies by May 2, 2022. The plaintiffs may also file a single, consolidated response of 50 pages or fewer. Ordered by Judge Ann M. Donnelly on 3/21/2022. (Rosenthal, Joshua) (Entered: 03/21/2022) |
| 04/01/2022 | 92 | Letter *in Response to Memorandum and Order 91* by Jane Does, John Does (Attachments: # 1 Proposed Order) (Gannam, Roger) (Entered: 04/01/2022) |
| 04/04/2022 | 93 | ORDER: The Court is in receipt of Plaintiffs' letter response 92 to the Court's 3/18/2022 Order, as well as the parties' proposed interim protective order (*see* ECF No. 92-1). In light of Plaintiffs' counsel's representation that Plaintiffs John Does 12 and Jane Does 13 "are the only identifiable plaintiffs" presently in this action (ECF No. 92 at 1), the Clerk of Court is directed to terminate Jack Does 1-750 and Joan Does 1-750 as parties, without prejudice. *See* Fed. R. Civ. P. 21. If any of the potential plaintiffs represented by these "placeholder names" retain Plaintiffs' counsel and/or seek to join in this action, they may seek to join, and, if necessary, to proceed under pseudonyms, by appropriate motion at that time, consistent with the procedures outlined in the interim protective order (see attached).<br><br>The parties' proposed interim protective order (*see* ECF No. 92-1) is hereby approved, in part, with amendments to Paragraphs 1 and 8. See attached Order. Paragraph 1 is amended to reflect the Court's above directive regarding Jack Does 1-750 and Joan Does 1-750. Paragraph 8 is amended to reflect the Eastern District of New York's practices and procedures governing the filing of sealed documents. *See Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504 (E.D.N.Y. 1999) (denying request for a protective order that would have required sealing of materials marked confidential by the parties); *see also Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110 (2d Cir. 2006). Ordered by Magistrate Judge Taryn A. Merkl on 4/4/2022. (Chan, Kaity) (Entered: 04/04/2022) |
| 04/04/2022 | 94 | RESPONSE in Opposition re 83 MOTION to Dismiss for Failure to State a Claim , 84 MOTION to Dismiss for Failure to State a Claim , 87 MOTION to Dismiss for Failure to State a Claim , 81 Notice of MOTION to Dismiss for Failure to State a Claim *by State Defendants* filed by Jane Does, John Does. (Gannam, Roger) *Modified. (Latka-Mucha, Wieslawa)* (Entered: 04/04/2022) |

| 04/27/2022 | 95 | Letter MOTION for Leave to File Excess Pages by Trinity Health, Inc.. (Polito, Jacqueline) (Entered: 04/27/2022) |
|---|---|---|
| 04/27/2022 | | ORDER granting 95 Motion for Leave to File Excess Pages. The defendant Trinity may file a reply up to 14 pages in support of its motion to dismiss. Ordered by Judge Ann M. Donnelly on 4/27/2022. (Rosenthal, Joshua) (Entered: 04/27/2022) |
| 04/27/2022 | 96 | Letter MOTION for Leave to File Excess Pages by Westchester Medical Center Advanced Physician Services, P.C.. (Sittenreich, Marc) (Entered: 04/27/2022) |
| 04/28/2022 | | ORDER granting 96 Motion for Leave to File Excess Pages. The defendant APS may file a reply up to 15 pages in support of its motion to dismiss. Ordered by Judge Ann M. Donnelly on 4/28/2022. (Rosenthal, Joshua) (Entered: 04/28/2022) |
| 05/02/2022 | 97 | REPLY in Support re 83 MOTION to Dismiss for Failure to State a Claim filed by Trinity Health, Inc.. (Polito, Jacqueline) (Entered: 05/02/2022) |
| 05/02/2022 | 98 | REPLY in Support re 82 MOTION to Dismiss for Failure to State a Claim *State Defendants' Memorandum of Law in Support of Motion to Dismiss*, 81 Notice of MOTION to Dismiss for Failure to State a Claim *by State Defendants* filed by Kathy Hochul, Howard A. Zucker. (Farber, Seth) (Entered: 05/02/2022) |
| 05/02/2022 | 99 | REPLY to Response to Motion re 84 MOTION to Dismiss for Failure to State a Claim filed by New York-Presbyterian Healthcare System, Inc.. (Velazquez, Liza) (Entered: 05/02/2022) |
| 05/02/2022 | 100 | REPLY in Support re 87 MOTION to Dismiss for Failure to State a Claim filed by Westchester Medical Center Advanced Physician Services, P.C.. (Sittenreich, Marc) (Entered: 05/02/2022) |
| 06/15/2022 | | SCHEDULING ORDER: In light of 86 the defendant New York-Presbyterian Healthcare System's letter request, oral argument regarding 84 their motion to dismiss will be held on August 2, 2022 at 2:30 p.m. in Courtroom 4G North. Ordered by Judge Ann M. Donnelly on 6/15/2022. (Rosenthal, Joshua) (Entered: 06/15/2022) |
| 07/06/2022 | 101 | Letter *re: Recent Update Concerning Dr. A and We The Patriots* by New York-Presbyterian Healthcare System, Inc. (Velazquez, Liza) (Entered: 07/06/2022) |
| 08/02/2022 | | Minute Entry and Order for proceedings held before Judge Ann M. Donnelly: Motion Hearing held on 8/2/2022 re 84 Motion to Dismiss for Failure to State a Claim. Horatio Mihet and Roger Gannam appeared for the plaintiffs. Liza Velazquez and Emily Vance appeared for defendant New York-Presbyterian Healthcare System, Inc. Seth Farber appeared for defendant Kathy Hochul. Marc Sittenreich appeared for defendant Westchester Medical Center Advanced Physician Services, P.C. Case called. Discussion held. Decision on the Motion to Dismiss reserved. <br><br> The plaintiffs' 2 motion for a temporary restraining order and for a preliminary injunction is denied as foreclosed by Second Circuit precedent. *See We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266 (2d Cir. 2021). (Court Reporter Shernelle Griffith.) (Jones, Jenna) (Entered: 08/02/2022) |
| 08/24/2022 | 102 | Letter *re: Supplemental Authority* by New York-Presbyterian Healthcare System, Inc. (Attachments: # 1 Exhibit A) (Velazquez, Liza) (Entered: 08/24/2022) |
| 09/07/2022 | 103 | Letter *Response to ECF No. 102* by Jack Does, Jane Does (Schmid, Daniel) (Entered: 09/07/2022) |
| 09/09/2022 | 104 | Letter *Response to Plaintiffs' 9/7/22 Letter (ECF No. 103)* by Kathy Hochul, New York-Presbyterian Healthcare System, Inc., Trinity Health, Inc., Westchester Medical Center |

| | | Advanced Physician Services, P.C., Howard A. Zucker (Velazquez, Liza) (Entered: 09/09/2022) |
|---|---|---|
| 09/09/2022 | | ORDER re: 102 103 104 . The defendants' motions to dismiss are fully briefed. Further filings on those motions are unnecessary. Ordered by Judge Ann M. Donnelly on 9/9/2022. (Jones, Jenna) (Entered: 09/09/2022) |
| 09/30/2022 | 105 | MEMORANDUM DECISION AND ORDER. The defendants' motions to dismiss are granted. The complaint is dismissed for failure to state a claim upon which relief may be granted. Ordered by Judge Ann M. Donnelly on 9/30/2022. (Greene, Donna) (Entered: 09/30/2022) |
| 09/30/2022 | 106 | CLERK'S JUDGMENT that the defendants' motions to dismiss are granted; and that the complaint is dismissed for failure to state a claim upon which relief may be granted. ( Ordered by Jalitza Poveda, Deputy Clerk on behalf of Brenna B. Mahoney, Clerk of Court on 9/30/22 ) (RG) (Entered: 10/03/2022) |
| 10/28/2022 | 107 | NOTICE OF APPEAL as to 106 Clerk's Judgment, 105 Order on Motion to Dismiss for Failure to State a Claim,,,, by Jack Does, Jane Does, Joan Does, John Does. Filing fee $ 505, receipt number ANYEDC-16088256. Appeal Record due by 11/11/2022. (Schmid, Daniel) (Entered: 10/28/2022) |
| 10/31/2022 | | Electronic Index to Record on Appeal sent to US Court of Appeals. 107 Notice of Appeal, Documents are available via Pacer. For docket entries without a hyperlink or for documents under seal, contact the court and we'll arrange for the document(s) to be made available to you. (VJ) (Entered: 10/31/2022) |

| **PACER Service Center** | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/13/2023 10:34:44 | | | |
| **PACER Login:** | djschmid | **Client Code:** | |
| **Description:** | Docket Report | **Search Criteria:** | 1:21-cv-05067-AMD-TAM |
| **Billable Pages:** | 18 | **Cost:** | 1.80 |

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE 1, JANE DOES 1–3, <br> JACK DOES 1–1750, JOAN DOES 1–750, <br><br> Plaintiffs, <br> v. <br><br> KATHY HOCHUL, in her official capacity as <br> Governor of the State of New York, <br> HOWARD A. ZUCKER, in his official capacity <br> as Commissioner of the New York State <br> Department of Health, TRINITY HEALTH, <br> INC., NEW YORK-PRESBYTERIAN <br> HEALTHCARE SYSTEM, INC., <br> WESTCHESTER MEDICAL CENTER <br> ADVANCED PHYSICIAN SERVICES, P.C., <br><br> Defendants. | Case No. 21-CV-5067 |

## VERIFIED COMPLAINT FOR TEMPORARY RESTRAINING ORDER, PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF, DECLARATORY RELIEF AND DAMAGES

For their VERIFIED COMPLAINT against Defendants, KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., and WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C. ("WMC Health"), Plaintiffs, JOHN DOE 1–2, JANE DOES 1–3, JACK DOES 1–750, and JOAN DOES 1–750, allege and aver as follows:

## URGENCIES JUSTIFYING EMERGENCY RELIEF

1.  The seminal issue before this Court can be boiled down to a simple question: Does federal law apply in New York? Though the question borders on the absurd, so does Defendants' answer to it. Defendants have explicitly claimed to healthcare workers in New York, including

1

Plaintiffs, that federal law does not apply, and neither should they. Defendants have informed Plaintiffs, who have sincerely held religious objections to the Governor's mandate that all healthcare workers in New York must be fully vaccinated against COVID-19 by September 27, 2021 (the "**COVID-19 Vaccine Mandate**"), that no protections or considerations are given to religious beliefs in New York. Indeed, Defendants' answer has been an explicit claim that federal law does not provide protections to New York's healthcare workers. When presented with requests from Plaintiffs for exemption and accommodation for their sincerely held religious beliefs, Defendants have responded in the following ways:

- "**Religious exemptions are no longer accepted" in New York**. (*See infra* ¶ 83.)

- "As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination** – **even those previously approved**." (*See infra* ¶ 86.)

- "**WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**." (*See infra* ¶ 89.)

- "**Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs . . . . We are required to comply with state law**." (*See infra* ¶¶ 92–93.)

2.      The answer to the question before this Court is clear: **federal law and the United States Constitution are supreme over any New York statute or edict, and New York cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("This Constitution, and the Laws of the United States which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."). "**[The Supreme] Court has long made clear that**

2

federal law is as much the law of the several States as are the laws passed by their legislatures." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). Indeed, "**[i]t is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712–13 (1985) (emphasis added) (cleaned up).

3.    Thus, there can be no dispute that **New York is required to abide by federal law and provide protections to employees who have sincerely held religious objections to the COVID-19 vaccines**. And, here, the federal law is clear: There can be no dispute that Title VII of the Civil Rights Act prohibits Defendants from discriminating against Plaintiffs on the basis of their sincerely held religious beliefs. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's . . . religion."). And, Defendants have a duty under Title VII to provide religious exemptions and accommodations to those with sincerely held religious objections to the COVID-19 Vaccine Mandate. In direct contrast to this unquestionable principle of black letter law, however, every Defendant in this suit has seen fit to claim to its healthcare workers that the converse is true, and that New York law is supreme over federal law; has engaged in a conspiracy and scheme to discourage employees with religious objections to the mandatory vaccines from even seeking religious exemptions from such a policy; has informed Plaintiffs that their requests for an exemption and accommodation from the mandate cannot even be evaluated or considered; and has flatly denied all requests for religious exemption and accommodation from the mandate that all healthcare workers receive a COVID-19 vaccine.

3

Employers bent on discrimination "usually don't post help wanted signs reading 'blacks need not apply.'" *Lewis v. City of Unity City*, 918 F.3d 1213, 1261 (11th Cir. 2019) (Rosenbaum, J., concurring in part). But New York and its healthcare employers have no problem being direct: "**religious misbelievers need not apply**."

4.    The dispute in this case is not about what accommodations are available to Plaintiffs or whether accommodation of Plaintiffs' sincerely held religious objections can be conditioned on compliance with certain reasonable requirements. Plaintiffs have already acknowledged to Defendants that they are willing to comply with reasonable health and safety requirements that were deemed sufficient a few, short weeks ago and have been sufficient to consider them heroes for the last eighteen months. **The dispute is about whether Defendants are required to even consider a request for reasonable accommodation of Plaintiffs' sincerely held religious beliefs**. The answer is clear: **yes**. And this Court should require Defendants to acknowledge and accept that federal law mandates accommodation for Plaintiffs' sincerely held religious beliefs and order that Defendants extend such protections.

5.    **Plaintiffs have been given a deadline to become vaccinated by September 27, 2021 for hospital employees and October 7, 2021 for other facilities, forcing them to accept a vaccine injection by various arbitrary deadlines set by the employers, including September 13 at the latest for many Plaintiffs. If Plaintiffs do not comply with the vaccine mandate, they will be terminated and deprived of their ability to feed their families. No American should be faced with this unconscionable choice, especially the healthcare heroes who have served us admirably for the entire duration of COVID-19. A TRO is needed now to ensure that Defendants are enjoined from their continued efforts to deny that federal law even applies in New York and to compel Defendants to extend the protections that federal law demands**

of them. **Plaintiffs will suffer (and some have already suffered) irreparable harm by being forced to choose between their jobs and their sincerely held religious beliefs. Despite the Governor's mandate only requiring full vaccination by September 27, Plaintiff Jane Doe 3 was told her deadline to comply with the mandate was September 3, and she has already suffered de facto termination as a result of the Governor's mandate. Relief from this unconscionable and unlawful deprivation of Plaintiffs' liberties cannot wait another day.**

6.     Earlier this year, the then-Governor of New York rightfully declared that New York's healthcare workers were "the true heroes in this crisis." *Amid Ongoing COVID-19 Pandemic, Governor Cuomo Calls on Federal Government to Provide Hazard Pay to Essential Public Workers* (Apr. 20, 2020), https://www.governor.ny.gov/news/amid-ongoing-COVID-19-pandemic-governor-cuomo-calls-federal-government-provide-hazard-pay. Every word of that statement is equally as true today as it was the day the Governor uttered it. **Yet, on August 16, 2021, those same heroes have now been cast as evil villains for requesting exemption and accommodation from the Governor's edict for their sincerely held religious beliefs**.

7.     Neither the Governor nor any of the Defendant employers is permitted to blatantly ignore federal protections under the First Amendment and Title VII, and that is precisely why emergency relief is needed in the instant action: Plaintiffs need **an order mandating that Defendants follow federal protections for religious objectors to the COVID-19 Vaccine Mandate.**

8.     Plaintiffs are all healthcare workers in New York who have sincerely held religious beliefs that preclude them from accepting any of the COVID-19 vaccines because of the vaccines' connections to aborted fetal cell lines and for other religious reasons that have been articulated to Defendants. John Doe 2 has sincerely held religious beliefs that compel him to abstain from all

vaccines, and he has followed that religious conviction his entire life. Since COVID-19 first arrived in New York, Plaintiffs have risen every morning, donned their personal protective equipment, and fearlessly marched into hospitals, doctor's offices, senior living facilities, emergency rooms, operating rooms, and examination rooms with one goal: to provide quality healthcare to those suffering from COVID-19 and every other illness or medical need that confronted them. They did it bravely and with honor. They answered the call of duty to provide healthcare to the folks who needed it the most and worked tirelessly to ensure that those ravaged by the pandemic were given appropriate care. **All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for the last 18 months**. Defendants shamelessly seek to throw these healthcare workers out into the cold and ostracize them from the very medical facilities for which they have sacrificed so much solely because of Plaintiffs' desire to continue to provide quality healthcare while still exercising their sincerely held religious beliefs.

9. The law mandates that Defendants permit them to do both. Regardless of whether New York sees fit to extend protections to religious objectors under its own statutory framework, **federal law demands that these Plaintiffs and all employees in New York receive protections for their sincerely held religious beliefs**. This Court should hold New York to the bargain it made with its citizens when it joined the union and ensure that New York extends the required protections that federal law demands. As the Supreme Court held just last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2021) (emphasis added). When we have demanded so much of our healthcare heroes, we owe them nothing less than the full measure of our own commitment

to constitutional principles. Anything less would be desecrating the sacrifice these medical heroes made for untold numbers of people—including Defendants—when the call of duty demanded it of them. As the former Governor once stated, "Thanks is nice, but recognition of their efforts and their sacrifice is appropriate. . . . They're the ones carrying us through this crisis." Chris Sommerfeldt, *Cuomo proposes hazard pay for coronavirus frontline workers*, NY Daily News (Apr. 20, 2020), https://www.nydailynews.com/coronavirus/ny-coronavirus-cuomo-briefing-20200420-joov5nje2va6jairdx45ctteei-story.html. Unfortunately, Defendants have neither thanked nor recognized Plaintiffs' extraordinary efforts. This Court should.

## PARTIES

10.    Plaintiff John Doe 1 is a citizen of New York and the President of the Board of a private, faith-based senior care facility in New York with employees who have sincerely held religious objections to the Governor's COVID-19 Vaccine Mandate. John Doe 1 has sincerely held religious objections to accepting or receiving the COVID-19 vaccines (*see infra*) and has sincerely held religious beliefs that he is to honor the sincerely held religious beliefs of his employees who object to the COVID-19 vaccines. John Doe 1 will have only 1 employee in his entire facility as of October 7 if the Governor's mandate is not enjoined. John Doe 1 has been threatened with the loss of his facility and daily fines for failure to reject the request for religious objections from his employees.

11.    John Doe 2 is a citizen of New York and is a healthcare worker employed by Defendant New York-Presbyterian at one of its hospital facilities in New York. John Doe 2 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon his sincerely held religious beliefs against all vaccines, including COVID-19 vaccines, but New York-Presbyterian denied the exemption because of the Governor's

7

mandate. New York-Presbyterian previously granted John Doe 2 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, New York-Presbyterian revoked John Doe 2's religious exemption.

12.     Jane Doe 1 is a citizen of the State of New York and is a healthcare worker employed by New York-Presbyterian at Brooklyn Methodist Hospital. Jane Doe 1 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but New York-Presbyterian denied the exemption because of the Governor's mandate. New York-Presbyterian previously granted Jane Doe 1 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, New York-Presbyterian revoked Jane Doe 1's religious exemption.

13.     Jane Doe 2 is a citizen of the State of New York and is a doctor employed by Defendant WMC Health. Jane Doe 2 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but WMC Health denied the exemption because of the Governor's mandate.

14.     Jane Doe 3 is a citizen of the State of New York and is a registered nurse employed by Defendant Trinity Health at its St. Joseph's Health Hospital in New York. Jane Doe 3 submitted a written request for an exemption and accommodation from the Governor's COVID-19 Vaccine Mandate based upon her sincerely held religious beliefs against vaccines, including COVID-19 vaccines, but Trinity Health denied the exemption because of the Governor's mandate. Trinity

Health previously granted Jane Doe 3 exemptions from the flu vaccine and previously granted an exemption from the COVID-19 vaccine. After the Governor issued the mandate and Defendant Zucker removed religious accommodations from New York's public health regulations, Trinity Health revoked Jane Doe 3's religious exemption.

15.     Plaintiffs Jack Does 1–250 are citizens of the State of New York and are healthcare workers employed by Trinity Health at its healthcare facilities in New York. Jack Does 1–250 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but Trinity Health either denied their exemption requests or told them not to submit exemption requests because the Governor does not allow Trinity Health to grant or even consider religious exemption or accommodation requests.

16.     Plaintiffs Joan Does 1–250 are citizens of the State of New York and are healthcare workers employed by Trinity Health at its healthcare facilities in New York. Joan Does 1–250 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but Trinity Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow Trinity Health to grant or even consider religious exemption or accommodation requests.

17.     Plaintiffs Jack Does 251–500 are citizens of the State of New York and are healthcare workers employed by Defendant WMC Health at its healthcare facilities in New York. Jack Does 251–500 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but WMC Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow WMC Health to grant or even consider religious exemption or accommodation requests.

18.     Plaintiffs Joan Does 251–500 are citizens of the State of New York and are healthcare workers employed by WMC Health at its healthcare facilities in New York. Joan Does 251–500 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but WMC Health either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow WMC Health to grant or even consider religious exemption or accommodation requests.

19.     Plaintiffs Jack Does 501–750 are citizens of the State of New York and are healthcare workers employed by Defendant New York-Presbyterian at its healthcare facilities in New York. Jack Does 501–750 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but New York-Presbyterian either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow New York-Presbyterian to grant or even consider religious exemption or accommodation requests.

20.     Plaintiffs Joan Does 501–750 are citizens of the State of New York and are healthcare workers employed by New York-Presbyterian at its healthcare facilities in New York. Joan Does 501–750 seek exemption or accommodation from the Governor's COVID-19 Vaccine Mandate based upon their sincerely held religious beliefs, but New York-Presbyterian either denied their exemption requests or told them not to even submit exemption requests because the Governor does not allow New York-Presbyterian to grant or even consider religious exemption or accommodation requests.

21.     Defendant Kathy Hochul, in her official capacity as Governor of the State of New York (the "Governor"), is responsible for enacting the COVID-19 Vaccine Mandate. Governor Hochul is sued in her official capacity

10

22.     Defendant Howard A. Zucker, in his official capacity as Commissioner of the New York State Department of Health, is responsible for overseeing the healthcare industry in New York and is responsible for implementing the Governor's COVID-19 Vaccine Mandate and enforcing the provisions of threatened loss of licensure for those healthcare providers who refuse to mandate the COVID-19 vaccine. Defendant Zucker is sued in his official capacity.

23.     Defendant Trinity Health, Inc. is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

24.     Defendant New York-Presbyterian Healthcare System, Inc. is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

25.     Defendant Westchester Medical Center Advanced Physician Services, P.C. ("WMC Health") is a nonprofit corporation incorporated under the laws of the State of New York, employs a number of Plaintiffs in this action, has refused to even consider requests for religious accommodation, has revoked exemptions previously offered to Plaintiffs in this action, and has threatened to terminate Plaintiffs for their refusals to accept a vaccine that violates their sincerely held religious beliefs.

**JURISDICTION AND VENUE**

26.     This action arises under the First and Fourteenth Amendments to the United States Constitution and is brought pursuant to 42 U.S.C. § 1983. This action also arises under federal statutory laws, namely 42 U.S.C. § 1985(3) and 42 U.S.C. § 2000e-2.

27.     This Court has jurisdiction over the instant matter pursuant to 28 U.S.C. §§ 1331 and 1343.

28.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

29.     This Court is authorized to grant declaratory judgment under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02, implemented through Rule 57 of the Federal Rules of Civil Procedure.

30.     This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

31.     This Court is authorized to grant Plaintiffs' prayer for relief regarding damages under 42 U.S.C. § 2000e-5.

32.     This Court is authorized to grant Plaintiffs' prayer for relief regarding costs, including a reasonable attorney's fee, pursuant to 42 U.S.C. § 1988.

**GENERAL ALLEGATIONS**

**A.     THE GOVERNOR'S COVID-19 VACCINE MANDATE FOR HEALTHCARE WORKERS IN NEW YORK.**

33.     On August 16, 2021 the Governor announced that "all healthcare workers in New York State, including staff at hospitals and long-term care facilities (LTCF), including nursing

12

homes, adult care, and other congregate care settings, will be required to be vaccinated against COVID-19 by Monday, September 27." (A true and correct copy of the Governor's Mandatory COVID-19 Vaccine Policy is attached hereto as **EXHIBIT A** and incorporated herein.)

34. On August 18, 2021 the New York State Department of Health issued an Order for Summary Action requiring all "Covered entities" to "continuously require all covered personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021." (A true and correct copy of the Department of Health's Order for Summary Action is attached hereto as **EXHIBIT B** and incorporated herein.)

35. "Covered entity" was defined to include "a general hospital or nursing home pursuant to section 2801 of the Public Health Law." (Exhibit B at 3.)

36. "Covered Personnel," who are those employees required to be fully vaccinated under the Governor's Mandate, include

> All persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose patients, residents, or personnel working for such entity to the disease.

(Exhibit B at 3-4.)

37. In its Order for Summary Action on August 18, the State Department of Health included a religious exemption for those with sincerely held religious beliefs against receipt of one of the COVID-19 vaccines. (Exhibit B at 5.) Specifically, it stated: "Religious Exemption. Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the employer." (Exhibit B at 5–6.)

13

38.     Additionally, the Order for Summary Action provided for a medical exemption of those personnel for whom it was recommended by a physician or certified nurse practitioner and provided that reasonable accommodations should be provided for those employees as well. (Exhibit B at 5.)

39.     On August 26, the State Department of Health issued the amended rule concerning mandatory COVID-19 vaccines ("Section 2.61 Rule Change") finalizing the scope of the Governor's COVID-19 Vaccination Mandate. (A true and correct copy of the Section 2.61 Rule Change is attached hereto as **EXHIBIT C** and incorporated herein.)

40.     In the Section 2.61 Rule Change, New York completely removed religious exemptions and accommodations, precluding any healthcare worker in New York from requesting or obtaining a reasonable accommodation and exemption for their sincerely held religious beliefs. (Exhibit C at 3.)

41.     The Section 2.61 Rule Change retained the medical exemptions from the COVID-19 Vaccination Mandate, but specifically stripped religious objections from any accommodation or exemption process in New York.

**B.     PLAINTIFFS' SINCERELY HELD RELIGIOUS OBJECTIONS TO COVID-19 VACCINE MANDATE.**

42.     Plaintiffs all have sincerely held religious beliefs that preclude them from accepting or receiving any of the three available COVID-19 vaccines because of the connection between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs.

43.     A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is a grave sin against God and the murder of an innocent life.

14

44.     Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

45.     Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

46.     Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to their birth, and that because of this, life is sacred from the moment of conception. *See Psalms* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you, for I am fearfully and wonderfully made."); *Psalms* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (KJV) ("the LORD that made thee, and formed thee from the womb"); *Isaiah* 44:24 (KJV) ("Thus saith the LORD, thy redeemer, and he that formed thee from the womb, I am the LORD that maketh all things."); *Isaiah* 49:1 (KJV) ("The LORD hath called my from the womb; from the bowels of my mother hath he made mention of my name."); *Isaiah* 49:5 (KJV) ("the LORD that formed me from the womb to be his servant"); *Jeremiah* 1:5 (KJV) ("Before I formed thee in the belly I knew thee; and before thou camest forth out of the womb I sanctified thee, and I ordained thee.").

47.     Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because children are made in the image of God. *See Genesis* 1:26–27 (KJV) ("Let us make man in our image, after our likeness. . . . So God created man in his own image; in the image of God created he him; male and female created he them.").

48.     Plaintiffs also have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (KJV) ("Though shalt not kill."); *Exodus* 21:22–23 (setting the penalty as death for even the accidental killing of an unborn child); *Exodus* 23:7 (KJV) ("the innocent and righteous slay thou not, for I will not justify the wicked"); *Genesis* 9:6 (KJV) ("Whoso sheddeth a man's blood, by man shall his blood by shed: for in the image of God made he man."); *Deuteronomy* 27:25 (KJV) ("Cursed be he that taketh reward to slay an innocent person."); *Proverbs* 6:16–17 (KJV) ("These six things doth the LORD hate: yea, seven are an abomination to him . . . hands that shed innocent blood.").

49.     Plaintiffs also have the sincerely held religious belief that it would be better to tie a millstone around their necks and be drowned in the sea than bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2.

50.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that anything that condones, supports, justifies, or benefits from the taking of innocent human life via abortion is sinful, contrary to the Scriptures, and must be denounced, condemned, and avoided altogether.

51.     Plaintiffs have sincerely held religious beliefs, rooted in the Scriptures listed above, that it is an affront to Scripture's teaching that all life is sacred when any believer uses a product derived from or connected in any way with abortion.

52.     Plaintiffs' sincerely held religious beliefs, rooted in the above Scriptures, preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

16

53.     Plaintiffs have sincerely held religious objections to the Johnson & Johnson (Janssen Pharmaceuticals) vaccine because it unquestionably used aborted fetal cells lines to produce and manufacture the vaccine.

54.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19 _Vaccine_Fetal_Cell_Handout.pdf (last visited Sept. 8, 2021) (bold emphasis original).

55.     The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used the PER.C6 fetal cell line, "is a retinal cell line that was **isolated from a terminated fetus in 1985**." Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/CenterPH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Sept. 8, 2021) (emphasis added).

56.     Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. *Meredith Wadman*, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full (last visited Sept. 8, 2021).

57.     Plaintiffs have sincerely held religious objections to the Moderna and Pfizer/BioNTech COVID-19 vaccines because both of these vaccines, too, have their origins in research on aborted fetal cells lines.

58.     As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, the Moderna and Pfizer mRNA vaccines are ultimately derived from research and testing on aborted fetal cell lines. In fact, "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19 _Vaccine_Fetal_Cell_Handout.pdf (last visited Sept. 8, 2021) (emphasis added).

59.     The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (last visited Sept. 8, 2021).

60.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

61.     Plaintiffs have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15-20 (KJV) ("Know ye not that your bodies are the members of Christ? shall I then take the members of Christ and make them members of an harlot? God forbid. . . . What? Know ye not that your body is the temple of the Holy Ghost which is in you, which have of God, and ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.").

62.     In addition to their sincerely held religious beliefs that compel them to abstain from any connection to the grave sin of abortion, Plaintiffs have sincerely held religious beliefs that the Holy Spirit—through prayer and the revelation of Scripture—guide them in all decisions they make in life.

63.     Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, and was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *See John* 16:7 (KJV) ("Nevertheless I tell you the truth, It is expedient for you that I go away: for if I go not away, the Comforter will not come unto you; but if I depart, I will send him unto you."); *John* 14:26 (KJV) ("But the Comforter, which is the Holy Ghost, whom the Father will send in my name, he shall teach you all things, and bring all things to your remembrance, whatsoever I have said unto you.").

64.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8, 13 (KJV) ("And when he is come, he will reprove the world of sin, and of righteousness, and of judgment . . . . [W]hen he, the Spirit of truth, is come, he will guide you into all truth: for he

shall not speak of himself; but whatsoever he shall hear, that shall he speak: and he will shew you things to come.").

65.     Plaintiffs also have sincerely held religious beliefs that they shall receive all answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 (KJV) ("If any of you lack wisdom, let him ask of God, that giveth to all men liberally, and upbraideth not; and it shall be given him."); *Mark* 11:24 (KJV) ("Therefore I say unto you, What things soever ye desire, when ye pray, believe that ye receive them, and ye shall have them."); *Philippians* 4:6–7 (KJV) ("Be careful for nothing, but in everything by prayer and supplication with thanksgiving let your request be made known to God. And the peace of God, which passeth all understanding, shall keep your hearts and minds through Christ Jesus."); *1 John* 4:14–15 (KJV) ("And this is the confidence we have in him, that, if we ask anything according to his will, he heareth us. And if we know that he hear us, whatsoever we ask, we know that we have the petitions that we desired of him.").

66.     Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decision to make concerning these COVID-19 vaccines, and Plaintiffs have been convicted by the Holy Spirit in their beliefs that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

67.     Plaintiff John Doe 2 is a member of the Church of Christ, Scientist, and has a sincerely held religious objection to all vaccines. John Doe 2's Christian Scientist religious beliefs compel him to believe that healing comes through prayer.

68.     John Doe 2's sincerely held religious beliefs compel him to focus on prayer and Bible-based approaches when dealing with all health-related issues, and his convictions compel

him to believe what the book of *Psalms* states, which is that God "healeth all thy diseases." *Psalms* 103:3.

69. John Doe 2's sincerely held religious beliefs compel him to abstain from receiving all vaccines, and he has followed that religious practice his entire life.

## C. PLAINTIFFS' WILLINGNESS TO COMPLY WITH ALTERNATIVE SAFETY MEASURES.

70. Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the COVID-19 Vaccine Mandate.

71. Plaintiffs have all informed their respective employers that they are willing to wear facial coverings, submit to reasonable testing and reporting requirements, monitor symptoms, and otherwise comply with reasonable conditions that were good enough to permit them to do their jobs for the last 18 months with no questions asked.

72. In fact, last year the State said Plaintiffs were heroes because of their willingness to abide by the same conditions and requirements that Plaintiffs are willing to abide by now. *Amid Ongoing COVID-19 Pandemic, Governor Cuomo Calls on Federal Government to Provide Hazard Pay to Essential Public Workers* (Apr. 20, 2020), https://www.governor.ny.gov/news/amid-ongoing-COVID-19-pandemic-governor-cuomo-calls-federal-government-provide-hazard-pay.

73. In fact, New York still recommends that vaccinated individuals wear a mask in public settings. *See* Karen Matthews & Michael Hillap, *Masks encouraged in New York but no city or state mandate*, AP (Aug. 2, 2021), https://apnews.com/article/lifestyle-business-health-coronavirus-pandemic-97863fa563eadaad177e0ccba8000cb4.

74. And the reason for this is simple,

21

A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/ evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added).

75. Masking and testing protocols remain sufficient to prevent the spread of COVID-19 among healthcare workers, and constitute a reasonable alternative to vaccination as an accommodation of sincerely held religious beliefs.

76. In fact, the United States District Court for the Western District of Louisiana just issued a temporary restraining order against a medical school for the school's failure to grant religious exemptions when reasonable accommodations were available (such as masking, testing, etc.) and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body. *See Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021).

77. And the United States District Court for the Western District of Michigan issued a temporary restraining order against a school for its failure to allow students with religious exemptions and accommodations to participate in athletics and other extracurricular activities when masking and testing was available as a reasonable accommodation for such religious beliefs. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 1:21-cv-757, 2021 WL 3891620, *2 (W.D. Mich. Aug. 31, 2021)

22

### D. PLAINTIFFS' DESIRE FOR AN ACCOMMODATION AND DEFENDANTS' RESPONSES CLAIMING FEDERAL LAW IS IRRELEVANT IN NEW YORK.

78.     Consistent with his sincerely held religious beliefs, John Doe 1 and his facility desires to obtain a religious exemption and accommodation from the Governor's COVID-19 Vaccination Mandate, so that he may offer his employees with sincerely held religious objections to the vaccine an accommodation from the mandate.

79.     The Governor and State Department of Health, by removing religious exemptions from the COVID-19 Vaccine Mandate, have precluded John Doe 1 from offering religious exemptions to his employees and violated his sincerely held religious beliefs and those of his facility.

80.     John Doe 1 has spoken with state officials that are responsible for regulating his facility, and he has been informed that offering religious exemptions and accommodation to his employees will result in daily fines and a potential closure of his facility.

81.     John Doe 2, for the last 10 years of his employment with New York-Presbyterian, has received an exemption from mandatory vaccines in his employment. In fact, on July 28, 2021 Defendant New York-Presbyterian approved John Doe 2 for an exemption and accommodation from the COVID-19 vaccine. (A true and correct copy of John Doe 2's accommodation acceptance is attached hereto as **EXHIBIT D** and incorporated herein.)

82.     After an announcement from his employer that the Governor's mandate precluded New York-Presbyterian from offering or accepting religious exemptions and accommodations, John Doe 2 communicated with his superiors to inquire whether his previously granted religious exemption and accommodation would be honored. (A true and correct copy of John Doe 2's email communications with his superiors is attached hereto as **EXHIBIT E** and incorporated herein.)

23

83. New York-Presbyterian responded to John Doe 2, stating: "**Religious exemptions are no longer accepted**." (Exhibit E at 1 (emphasis added).)

84. Jane Doe 1 has also requested and received religious accommodations from New York-Presbyterian and Brooklyn Methodist Hospital in the past, and on August 24, 2021 was granted a religious accommodation from the Governor's COVID-19 Vaccine Mandate. (A true and correct copy of Jane Doe 1's religious exemption and accommodation is attached hereto as **EXHIBIT F** and incorporated herein.)

85. However, on August 30, New York-Presbyterian and Brooklyn Methodist Hospital informed Jane Doe 1 that her previously accepted religious exemption and accommodation had been revoked. (A true and correct copy of New York-Presbyterian's revocation of Jane Doe 1's religious exemption is attached hereto as **EXHIBIT G** and incorporated herein.)

86. Specifically, New York-Presbyterian stated:

Late last week, the Public Health and Health Planning Council of the NYS Department of Health formally approved and adopted the state*s COVID-19 vaccination requirement for health care workers. **In addition, the Council made the determination to exclude religious exemptions as an alternative to receiving the vaccine.** The DOH cited examples of measles and other vaccinations, which are required of NY health care workers, as also not having a religious exemption. As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination** *弊* **even those previously approved.**

(Exhibit G at 2.)

87. Thus, Jane Doe 1 was initially given a religious accommodation, but had it revoked because New York-Presbyterian stated religious accommodations were no longer available in the State of New York.

88. On August 26, 2021 Jane Doe 2 submitted a request for a religious exemption and accommodation to Defendant WMC Health outlining her religious beliefs against receipt of the COVID-19 Vaccine. However, on August 27, the very next day, WMC Health responded to Jane

24

Doe 2 informing her that because of the Governor's mandate, WMC Health was not even considering and reviewing, much less granting, requests for religious exemption or accommodation. (A true and correct copy of WMC Health's response to Jane Doe 2 is attached hereto as **EXHIBIT H** and incorporated herein.)

89.    Specifically, WMC Health stated:

On August 26, hospitals were notified that the New York State Department of Health was removing the option allowing hospitals to offer a religious exemption to health care workers from receiving the COVID-19 vaccination. Accordingly, **WMC Health, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered**.

(Exhibit H at 1 (emphasis added).)

90.    Jane Doe 3 also submitted a request for a religious accommodation and exemption from Defendant Trinity Health, and was initially approved for the religious exemption. (A true and correct copy of Trinity Health's approval of Jane Doe 3's religious exemption and accommodation is attached hereto as **EXHIBIT I** and incorporated herein.)

91.    On September 1, Trinity Health sent a communication to Jane Doe 3 informing her that her religious exemption had been revoked. (A true and correct copy of Trinity Health's communication revoking Jane Doe 3's religious exemption is attached hereto as **EXHIBIT J** and incorporated herein.)

92.    Specifically, Trinity Health stated that "**[u]nder the emergency regulations the NYS DOH will not permit exemptions or deferrals for: Sincerely held religious beliefs, Pregnancy, Planning to become pregnant**." (Exhibit J at 1 (emphasis added).)

93.    Trinity Health continued by noting: "We are required to comply with **state law**. Therefore, any colleague who was previously approved for one of the above-exemptions/deferrals will be required to provide proof of (1) first dose of a 2-dose series (mRNA) or (2) a single dose

25

vaccine (Johnson & Johnson) no later than September 21, 2021." (Exhibit J at 1 (emphasis added).) **However, Trinity Health has granted numerous exemptions and accommodations for its employees with religious beliefs at its facilities in other states, including *inter alia*, Michigan, Idaho, Florida and others**. Thus, Defendant knows that accommodations and exemptions are available but has refused to provide them.

94.     Thus, what Defendants hath given in accordance with federal law, Defendants hath taken away in violation federal law. Defendants have purported to remove the protection of federal law from all healthcare workers in New York and are forcing Plaintiffs to choose between their religious convictions and their abilities to feed their families.

## E.     DEFENDANTS ADMIT THAT OTHER, NON-RELIGIOUS EXEMPTIONS ARE AVAILABLE.

95.     The Governor's mandate, the State Department of Health's rules, and Defendants' responses to Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs all confirm that New York is, indeed, willing to grant other exemptions from the Governor's COVID-19 Vaccine Mandate but have relegated religious exemption requests to constitutional orphan status.

96.     On August 26, in its Section 2.61 rule change, Defendant Zucker's officials stripped out protections that were previously available under the Governor's mandate and have informed Plaintiffs and all healthcare workers in New York that their religious beliefs will not be honored in the workplace or in the State.

97.     In its response to John Doe 2, Defendant New York-Presbyterian has indicated it is perfectly willing to accept and grant medical exemptions but will not allow religious exemptions. Specifically, it told John Doe 2: "Religious exemptions are no longer accepted. **This does not**

**impact an approved or submitted Medical exemption request**." (Exhibit E at 1 (emphasis added).)

98.     Thus, while New York-Presbyterian says it will consider and grant the preferred medical exemptions, **it will not even consider the constitutionally orphaned religious exemption requests**.

99.     Jane Doe 1 was similarly informed that though religious exemptions had been removed, the preferred medical exemption requests would still be honored and considered. (Exhibit G at 1 ("Staff must receive the first dose of the vaccine or have an approved medical exemption by no later than September 15, 2021.").)

100.     And New York-Presbyterian further noted to Jane Doe 1 that while religious exemption request were previously available, only medical exemption requests would now be considered or honored. (Exhibit G at 2.)

101.     The Governor, through the COVID-19 Vaccine Mandate, has created a two-tiered system of exemptions, and placed religious beliefs and those who hold them in a class less favorable than other exemptions that Defendants are perfectly willing to accept.

102.     Under the Governor's scheme of creating a disfavored class of religious exemptions, Defendants are not even willing to consider religious exemptions, much less grant them to those who have sincerely held religious objections to the COVID-19 vaccines.

**F.     IRREPARABLE HARM SUFFERED BY PLAINTIFFS.**

103.     Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 faces the unconscionable choice of violating his own sincerely held religious beliefs by demanding he require his employees to accept the Governor's mandatory vaccine or potentially having to close his facility for failure to adhere to the Governor's requirements.

104.    **As of October 8, absent injunctive relief protecting his sincerely held religious convictions and those of his faith-based senior care facility, John Doe 1 will face daily fines and the potential closure of his facility for the mere act of exercising his religious beliefs**.

105.    Because of the Governor's COVID-19 Vaccine Mandate, John Doe 1 also faces the unconscionable choice of refusing to grant his employees' requests for exemption and accommodation from the Governor's COVID-19 Vaccine Mandate or facing significant daily fines and the closure of his facility.

106.    Because John Doe 2's request for an exemption and accommodation of his sincerely held religious beliefs has been denied by New York-Presbyterian, John Doe 2 faces the unconscionable choice of accepting a vaccine that conflicts with his religious beliefs or losing his job. Unless John Doe 2 immediately violates his conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, he will be terminated from his employment.

107.    Because Jane Doe 1's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by New York-Presbyterian, Jane Doe 1 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 1 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment.

108.    Additionally, **because Jane Doe 1 has merely requested an accommodation for her sincerely held religious beliefs, she has already been placed on unpaid leave and has been told she will be terminated if she does not violate her beliefs and comply with the Governor's mandate by September 10.**

28

109.    Because Jane Doe 2's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by WMC Health, Jane Doe 2 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 2 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment.

110.    Because Jane Doe 3's request for an exemption and accommodation of her sincerely held religious beliefs has been denied by Trinity Health, Jane Doe 3 faces the unconscionable choice of accepting a vaccine that conflicts with her religious beliefs or losing her job. Unless Jane Doe 3 immediately violates her conscience and sincere religious beliefs by beginning the Governor's mandatory COVID-19 vaccine process, she will be terminated from her employment

111.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights to the free exercise of their sincerely held religious beliefs.

112.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being forced to choose between maintaining the ability to feed their families and the free exercise of their sincerely held religious beliefs.

113.    As a result of the Governor's COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being stripped of their rights to equal protection of the law and being subjected to disfavored class status in New York.

**G.      PLAINTIFFS' ATTEMPTS TO SECURE RELIEF PRIOR TO SEEKING A TRO AND PRELIMINARY INJUNCTION.**

114.    On September 1, 2021, Plaintiffs' counsel sent the Governor, Commissioner Zucker, and New York Attorney General Letitia James a letter informing them that the COVID-19 Vaccine Mandate, both on its own and in its interpretation and application by others, deprives Plaintiffs of their rights to request an accommodation of their sincerely held religious beliefs under federal law. (A true and correct copy of the Letter sent to the Governor, Commissioner, and Attorney General is attached hereto as **EXHIBIT K** and incorporated herein.)

115.    Plaintiffs requested that the Governor withdraw her unlawful directives and publicly announce that any interpretation of her mandate to deprive Plaintiffs and all healthcare workers in New York of their rights to request and receive an exemption and accommodation for their sincerely held religious objections to the mandatory COVID-19 vaccine was unlawful and impermissible.

116.    Plaintiffs requested the response and the public announcement from the Governor prior to September 7, 2021.

117.    Plaintiffs' counsel requested a response informing counsel that the Governor would permit Plaintiffs and other healthcare workers with sincere religious objections to the vaccine to request and receive reasonable accommodation from the mandate.

118.    Neither Governor Hochul, Commissioner Zucker, nor Attorney General James responded to Plaintiffs' counsel, nor announced that federal law would continue to apply in New York, nor provided any information to healthcare employers in New York that federal law required Defendants to accept and permit their healthcare employees to request and receive religious exemption and accommodation from the COVID-19 Vaccine Mandate.

30

## COUNT I—VIOLATION OF THE FREE EXERCISE CLAUSE OF THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION.
### (All Plaintiffs v. Government Defendants)

119.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

120.     The Free Exercise Clause of the First Amendment to the United States Constitution, as applied to the states by the Fourteenth Amendment, prohibits the State from abridging Plaintiffs' rights to free exercise of religion.

121.     Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

122.     Plaintiffs reallege the discussion of their sincerely held religious beliefs (*supra* Section B) as if fully set forth herein.

123.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccine.

124.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the State's imposed value system.

125.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

126.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

127.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable.

128.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

129.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

130.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning exemption and accommodation requests based solely on sincerely held religious beliefs of healthcare workers in New York while permitting the more favored medical exemptions to be granted.

131.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

132.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

133.     There is no legitimate, rational, or compelling interest in the Governor's COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

134.     The Governor's COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

135.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

136.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT II—DEFENDANTS' WILLFUL DISREGARD OF FEDERAL PROTECTIONS VIOLATES THE SUPREMACY CLAUSE OF THE UNITED STATES CONSTITUTION BY ATTEMPTING TO MAKE NEW YORK LAW SUPERSEDE FEDERAL LAW
(All Plaintiffs v. All Defendants)

137.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

138.    The Supremacy Clause provides:

**This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

U.S. Const. Art. VI, cl. 22 (emphasis added).

139.    "**When federal law forbids an action that state law requires, the state law is without effect**." *Mutual Pharm. Co., Inc. v. Bartlett*, 570 U.S. 472, 486 (2013) (emphasis added).

140.    Simply put, "**It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law**." *Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up).

33

141.    By claiming that the protections of Title VII are inapplicable in the State of New York, which all Defendants have either explicitly or tacitly stated, Defendants are running roughshod over the Supremacy Clause and appointing themselves independent of the protections of federal law.

142.    As demonstrated by Defendant New York-Presbyterian's response to John Doe 2, New York-Presbyterian believes that "**religious accommodations are no longer accepted**" in New York (Exhibit E at 1 (emphasis added).)

143.    More specifically, in response to Jane Doe 1's request for an accommodation for her sincerely held religious beliefs, New York-Presbyterian stated that because New York "made the determination to exclude religious exemptions . . . **NYP must follow the NYS DOH requirement [and] can no longer consider any religious exemptions.**" (Exhibit G at 2.)

144.    Similarly, in its response to Jane Doe 3, Trinity Health explicitly stated that "[w]e are required to comply with **state law**," and **state law "will not permit exemptions or deferrals for . . . Sincerely held religious beliefs**." (Exhibit J at 1 (emphasis added).)

145.    Thus, all Defendants have purported to remove the availability of religious exemptions and accommodations within the State of New York, have ignored Title VII's commands that employers provide reasonable accommodations to individuals with sincerely held religious beliefs, and have claimed that the Governor's COVID-19 Vaccine Mandate prohibits employers in New York from even considering a religious exemption or accommodation request.

146.    By purporting to place itself outside of the protections of Title VII and the First Amendment, New York and each individual Defendant have violated the most basic premise that "**federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added).

147.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

148.    Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

### COUNT III—VIOLATION OF THE EQUAL PROTECTION CLAUSE OF THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION
### (All Plaintiffs v. Government Defendants)

149.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

150.    The Fourteenth Amendment to the United States Constitution guarantees Plaintiffs the right to equal protection under the law.

151.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgment of Plaintiffs' right to equal protection under the law, is not neutral, and specifically targets Plaintiffs' sincerely held religious beliefs for discriminatory and unequal treatment.

152.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is an unconstitutional abridgement of Plaintiffs' right to equal protection because it permits the State to treat Plaintiffs differently from other similarly situated healthcare workers on the basis of Plaintiffs' sincerely held religious beliefs.

153.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, singles out Plaintiffs for selective treatment based upon their sincerely held religious objections to the COVID-19 vaccines.

154.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, is intended to inhibit and punish the exercise of Plaintiffs sincerely held religious beliefs and objections to the COVID-19 vaccines.

155.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, creates a system of classes and categories that permit the Governor to accommodate the exemptions of some healthcare workers while denying consideration of those individuals requesting religious exemptions to the COVID-19 Vaccine Mandate.

156.     By removing statutorily required religious accommodations from consideration in New York, the Governor has created and singled out for disparate treatment a specific class of healthcare employees (*i.e.*, religious objectors to COVID-19 vaccinations) as compared to other similarly situated healthcare workers (*i.e.*, those with medical exemption requests).

157.     There is no rational, legitimate, or compelling interest in the Governor's COVID-19 Vaccine Mandate's application of different standards to the similarly situated field of healthcare workers.

158.     The Governor's COVID-19 Vaccine Mandate, on its face and as applied, discriminates between religion and nonreligion by allowing certain, nonreligious exemptions to the COVID-19 Vaccine Mandate while prohibiting religious exemptions to the same mandate for the same similarly situated field of healthcare workers.

159.     The Governor's COVID-19 Vaccine Mandate and New York's removal of religious exemptions for healthcare workers in New York, on their face and as applied, are each a "status-

36

based enactment divorced from any factual context" and "a classification of persons undertaken for its own sake," which "the Equal Protection Clause does not permit." *Romer v. Evans*, 517 U.S. 620, 635 (1996).

160.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, "identifies persons by a single trait [religious beliefs] and then denies them protections across the board." *Id.* at 633.

161.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, along with the State Department of Health's removal of religious exemptions from immunizations—while keeping medical exemptions as perfectly acceptable in the healthcare field—results in a "disqualification of a class of persons from the right to seek specific protection [for their religious beliefs]." *Id.*

162.    "A law declaring that in general it shall be more difficult for one group of citizens than for all others to seek [an exemption from the COVID-19 Vaccine Mandate] is itself a denial of equal protection of the laws in the most literal sense." *Id.* The Governor's COVID-19 Vaccine Mandate, on its face and as applied, and the State Department Of Health's removal of religious exemptions for healthcare workers, are each such a law.

163.    The Governor's COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

164.    Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT IV—VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, 42 U.S.C. § 2000e, *et seq.*
### (All Plaintiffs v. Private Employer Defendants)

165.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

166.    Title VII prohibits discrimination against employees on the basis of their religion. 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin . . . .").

167.    Title VII defines the protected category of religion to include "all aspects of religious observance and practice, as well as belief." 42 U.S.C. § 2000e(j). Moreover, as the EEOC has made clear, Title VII's protections also extend nonreligious beliefs if related to morality, ultimate ideas about life, purpose, and death. *See EEOC*, *Questions and Answers: Religious Discrimination in the Workplace* (June 7, 2008), https://www.eeoc.gov/laws/guidance/questions-and-answers-religious-discrimination-workplace ("Title VII's protections also extend to those who are discriminated against or need accommodation because they profess no religious beliefs."); (*Id.* ("Religious beliefs include theistic beliefs (i.e. those that include a belief in God) as well as non-theistic 'moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views.' Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because they are strongly held. Rather, religion typically concerns 'ultimate ideas' about 'life, purpose, and death.'").)

38

168.    Each of Defendants New York-Presbyterian, WMC Health, and Trinity Health is an employer within the meaning of Title VII and employs more than 15 employees.

169.    By refusing to even consider, much less grant, any religious accommodation or exemption to the Governor's COVID-19 Vaccine Mandate, Defendants have discriminated against Plaintiffs' sincerely held religious beliefs with respect to the terms, conditions, and privileges of employment.

170.    By threatening to fire Plaintiffs unless they violate their sincerely held religious beliefs and comply with the Governor's COVID-19 Vaccine Mandate, Defendants have unlawfully discriminated against Plaintiffs by discharging them or constructively discharging them for the exercise of their religious beliefs.

171.    Each Plaintiff has a bona fide and sincerely held religious belief against the COVID-19 vaccines, as outlined above.

172.    Plaintiffs' sincerely held religious beliefs conflict with Defendants' policies in collusion with the Governor to impose the Governor's COVID-19 Vaccine Mandate and to withhold from Plaintiffs any consideration of sincerely held religious objections.

173.    Plaintiffs have all raised their sincerely held religious beliefs with their respective Defendant employers, have brought their objections and their desire for a religious accommodation and exemption to the respective Defendants' attention, and have requested a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

174.    Employer Defendants' termination, threatened termination, denial of benefits, and other adverse employment actions against Plaintiffs are the result of Plaintiffs' exercise of their sincerely held religious beliefs.

175.     Employer Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

176.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT V—DEFENDANTS HAVE ENGAGED IN AN UNLAWFUL CONSPIRACY TO VIOLATE PLAINTIFFS' CIVIL RIGHTS IN VIOLATION OF 42 U.S.C. § 1985
### (All Plaintiffs v. All Defendants)

177.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–118 above as if fully set forth herein.

178.     Section 1985 provides a cause of action against public and private defendants who unlawfully conspire to deprive an individual of his constitutionally protected liberties. 42 U.S.C. § 1985(3) ("If two or more persons in any State or Territory conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws").

179.     The elements of the claim of conspiracy to violate civil rights under § 1985 include (1) a conspiracy, (2) a conspiratorial purpose to deprive the plaintiff of the equal protection of the laws or of a constitutionally protected liberty, (3) an overt act in furtherance of the conspiracy, and (4) a deprivation of a constitutionally protected right. *See Mian v. Donaldson, Lukin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1087 (2d Cir. 1993).

180. The Governor's COVID-19 Vaccine Mandate, combined with the Defendant employers' agreements to enforce its provisions and revoke any potential for a religious exemption for healthcare workers in New York, constitutes a conspiracy to violate Plaintiffs' civil and constitutional rights.

181. The Governor and Commissioner Zucker have both reached an agreement with the Defendant employers to deprive all healthcare workers in New York with any exemption or accommodation for the exercise of their sincerely held religious beliefs.

182. The Governor and Defendant employers have reached an express or tacit agreement to mandate COVID-19 vaccines for their employees while explicitly agreeing to deprive them of their right to request and receive an accommodation and exemption for their sincerely held religious beliefs.

183. The purpose behind the Governor's COVID-19 Vaccine Mandate, the State Department of Health's removal of the option for a religious exemption in the State of New York, and all Defendants' agreement to blatantly ignore federal law's requirement that employees be provided with a religious exemption and accommodation for sincerely held religious beliefs is based upon a conspiratorial purpose to deprive Plaintiffs of their rights to the exercise of their religious beliefs and equal protection.

184. Defendants' conspiratorial agreement has been made express by their stating that no religious exemptions would be permitted and by informing Plaintiff employees of the legally ridiculous positions that Title VII does not apply in New York and that federal law does not supersede New York law when it comes to the Governor's COVID-19 Vaccine Mandate.

185. The Governor has engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by mandating that all healthcare workers receive a mandatory

41

COVID-19 vaccine and by failing to recognize that federal law provides each of these employees with the option to request and receive a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

186.     Defendant employers have each engaged in an overt act in furtherance of the conspiracy to deprive Plaintiffs of their civil rights by refusing to consider, evaluate, or accept any Plaintiff's request for a religious exemption and accommodation from the COVID-19 Vaccine Mandate.

187.     By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected rights to free exercise of religion.

188.     By denying Plaintiffs their requested religious exemption and accommodation and threatening termination and discharge from employment because of the exercise of their sincerely held religious beliefs while at the same time granting and accepting the preferred category and class of medical exemptions for similarly situated healthcare workers, Defendants' conspiracy has resulted in a deprivation of Plaintiffs' constitutionally protected rights to equal protection of the laws under the Fourteenth Amendment.

189.     Defendants' refusal to consider or grant Plaintiffs' requests for accommodation and exemption from the Governor's COVID-19 Vaccine Mandate has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

190.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

42

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully pray for relief as follows:

A.      That the Court issue a temporary restraining order restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

  i. Defendant Governor Hochul will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

  ii. Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

  iii. Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable accommodation provisions such as masking, testing, symptom monitoring, and reporting;

    iv.    Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

    v.    Defendants will immediately cease proclaiming that federal law does not apply in New York or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of New York;

B.    That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining Defendants, all of their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Governor's COVID-19 Vaccine Mandate such that:

    i.    Defendant Governor Hochul will not enforce her unconstitutional mandate that John Doe 1 require his employees to receive a COVID-19 vaccine and refuse to provide a religious exemption or accommodation for such employees in violation of John Doe 1's and his employees' sincerely held religious beliefs;

    ii.    Defendants immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

    iii.    Defendants will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, provided that Plaintiffs agree to abide by reasonable

accommodation provisions such as masking, testing, symptom monitoring, and reporting;

iv.    Defendants will immediately cease threatening to discharge and terminate Plaintiffs from their employment for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs; and

v.    Defendants will immediately cease proclaiming that federal law does not apply in New York or otherwise declining Plaintiffs' requests for religious exemption on the basis that Title VII does not apply in the State of New York;

C.    That this Court render a declaratory judgment declaring that the Governor's COVID-19 Vaccine Mandate, both on its face and as applied by Defendants is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from healthcare workers in New York, and further declaring that

i.    in imposing a mandatory COVID-19 vaccine without any provision for exemption or accommodation for sincerely held religious beliefs, the Governor has violated the First Amendment to the United States Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs while granting exemptions to similarly situated healthcare workers with medical exemptions to the COVID-19 Vaccine Mandate;

ii.    by refusing to consider or evaluate Plaintiffs' requests for religious exemption and accommodation, Defendants have violated Title VII and other federal protections for Plaintiffs in New York and have blatantly ignored the Supremacy Clause's mandate that federal protections for

45

religious objectors in New York supersede and apply with full force in New York;

  iii. by terminating, threatening to terminate, or otherwise taking adverse employment action against Plaintiffs on the basis of their sincerely held religious beliefs, Defendants have violated Title VII of the Civil Rights Act of 1964;

  iv. that by creating a class system in which religious objectors in New York are disparately and discriminatorily denied the option of receiving an exemption or accommodation while simultaneously allowing and granting exemptions for other nonreligious reasons, Defendant Governor Hochul has violated Plaintiffs' rights to equal protection of the law; and

  v. that by entering into an agreement to unlawfully deprive Plaintiffs of their right to request and receive a religious exemption and accommodation from the Governor's COVID-19 Vaccine Mandate, Defendants have conspired to violate Plaintiffs' civil rights to free exercise of religious beliefs and equal protection of the law;

D. That this Court award Plaintiffs damages in an amount to be proven at trial, including damages for adverse employment action resulting in lost wages and other compensatory damages, and further including nominal damages in the absence of proof of damages;

E. That this Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

46

F.      That this Court retain jurisdiction over the matter for the purposes of enforcing the

Court's order;

G.      That this Court award Plaintiffs the reasonable costs and expenses of this action,

including a reasonable attorney's fee, in accordance with 42 U.S.C. § 1988; and

H.      That this Court grant such other and further relief as the Court deems equitable and

just under the circumstances.


Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Applications for Admission pro hac vice pending

**Attorneys for Plaintiffs**

47

**<u>VERIFICATION</u>**

I, John Doe 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ John Doe 1
John Doe 1
(Original Signature of John Doe 1 retained by Counsel)

48

**<u>VERIFICATION</u>**

I, John Doe Doe 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ John Doe 2

John Doe 2

(Original Signature of John Doe 2 retained by Counsel)

49

## **VERIFICATION**

I, Jane Doe 1, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 1
Jane Doe 1
(Original Signature of Jane Doe 1 retained by Counsel)

## **VERIFICATION**

I, Jane Doe 2, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 2
Jane Doe 2
(Original Signature of Jane Doe 2 retained by Counsel)

**VERIFICATION**

I, Jane Doe 3, am over the age of eighteen years and a Plaintiff in this action. The statements and allegations that pertain to me or which I make in this VERIFIED COMPLAINT are true and correct, and based upon my personal knowledge (unless otherwise indicated). If called upon to testify to their truthfulness, I would and could do so competently. I declare under penalty of perjury, under the laws of the United States and the State of New York, that the foregoing statements are true and correct to the best of my knowledge.

Dated: September 8, 2021

/s/ Jane Doe 3
Jane Doe 3
(Original Signature of Jane Doe 3 retained by Counsel)

52

**September 7, 2021** | 2:16 pm

**COVID-19 Vaccines**

On August 23, the FDA announced the full approval of the Pfizer-BioNTech vaccine for the prevention of COVID-19 disease in individuals age 16 and older. Read more.

**DETAILS  ›**



**AUGUST 16, 2021** | Albany, NY

# Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers

**COVID-19 VACCINE**   (/KI   **HEALTH**  )VID/KI   **PUBLIC SAFETY**   (/KEYWORDS/PUBLIC-
19-                                                                                         SAFETY)
VACCINE)

Department of Health Issues Section 16 Orders to Hospitals and Long-Term Care Facilities Requiring Policy to Ensure All Employees Are Vaccinated

First Dose Required by September 27

Department of Health Authorizes Third Dose for Immunocompromised New Yorkers

Governor Andrew M. Cuomo announced today that all healthcare workers in New York State, including staff at hospitals and long-term care facilities (LTCF), including nursing homes, adult care, and other congregate care settings, will be required to be vaccinated against COVID-19 by Monday, September 27. The State Department of Health will issue Section 16 Orders requiring all hospital, LTCF, and nursing homes to develop and implement a policy mandating employee vaccinations, with limited exceptions for those with religious or medical reasons. To date, 75% of the state's ~450,000 hospital workers, 74% of the state's ~30,000 adult care facility workers, and 68% of the state's ~145,500 nursing home workers have completed their vaccine series. Lt. Governor Kathy Hochul's administration was briefed prior to the announcement.

"When COVID ambushed New York last year, New Yorkers acted, while the Federal Government denied the problem," **Governor Cuomo said.** "Now, the Delta variant is spreading across the nation and across New York -- new daily positives are up over 1000% over the last six weeks (https://www.governor.ny.gov/sites/default/files/2021-08/Presentation1.pdf), and over 80 percent of recent positives in New York State are linked to the Delta variant. We must now act again to stop the spread. Our healthcare heroes led the battle against the virus, and now we need them to lead the battle between the variant and the vaccine. We have always followed the science, and we're doing so again today, with these recommendations by Dr. Zucker and federal and state health experts. But we need to do more. I have strongly urged private businesses to implement vaccinated-only admission policies, and school districts to mandate vaccinations for teachers. Neither will occur without the state legally mandating the actions -- private businesses will not enforce a vaccine mandate unless it's the law, and local school districts will be hesitant to make these challenging decisions without legal direction."

Governor Cuomo also announced that the Department of Health has authorized a third COVID-19 vaccine dose for New Yorkers with compromised immune systems, following the Centers for Disease Control and Prevention's recommendation last week. Eligible New Yorkers can receive their third dose 28 days after the completion of their two-dose vaccine series, effective immediately.

The CDC is currently recommending that moderately to severely immunocompromised people receive an additional dose, including people who have:

- Been receiving active cancer treatment for tumors or cancers of the blood;
- Received an organ transplant and are taking medications to suppress the immune system;
- Received a stem cell transplant within the last 2 years or are taking medicine to suppress the immune system;
- Moderate or severe primary immunodeficiency (such as DiGeorge syndrome, Wiskott-Aldrich syndrome);
- Advanced or untreated HIV infection;
- Active treatment with high-dose corticosteroids, cancer chemotherapy that causes severe immunosuppression, or other medications that may suppress your immune response.

New Yorkers should contact their healthcare provider about whether getting an additional dose is appropriate for them at this time.

**New York State Health Commissioner Dr. Howard Zucker said,** "While we have made tremendous progress in getting New Yorkers vaccinated, this pandemic is far from over and more must be done. The data and science tell us that getting more people vaccinated as quickly as possible is the best way to keep people safe, prevent further mutations, and enable us to

JA 074

Case 1:21-cv-05067-AMD-TAM Document 68-6 Filed 09/11/21 Page 79 of 295 PageID #: 66

resume our daily routines. This mandate will both help close the vaccination gap and reduce the spread of the Delta variant. I want to thank all New York State's healthcare workers for stepping up once again and showing our state that getting vaccinated is safe, easy, and most importantly, effective."

These steps follow Governor Cuomo's August 2 announcement that MTA and Port Authority employees working in New York facilities will be required to be vaccinated for COVID-19 by Labor Day, and his July 28 announcement that state employees and patient-facing employees in state-run hospitals will be required to get vaccinated for COVID-19 by Labor Day. State employees who choose to remain unvaccinated will be required to undergo weekly COVID testing.

# Contact the Governor's Press Office

📞 **Contact us by phone:**

Albany: **(518) 474-8418**
New York City: **(212) 681-4640**

✉️ **Contact us by email:**

**Press.Office@exec.ny.gov**

# Translations

### Arabic Translation
الترجمة إلى العربية

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Arabic.pdf)

### Bengali Translation
বাংলা অনুবাদ

(https://www.governor.ny.gov/sites/default/files/2021-08/08.16.21.rel_.MANDATE_Bengali.pdf)

JA 075

**Chinese Translation**

中文翻譯

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Chinese.pdf)

---

**Haitian-Creole Translation**

Tradiksyon kreyòl ayisyen

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_HaitianCreole.pdf)

---

**Italian Translation**

Traduzione italiana

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Italian.pdf)

---

**Korean Translation**

한국어 번역

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Korean.pdf)

---

**Polish Translation**

Polskie tłumaczenie

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Polish.pdf)

---

**Russian Translation**

Перевод на русский язык

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Russian.pdf)

---

**Spanish Translation**

Traducción al español

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Spanish.pdf)

---

**Yiddish Translation**

אידישע איבערטייטשונג

(https://www.governor.ny.gov/sites/default/files/2021-
08/08.16.21.rel_.MANDATE_Yiddish.pdf)

---

STATE OF NEW YORK : DEPARTMENT OF HEALTH
--------------------------------------------------------------------------------

IN THE MATTER

OF

COVERED ENTITIES IN THE PREVENTION
AND CONTROL OF THE 2019 NOVEL
CORONAVIRUS

--------------------------------------------------------------------------------

**ORDER FOR
SUMMARY
ACTION**

WHEREAS the 2019 Novel Coronavirus ("COVID-19") is an infection associated with fever

and signs and symptoms of pneumonia and other respiratory illness that is easily transmitted

from person to person, predominantly through droplet transmission, and has significant public

health consequences; and

WHEREAS COVID-19 is a global pandemic that, to date, has resulted in 2,195,903 documented

cases and 43,277 deaths in New York State alone; and

WHEREAS the Centers for Disease Control and Prevention (CDC) has identified a concerning

national trend of increasing circulation of the Delta COVID-19 variant; and

WHEREAS the U.S. Food and Drug Administration (FDA) granted Emergency Use

Authorizations (EUA) for Pfizer -BioNTech, Moderna, and  Janssen COVID-19 vaccines which

have been shown to be safe and effective as determined by data from the manufacturers and

findings from large clinical trials; and

WHEREAS while New York State has aggressively promoted vaccination since COVID-19 vaccines first became available in December 2020, current vaccination rates are not high enough to prevent the spread of the Delta variant, which is approximately twice as transmissible as the original SARS-CoV-2 strain; and

WHEREAS data show that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 as are vaccinated individuals; and

WHEREAS those who are unvaccinated have over 10 times the risk of being seriously ill and hospitalized with COVID-19; and

WHEREAS since early July, cases have risen 10-fold, and 95 percent of sequenced recent positives in New York State were the Delta variant; and

WHEREAS certain settings, such as healthcare facilities, pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable patient and resident populations that they serve; and

WHEREAS unvaccinated personnel in such settings have an unacceptably high risk of both acquiring COVID-19 and transmitting such virus to colleagues and/or vulnerable patients or residents; and

WHEREAS based upon the foregoing, the Commissioner of Health of the State of New York is of the Opinion that all entities identified in this Order ("covered entities"), must immediately implement and comply with the requirements identified herein, and that failure to do so constitutes a danger to the health, safety, and welfare of the people of the State of New York; and

WHEREAS the Commissioner of Health of the State of New York has determined that requiring covered entities to immediately implement and comply with the requirements set forth herein and cannot be achieved through alternative means, including the adoption of the Public Health and Health Planning Council of emergency regulations, without delay, which would be prejudicial to health, safety, and welfare of the people of the State of New York; and

WHEREAS it therefore appears to be prejudicial to the interest of the people to delay action for fifteen (15) days until an opportunity for a hearing can be provided in accordance with the provisions of Public Health Law Section (PHL) 12-a.

NOW, THEREFORE, THE HEALTH COMMISSIONER HEREBY ORDERS THAT:  Pursuant to PHL § 16:

(a)  Definitions.

    (1)  Covered entity shall mean a general hospital or nursing home pursuant to section 2801 of the Public Health Law.

    (2)  Covered Personnel. All persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if

they were infected with COVID-19, they could potentially expose, patients, residents, or personnel working for such entity to the disease.

(3) Fully vaccinated. Covered personnel are considered fully vaccinated for COVID-19 ≥ 2 weeks after receiving either (1) the second dose in a 2-dose series (e.g., Pfizer-BioNTech or Moderna), or (2) a single-dose vaccine (e.g., Johnson & Johnson [J&J]/Janssen), authorized for emergency use or approved by the U.S. Food and Drug Administration, and holds an emergency use listing by the World Health Organization.

(4) Documentation of vaccination shall include:

(i) a record prepared and signed by the licensed health practitioner who administered the vaccine, which may include a CDC COVID-19 vaccine card;

(ii) an official record from one of the following, which may be accepted as documentation of immunization without a health practitioner's signature: a foreign nation, NYS Countermeasure Data Management System (CDMS), the NYS Immunization Information System (NYSIIS), City Immunization Registry (CIR), a Department-recognized immunization registry of another state, or an electronic health record system; or

(iii) any other documentation determined acceptable by the Department. Unless otherwise specified by the Department.

(iv) The following elements, unless otherwise specified by the Department: manufacturer, lot number(s), date(s) of vaccination; and vaccinator or vaccine clinic site.

(b) Covered entities shall continuously require all covered personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021. Documentation of such vaccination shall be made in personnel records or other appropriate records in accordance with applicable privacy laws, except as set forth in section (c) of this order.

(c) Limited exemptions to vaccination:

1.  Medical exemption. If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to a specific member of a covered entity's personnel, based upon a specific pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be subject to a reasonable accommodation of such health condition only until such immunization is found no longer to be detrimental to the health of such member. The nature and duration of the medical exemption must be stated in the personnel employment medical record and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services).  Covered entities shall document medical exemptions and any reasonable accommodation in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.

2.  Religious exemption. Covered entities shall grant a religious exemption for COVID-19 vaccination for covered personnel if they hold a genuine and sincere religious belief contrary to the practice of immunization, subject to a reasonable accommodation by the

employer. Covered entities shall document such exemptions and such reasonable accommodations in personnel records or other appropriate records in accordance with applicable privacy laws by September 27, 2021, and continuously, as needed, thereafter.

(d) Upon the request of the Department, covered entities must report the number and percentage of covered personnel that have been vaccinated against COVID-19 and the number of personnel for which medical or religious exemptions have been granted by covered entities in a manner and format determined by the Department.

(e) Covered entities shall develop and implement a policy and procedure to ensure compliance with the provisions of Order.

(f) The Department may require all covered personnel, whether vaccinated or unvaccinated, to wear acceptable face coverings for the setting in which they work. Covered entities shall supply acceptable face coverings required by this section at no cost to covered personnel.

FURTHER, I DO HEREBY give notice that any entity that receives notice of and is subject to this Order is provided with an opportunity to be heard at 10:00 a.m. on September 2, 2021, via videoconference, to present any proof that failure to implement and comply with the requirements of this Order does not constitute a danger to the health of the people of the State of New York. If any such entity desires to participate in such a hearing, please inform the Department by written notification to **Vaccine.Order.Hearing@health.ny.gov**, New York State Department of Health, Corning Tower, Room 2438, Governor Nelson A. Rockefeller Empire

State Plaza, Albany, New York 12237, within five (5) days of their receipts of this Order. Please

include in the notification the email addresses of all individuals who will be representing or

testifying for the entity at the hearing so that an invitation to access the hearing remotely can be

provided.


DATED:      Albany, New York              NEW YORK STATE DEPARTMENT OF HEALTH
            August 18, 2021


                                          BY: _____
                                              HOWARD A. ZUCKER, M.D., J.D.
                                              Commissioner of Health

Pursuant to the authority vested in the Public Health and Health Planning Council and the Commissioner of Health by Public Health Law Sections 225, 2800, 2803, 3612, and 4010, as well as Social Services Law Sections 461 and 461-e, Title 10 (Health) of the Official Compilation of Codes, Rules and Regulations of the State of New York, is amended, to be effective upon filing with the Department of State, to read as follows:

*Part 2 is amended to add a new section 2.61, as follows:*

2.61. Prevention of COVID-19 transmission by covered entities.

(a) Definitions.

(1)    "Covered entities" for the purposes of this section, shall include:

(i) any facility or institution included in the definition of "hospital" in section 2801 of the Public Health Law, including but not limited to general hospitals, nursing homes, and diagnostic and treatment centers;

(ii) any agency established pursuant to Article 36 of the Public Health Law, including but not limited to certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies;

(iii) hospices as defined in section 4002 of the Public Health Law; and

(iv) adult care facility under the Department's regulatory authority, as set forth in Article 7 of the Social Services Law.

(2) "Personnel," for the purposes of this section, shall mean all persons employed or affiliated with a covered entity, whether paid or unpaid, including but not limited to employees, members of the medical and nursing staff, contract staff, students, and volunteers, who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease.

(3) "Fully vaccinated," for the purposes of this section, shall be determined by the Department in accordance with applicable federal guidelines and recommendations. Unless otherwise specified by the Department, documentation of vaccination must include the manufacturer, lot number(s), date(s) of vaccination; and vaccinator or vaccine clinic site, in one of the following formats:

(i) record prepared and signed by the licensed health practitioner who administered the vaccine, which may include a CDC COVID-19 vaccine card;

(ii) an official record from one of the following, which may be accepted as documentation of immunization without a health practitioner's signature: a foreign nation, NYS Countermeasure Data Management System (CDMS), the NYS Immunization Information System (NYSIIS), City Immunization Registry (CIR), a Department-recognized immunization registry of another state, or an electronic health record system; or

(iii) any other documentation determined acceptable by the Department.

(c) Covered entities shall continuously require personnel to be fully vaccinated against COVID-19, with the first dose for current personnel received by September 27, 2021 for general hospitals and nursing homes, and by October 7, 2021 for all other covered entities absent receipt of an exemption as allowed below. Documentation of such vaccination shall be made in personnel records or other appropriate records in accordance with applicable privacy laws, except as set forth in subdivision (d) of this section.

(d) Exemptions. Personnel shall be exempt from the COVID-19 vaccination requirements set forth in subdivision (c) of this section as follows:

(1) Medical exemption. If any licensed physician or certified nurse practitioner certifies that immunization with COVID-19 vaccine is detrimental to the health of member of a covered entity's personnel, based upon a pre-existing health condition, the requirements of this section relating to COVID-19 immunization shall be inapplicable only until such immunization is found no longer to be detrimental to such personnel member's health. The nature and duration of the medical exemption must be stated in the personnel employment medical record, or other appropriate record, and must be in accordance with generally accepted medical standards, (see, for example, the recommendations of the Advisory Committee on Immunization Practices of the U.S. Department of Health and Human Services), and any reasonable accommodation may be granted and must likewise be documented in such record. Covered entities shall document medical exemptions in personnel records or other appropriate records in accordance with applicable privacy laws by: (i) September 27, 2021 for general hospitals and nursing homes; and (ii) October 7,

2021 for all other covered entities. For all covered entities, documentation must occur continuously, as needed, following the initial dates for compliance specified herein, including documentation of any reasonable accommodation therefor.

(e) Upon the request of the Department, covered entities must report and submit documentation, in a manner and format determined by the Department, for the following:

(1) the number and percentage of personnel that have been vaccinated against COVID-19;

(2) the number and percentage of personnel for which medical exemptions have been granted;

(3) the total number of covered personnel.

(f) Covered entities shall develop and implement a policy and procedure to ensure compliance with the provisions of this section and submit such documents to the Department upon request.

(g) The Department may require all personnel, whether vaccinated or unvaccinated, to wear an appropriate face covering for the setting in which such personnel are working in a covered entity. Covered entities shall supply face coverings required by this section at no cost to personnel.

*Subparagraph (vi) of paragraph (10) of subdivision (b) of Section 405.3 of Part 405 is added to read as follows:*

(vi) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation immediately available upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (5) of subdivision (a) of Section 415.19 of Part 415 is added to read as follows:*

(5) collects documentation of COVID-19 or documentation of a valid medical exemption to such vaccination, for all personnel pursuant to section 2.61 of this title, in accordance with applicable privacy laws, and making such documentation immediately available upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (7) of subdivision (d) of Section 751.6 is added to read as follows:*

(7) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (6) of subdivision (c) of Section 763.13 is added to read as follows:*

(6) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making

such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (7) of subdivision (d) of Section 766.11 is added to read as follows:*

(7) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (8) of subdivision (d) of Section 794.3 is added to read as follows:*

(8) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (v) of subdivision (q) of Section 1001.11 is added to read as follows:*

(v)  documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of this Title, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (18) of subdivision (a) of Section 487.9 of Title 18 is added to read as follows:*

(18) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of Title 10, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (14) of subdivision (a) of Section 488.9 of Title 18 is added to read as follows:*

(14) documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of Title 10, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

*Paragraph (15) of subdivision (a) of Section 490.9 of Title 18 is added to read as follows:*
(15) Operator shall collect documentation of COVID-19 vaccination or a valid medical exemption to such vaccination, pursuant to section 2.61 of Title 10, in accordance with applicable privacy laws, and making such documentation available immediately upon request by the Department, as well as any reasonable accommodation addressing such exemption.

## REGULATORY IMPACT STATEMENT

**Statutory Authority:**

The authority for the promulgation of these regulations is contained in Public Health Law (PHL) Sections 225(5), 2800, 2803(2), 3612 and 4010 (4). PHL 225(5) authorizes the Public Health and Health Planning Council (PHHPC) to issue regulations in the State Sanitary Code pertaining to any matters affecting the security of life or health or the preservation and improvement of public health in the state of New York, including designation and control of communicable diseases and ensuring infection control at healthcare facilities and any other premises.

PHL Article 28 (Hospitals), Section 2800 specifies that "hospital and related services including health-related service of the highest quality, efficiently provided and properly utilized at a reasonable cost, are of vital concern to the public health. In order to provide for the protection and promotion of the health of the inhabitants of the state, pursuant to section three of article seventeen of the constitution, the department of health shall have the central, comprehensive responsibility for the development and administration of the state's policy with respect to hospital and related services, and all public and private institutions, whether state, county, municipal, incorporated or not incorporated, serving principally as facilities for the prevention, diagnosis or treatment of human disease, pain, injury, deformity or physical condition or for the rendering of health-related service shall be subject to the provisions of this article."

PHL Section 2803(2) authorizes PHHPC to adopt and amend rules and regulations, subject to the approval of the Commissioner, to implement the purposes and provisions of PHL Article 28, and to establish minimum standards governing the operation of health care facilities.

PHL Section 3612 authorizes PHHPC to adopt and amend rules and regulations, subject to the approval of the Commissioner, with respect to certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies. PHL Section 4010 (4) authorizes PHHPC to adopt and amend rules and regulations, subject to the approval of the Commissioner, with respect to hospice organizations.

Social Service Law (SSL) Section 461 requires the Department to promulgate regulations establishing general standards applicable to Adult Care Facilities (ACF). SSL Section 461-e authorizes the Department to promulgate regulations to require adult care facilities to maintain certain records with respect to the facilities residents and the operation of the facility.

**Legislative Objectives:**

The legislative objective of PHL Section 225 empowers PHHPC to address any issue affecting the security of life or health or the preservation and improvement of public health in the state of New York, including designation and control of communicable diseases and ensuring infection control at healthcare facilities and any other premises. PHL Article 28 specifically addresses the protection of the health of the residents of the State by assuring the efficient provision and proper utilization of health services of the highest quality at a reasonable cost. PHL Article 36 addresses the services rendered by certified home health agencies, long term home health care programs, acquired immune deficiency syndrome (AIDS) home care programs, licensed home care service agencies, and limited licensed home care service agencies. PHL Article 40 declares that hospice is a socially and financially beneficial alternative to conventional

curative care for the terminally ill.  Lastly, the legislative objective of SSL Section 461 is to promote the health and well-being of residents of ACFs.

**Needs and Benefits:**

The Centers for Disease Control and Prevention (CDC) has identified a concerning national trend of increasing circulation of the SARS-CoV-2 Delta variant. Since early July, cases have risen 10-fold, and 95 percent of the sequenced recent positives in New York State were the Delta variant.  Recent New York State data show that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 compared to vaccinated individuals.  Those who are unvaccinated have over 11 times the risk of being hospitalized with COVID-19.

The COVID-19 vaccines are safe and effective.  They offer the benefit of helping to reduce the number of COVID-19 infections, including the Delta variant, which is a critical component to protecting public health.  Certain settings, such as healthcare facilities and congregate care settings, pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable patient and resident populations that they serve. Unvaccinated personnel in such settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents, exacerbating staffing shortages, and causing unacceptably high risk of complications.

In response to this significant public health threat, through this emergency regulation, the Department is requiring covered entities to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records.  Covered entities are also required to review and make determinations on medical exemption requests, and provide

reasonable accommodations therefor to protect the wellbeing of the patients, residents and personnel in such facilities. Documentation and information regarding personnel vaccinations as well as exemption requests granted are required to be provided to the Department immediately upon request.

**Costs for the Implementation of and Continuing Compliance with these Regulations to the Regulated Entity:**

Covered entities must ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records, as well as any reasonable accommodations. This is a modest investment to protect the health and safety of patients, residents, and personnel, especially when compared to both the direct medical costs and indirect costs of personnel absenteeism.

**Cost to State and Local Government:**

The State operates several healthcare facilities subject to this regulation. Most county health departments are licensed under Article 28 or Article 36 of the PHL and are therefore also subject to regulation. Similarly, certain counties and the City of New York operate facilities licensed under Article 28. These State and local public facilities would be required to ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. They must also review and make determinations on requests for

medical exemptions, which must also be documented in personnel or other appropriate records, along with any reasonable accommodations.

Although the costs to the State or local governments cannot be determined with precision, the Department does not expect these costs to be significant. State facilities should already be ensuring COVID-19 vaccination among their personnel, subject to State directives. Further, these entities are expected to realize savings as a result of the reduction in COVID-19 in personnel and the attendant loss of productivity and available staff.

**Cost to the Department of Health:**

There are no additional costs to the State or local government, except as noted above. Existing staff will be utilized to conduct surveillance of regulated parties and to monitor compliance with these provisions.

**Local Government Mandates:**

Covered entities operated by local governments will be subject to the same requirements as any other covered entity subject to this regulation.

**Paperwork:**

This measure will require covered entities to ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records along with any reasonable accommodations.

Upon the request of the Department, covered entities must report the number and percentage of total covered personnel, as well as the number and percentage that have been vaccinated against COVID-19 and those who have been granted a medical exemption, along with any reasonable accommodations. Facilities and agencies must develop and implement a policy and procedure to ensure compliance with the provisions of this section, making such documents available to the Department upon request.

**Duplication:**

This regulation will not conflict with any state or federal rules.

**Alternative Approaches:**

One alternative would be to require covered entities to test all personnel in their facility before each shift worked. This approach is limited in its effect because testing only provides a person's status at the time of the test and testing every person in a healthcare facility every day is impractical and would place an unreasonable resource and financial burden on covered entities if PCR tests couldn't be rapidly turned around before the commencement of the shift. Antigen tests have not proven as reliable for asymptomatic diagnosis to date.

Another alternative to requiring covered entities to mandate vaccination would be to require covered entities to mandate all personnel to wear a fit-tested N95 face covering at all times when in the facility, in order to prevent transmission of the virus. However, acceptable face coverings, which are not fit-tested N95 face coverings have been a long-standing requirement in these covered entities, and, while helpful to reduce transmission it does not prevent transmission

and; therefore, masking in addition to vaccination will help reduce the numbers of infections in these settings even further.

**Federal Requirements:**

There are no minimum standards established by the federal government for the same or similar subject areas.

**Compliance Schedule:**

These proposed emergency regulations will become effective upon filing with the Department of State and will expire, unless renewed, 90 days from the date of filing. As the COVID-19 pandemic is consistently and rapidly changing, it is not possible to determine the expected duration of need at this point in time. The Department will continuously evaluate the expected duration of these emergency regulations throughout the aforementioned 90-day effective period in making determinations on the need for continuing this regulation on an emergency basis or issuing a notice of proposed ruling-making for permanent adoption. This notice does not constitute a notice of proposed or revised rule making for permanent adoption.

**Contact Person:**          Ms. Katherine E. Ceroalo
                             NYS Department of Health
                             Bureau of House Counsel, Regulatory Affairs Unit
                             Corning Tower Building, Room 2438
                             Empire State Plaza
                             Albany, NY 12237
                             (518) 473-7488
                             (518) 473-2019 –FAX
                             REGSQNA@health.state.ny.us

# REGULATORY FLEXIBILITY ANALYSIS

**Effect on Small Business and Local Government:**

This regulation will not impact local governments or small businesses unless they operate a covered entity as defined in the proposed emergency regulation. Currently, 5 general hospitals, 79 nursing homes, 75 certified home health agencies (CHHAs), 20 hospices and 1,055 licensed home care service agencies (LHCSAs), and 483 adult care facilities (ACFs) are small businesses (defined as 100 employees or less), independently owned and operated affected by this rule. Local governments operate 19 hospitals, 137 diagnostic and treatment facilities, 21 nursing homes, 12 CHHAs, at least 48 LHCSAs, 1 hospice, and 2 ACFs.

**Compliance Requirements:**

Covered entities are required to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records. Covered entities are also required to review and make determinations on medical exemption requests, along with any reasonable accommodations.

Upon the request of the Department, covered entities must report the number and percentage of total covered personnel, as well as the number and percentage that have been vaccinated against COVID-19 and those who have been granted a medical exemption, along with any reasonable accommodations. Facilities and agencies must develop and implement a policy and procedure to ensure compliance with the provisions of this section, making such documents available to the Department upon request.

**Professional Services:**

There are no additional professional services required as a result of this regulation.

**Compliance Costs:**

Covered entities must ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records, along with any reasonable accommodations. This is a modest investment to protect the health and safety of patients, residents, and personnel, especially when compared to both the direct medical costs and indirect costs of personnel absenteeism.

**Economic and Technological Feasibility:**

There are no economic or technological impediments to the rule changes.

**Minimizing Adverse Impact:**

As part of ongoing efforts to address the COVID-19 pandemic, regulated parties have been a partner in implementing measures to limit the spread and/or mitigate the impact of COVID-19 within the Department since March of 2020. Further, the Department currently has an emergency regulation in place, which requires nursing homes and adult care facilities to offer COVID-19 vaccination to personnel and residents, which has helped to facilitated vaccination of personnel. Further, it is the Department's understanding that many facilities across the State have begun to impose mandatory vaccination policies. Lastly, on August 18, 2021, President Biden announced that as a condition of participating in the Medicare and Medicaid programs, the United States Department of Health and Human Services will be developing regulations requiring nursing homes to mandate COVID-19 vaccination for workers.

**Small Business and Local Government Participation:**

Due to the emergent nature of COVID-19, small businesses and local governments were not consulted. If these regulations are proposed for permanent adoption, all parties will have an opportunity to provide comments during the notice and comment period.

## RURAL AREA FLEXIBILITY ANALYSIS

**Type and Estimated Numbers of Rural Areas:**

While this rule applies uniformly throughout the state, including rural areas, for the purposes of this Rural Area Flexibility Analysis (RAFA), "rural area" means areas of the state defined by Exec. Law § 481(7) (SAPA § 102(10)). Per Exec. Law § 481(7), rural areas are defined as "counties within the state having less than two hundred thousand population, and the municipalities, individuals, institutions, communities, and programs and such other entities or resources found therein. In counties of two hundred thousand or greater population 'rural areas' means towns with population densities of one hundred fifty persons or less per square mile, and the villages, individuals, institutions, communities, programs and such other entities or resources as are found therein."

The following 42 counties have an estimated population of less than 200,000 based upon 2019 United States Census projections:

| | | |
|---|---|---|
| Allegany County | Greene County | Schuyler County |
| Broome | Hamilton County | Seneca County |
| Cattaraugus County | Herkimer County | St. Lawrence County |
| Cayuga County | Jefferson County | Steuben County |
| Chautauqua County | Lewis County | Sullivan County |
| Chemung County | Livingston County | Tioga County |
| Chenango County | Madison County | Tompkins County |
| Clinton County | Montgomery County | Ulster County |
| Columbia County | Ontario County | Warren County |
| Cortland County | Orleans County | |
| Delaware County | Schoharie County | |

| | | |
|---|---|---|
| Essex County | Oswego County | Washington County |
| Franklin County | Otsego County | Wayne County |
| Fulton County | Putnam County | Wyoming County |
| Genesee County | Rensselaer County | Yates County |
| | Schenectady County | |

The following counties of have population of 200,000 or greater, and towns with population densities of 150 person or fewer per square mile, based upon 2019 United States Census population projections:

| | | |
|---|---|---|
| Albany County | Niagara County | Saratoga County |
| Dutchess County | Oneida County | Suffolk County |
| Erie County | Onondaga County | |
| Monroe County | Orange County | |

**Reporting, recordkeeping, and other compliance requirements; and professional services:**

Covered entities are required to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records. Covered entities are also required to review and make determinations on medical exemption requests, along with any reasonable accommodations.

Upon the request of the Department, covered entities must report the number and percentage of total covered personnel, as well as the number and percentage that have been vaccinated against COVID-19 and those who have been granted a medical exemption, along with any reasonable accommodations. Facilities and agencies must develop and implement a policy

and procedure to ensure compliance with the provisions of this section, making such documents available to the Department upon request.

**Compliance Costs:**

Covered entities must ensure that personnel are fully vaccinated against COVID-19 and document such vaccination in personnel or other appropriate records. Covered entities must also review and make determinations on requests for medical exemptions, which must also be documented in personnel or other appropriate records, along with any reasonable accommodations. This is a modest investment to protect the health and safety of patients, residents, and personnel, especially when compared to both the direct medical costs and indirect costs of personnel absenteeism.

**Minimizing Adverse Impact:**

As part of ongoing efforts to address the COVID-19 pandemic, regulated parties have been a partner in implementing measures to limit the spread and/or mitigate the impact of COVID-19 within the Department since March of 2020. Further, the Department currently has an emergency regulation in place, which requires nursing homes and adult care facilities to offer COVID-19 vaccination to personnel and residents, which has helped to facilitated vaccination of personnel. Further, it is the Department's understanding that many facilities across the State have begun to impose mandatory vaccination policies. Lastly, on August 18, 2021, President Biden announced that as a condition of participating in the Medicare and Medicaid programs, the United States Department of Health and Human Services will be developing regulations requiring nursing homes to mandate COVID-19 vaccination for workers.

**Rural Area Participation:**

Due to the emergent nature of COVID-19, parties representing rural areas were not consulted. If these regulations are proposed for permanent adoption, all parties will have an opportunity to provide comments during the notice and comment period.

# JOB IMPACT STATEMENT

**Nature of Impact:**

Covered entities may terminate personnel who are not fully vaccinated and do not have a valid medical exemption and are unable to otherwise ensure individuals are not engaged in patient/resident care or expose other covered personnel.

**Categories and numbers affected:**

This rule may impact any individual who falls within the definition of "personnel" who is not fully vaccinated against COVID-19 and does not have a valid medical exemption on file with the covered entity for which they work or are affiliated.

**Regions of adverse impact:**

The rule would apply uniformly throughout the State and the Department does not anticipate that there will be any regions of the state where the rule would have a disproportionate adverse impact on jobs or employment.

**Minimizing adverse impact:**

As part of ongoing efforts to address the COVID-19 pandemic, regulated parties have been a partner in implementing measures to limit the spread and/or mitigate the impact of COVID-19 within the Department since March of 2020. Further, the Department currently has an emergency regulation in place, which requires nursing homes and adult care facilities to offer COVID-19 vaccination to personnel and residents, which has helped to facilitated vaccination of personnel. Further, it is the Department's understanding that many facilities across the State

have begun to impose mandatory vaccination policies. Lastly, on August 18, 2021, President Biden announced that as a condition of participating in the Medicare and Medicaid programs, the United States Department of Health and Human Services will be developing regulations requiring nursing homes to mandate COVID-19 vaccination for workers.

## EMERGENCY JUSTIFICATION

The Centers for Disease Control and Prevention (CDC) has identified a concerning national trend of increasing circulation of the SARS-CoV-2 Delta variant. Since early July, cases have risen 10-fold, and 95 percent of the sequenced recent positives in New York State were the Delta variant. Recent New York State data show that unvaccinated individuals are approximately 5 times as likely to be diagnosed with COVID-19 compared to vaccinated individuals. Those who are unvaccinated have over 11 times the risk of being hospitalized with COVID-19.

The COVID-19 vaccines are safe and effective. They offer the benefit of helping to reduce the number of COVID-19 infections, including the Delta variant, which is a critical component to protecting public health. Certain settings, such as healthcare facilities and congregate care settings, pose increased challenges and urgency for controlling the spread of this disease because of the vulnerable patient and resident populations that they serve. Unvaccinated personnel in such settings have an unacceptably high risk of both acquiring COVID-19 and transmitting the virus to colleagues and/or vulnerable patients or residents, exacerbating staffing shortages, and causing unacceptably high risk of complications.

In response to this significant public health threat, through this emergency regulation, the Department is requiring covered entities to ensure their personnel are fully vaccinated against COVID-19, and to document evidence thereof in appropriate records. Covered entities are also required to review and make determinations on medical exemption requests, and provide reasonable accommodations therefor to protect the wellbeing of the patients, residents and personnel in such facilities. Documentation and information regarding personnel vaccinations as well as exemption requests granted are required to be provided to the Department immediately upon request.

Based on the foregoing, the Department has determined that these emergency regulations are necessary to control the spread of COVID-19 in the identified regulated facilities or entities. As described above, current circumstances and the risk of spread to vulnerable resident and patient populations by unvaccinated personnel in these settings necessitate immediate action and, pursuant to the State Administrative Procedure Act Section 202(6), a delay in the issuance of these emergency regulations would be contrary to public interest.

**From:**
**To:**
**Subject:**     Fwd: VaxApp - Religious/Deeply Held Belief Exemption Request Update
**Date:**

FYI

---

**From:** VaxApp-DoNotReply@nyp.org <VaxApp-DoNotReply@nyp.org>
**Sent:** Wednesday, July 28, 2021 10:20 AM
**To:**
**Subject:** VaxApp - Religious/Deeply Held Belief Exemption Request Update

Your request for exemption from the COVID-19 vaccine has been approved. Please note that this exemption will be good for this COVID-19 vaccine period. If your approval is for a temporary medical exemption, the approval is good through the deferral date provided by the WHS provider.

Should you have any questions, please email whs-datamanagement@nyp.org or contact the WHS hotline at 646-697-9470. As a reminder, you can check the status of your exemption request in VaxApp.

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Subject:** | Fwd: Vaccine Mandate Exemption |
| **Date:** | Wednesday, September 08, 2021 5:58:27 PM |

FYI

---

**From:** WHS-Data Management
**Sent:** Wednesday, September 8, 2021 12:00 PM
**To:**
**Subject:** RE: Vaccine Mandate Exemption

Religious exemptions are no longer accepted.  This does not impact an approved or submitted Medical exemption request. No alternative options for fully remote staff at this time.

WHS

---

**From:**
**Sent:** Tuesday, September 7, 2021 1:03 PM
**To:** WHS-Data Management <whs-datamanagement@nyp.org>
**Subject:** Vaccine Mandate Exemption

Good Afternoon.

What are the options for an employee whom had a previously approved medical exemption which is now voided due to the change in NYS Religious Exemptions?

Can there be alternative options for employees whom are fully remote? Can they agree to weekly testing and 100% Mask compliance?

Thanks in advance.

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

**From:**
**To:**
**Subject:**     Fwd: Fw: VaxApp - Religious/Deeply Held Belief Exemption Request Update
**Date:**     Wednesday, September 08, 2021 5:30:36 PM

Below- 8/24 approved.

---------- Forwarded message ---------
From:
Date: Fri, Sep 3, 2021 at 1:29 PM
Subject: Fw: VaxApp - Religious/Deeply Held Belief Exemption Request Update
To:

Patient Services Administration
**NewYork- Presbyterian Brooklyn Methodist Hospital**

**From:** VaxApp-DoNotReply@nyp.org <VaxApp-DoNotReply@nyp.org>
**Sent:** Tuesday, August 24, 2021 8:42 PM
**To:**
**Subject:** VaxApp - Religious/Deeply Held Belief Exemption Request Update

Your request for exemption from the COVID-19 vaccine has been approved. Please note that this exemption will be good for this COVID-19 vaccine period. If your approval is for a temporary medical exemption, the approval is good through the deferral date provided by the WHS provider.

Should you have any questions, please contact the WHS hotline at 646-697-9470. As a reminder, you can check the status of your exemption request in VaxApp.

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

This electronic message is intended to be for the use only of the named recipient, and may contain information that is confidential or privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.

code:d34y

--

| | |
|---|---|
| **From:** | |
| **To:** | |
| **Subject:** | Fwd: Fw: UPDATE: COVID-19 Vaccination Program |
| **Date:** | Wednesday, September 08, 2021 5:33:00 PM |

Below- general email that was sent on 8/30at 5:13pm.

---------- Forwarded message ---------
From:
Date: Fri, Sep 3, 2021 at 1:25 PM
Subject: Fw: UPDATE: COVID-19 Vaccination Program
To:

Patient Services Administration
**NewYork- Presbyterian Brooklyn Methodist Hospital**
(718) 780-3375

---

**From:** Notify NYP
**Sent:** Monday, August 30, 2021 5:13 PM
**To:** Notify NYP
**Subject:** UPDATE: COVID-19 Vaccination Program

Dear Colleagues:

We want to express our thanks to all of our NYP team members who have participated in our COVID-19 Vaccination Program˝ either by receiving the COVID-19 vaccine, or by applying for an exemption due to a medical contraindication or pregnancy. The vaccines are the most effective tool available to protect all of us against COVID-19 and the highly contagious Delta variant. Please see below for key information and dates regarding our vaccine program, and an important update.

**Key Dates:**

If you have not yet received your vaccination, please keep in mind the upcoming deadlines for NYP employees. Staff must receive the first dose of the vaccine or have an approved medical exemption by no later than **September 15, 2021** (with the second dose of a two-dose vaccine to be received by October 15)**.** For Supervisors and above, the deadline is **September 1.**

**NYP employees who do not comply with the vaccination program by the deadlines above will be placed off duty for seven days without pay**, and given those seven days to meet the program requirements. Employees who choose not to meet the program requirements after seven days will be deemed to have opted to resign. We want all of our team members to continue working with us as we balance the imperative to protect our patients, employees, and communities.

**Important Update on the Exemption Process:**

When the NYP COVID-19 Vaccination Program was established, it included a process by which employees could apply for an exemption on the basis of certain medical conditions or religious beliefs. Soon after, New York State issued orders requiring all health care workers in the state, including workers in hospitals, and in long-term care facilities or nursing homes, to receive the COVID-19 vaccine, with limited exemptions for medical or religious reasons.

Late last week, the Public Health and Health Planning Council of the NYS Department of Health formally approved and adopted the state*s COVID-19 vaccination requirement for health care workers. **In addition, the Council made the determination to exclude religious exemptions as an alternative to receiving the vaccine.** The DOH cited examples of measles and other vaccinations, which are required of NY health care workers, as also not having a religious exemption. As a health care institution in NYS, **NYP must follow the NYS DOH requirements as they evolve. This means that NYP can no longer consider any religious exemptions to the COVID vaccination 每 even those previously approved.**

NYS has also indicated they will be issuing further guidance on medical exemptions. We will keep you updated on that or any other vaccination-related information as it evolves.

**How to Access the Vaccine:**

You may receive your COVID-19 vaccination by walking in to your local NYP WHS clinic during our recently extended hours. No appointment is needed. **View the updated WHS schedule here.** Or, you may receive the vaccine outside of NYP. Our **COVID Vaccine Finder by State** can help you find a convenient location. If you are vaccinated outside of NYP, please log in to **VaxApp** with your NYP CWID and password, and upload a copy of your vaccination record as soon as possible as it can take a few days to validate your vaccination and update our records.

**Resources and Support:**

We want everyone who works at NYP to have the facts and support needed to make an informed decision about vaccination. If you have questions or want to learn more about the vaccines and this process, we have several available sources of information:

- **Brief clinical videos on the COVID-19 vaccines -** NYP physicians discuss the vaccines and topics employees have said are of interest, including allergies, fertility, pediatrics, and COVID-19 variants.
- **COVID-19 Vaccination Program FAQs**

- **COVID-19 Vaccination Resource page**
- The WHS COVID-19 hotline: **646坼697坼9470**

In addition, if you have specific medical or religious concerns, we encourage you to discuss those with your physician or a leader in your faith.

We will continue to update you with news on COVID-19 and safety measures as we learn more. We expect to hear more from the U.S. government about recommendations related to booster shots in the coming months.

Thank you for all you are doing, every day, to protect the safety and well-being of our patients and one another. By participating in this program, you are helping us continue to lead the fight against the pandemic in our communities, and taking another important step as health care heroes.

Shaun E. Smith
Senior Vice President and Chief People Officer

Robert Holdom
Vice President, Total Rewards

---

Confidential Information subject to NYP's (and its affiliates"| Information management and security policies (http://infonet.nyp.org/QA/HospitalManual).

---

This electronic message is intended to be for the use only of the named recipient, and may contain information that is confidential or privileged. If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution or use of the contents of this message is strictly prohibited. If you have received this message in error or are not the named recipient, please notify us immediately by contacting the sender at the electronic mail address noted above, and delete and destroy all copies of this message. Thank you.
code:d34y

--

**From:** COVID19Exemptions <COVID19Exemptions@wmchealth.org>
**Sent:** Friday, August 27, 2021 3:49 PM
**To:**                                      COVID19Exemptions
<COVID19Exemptions@wmchealth.org>
**Cc:**
**Subject:** RE: #External                            - Religious Exemption Application - Aug 26, 2021

       On August 26, hospitals were notified that the New York State Department of Health was removing the option allowing hospitals to offer a religious exemption to health care workers from receiving the COVID-19 vaccination.  Accordingly, WMCHealth, in order to comply with DOH Regulations, will no longer accept applications for a religious exemption and those applications already received will be not be considered .  All members of the workforce are reminded that they must be fully vaccinated by September 30, 2021, with the first dose of the vaccine received no later than September 27, 2021.   Just as a reminder due to the three or four week waiting period between shots for the Pfizer and Moderna vaccines, workforce members are encouraged to schedule their first vaccination well prior to September 30th deadline.

Thank you.


**From:**
**Sent:** Friday, August 27, 2021 1:18 PM
**To:** COVID19Exemptions <COVID19Exemptions@wmchealth.org>
**Cc:**
**Subject:** #External Email#                        Religious Exemption Application - Aug 26, 2021

Hello- I wanted to verify the following email with attached documentation was received.

Thank you,



Begin forwarded message:

**From:**                                        >
**Date:** August 26, 2021 at 6:43:03 PM EDT
**To:** COVID19Exemptions@wmchealth.org
**Subject:**                **Religious Exemption Application - Aug 26, 2021**


Scanned with TurboScan.


 ...External Email

**WMCHealth is operating under a heightened CYBER SECURITY THREAT LEVEL.** Do not click on links or open attachments unless you recognize the sender. Never provide your User ID or Password.



CASE N° ▮▮▮▮▮▮▮▮

CREATION DATE: 07/16/2021 19:30

# 2021 Covid-19 Vaccination Document

**Colleague ID**: ▮▮▮▮▮▮
**Organization:** SYR10 St Joseph Hospital Health Center
**Legal Full Name:** ▮▮▮▮▮▮▮▮
**Preferred Name:** ▮▮▮▮▮▮▮▮

**Is the 2021 Covid-19 Vaccination <u>Exemption</u> Approved?**
Yes

Dear Colleague,

On August 26, 2021, the New York State Department of Health (NYS DOH) issued emergency regulations that require all of our healthcare personnel be fully vaccinated against COVID-19.  Fully vaccinated is defined as two weeks after receiving (1) the second dose in a 2-dose series (mRNA) or (2) a single dose vaccine (Johnson & Johnson).

Under the emergency regulations the NYS DOH will not permit exemptions or deferrals for:

- · Sincerely held religious beliefs
- · Pregnancy
- · Planning to become pregnant

We are required to comply with state law. Therefore, any colleague who was previously approved for one of the above exemptions / deferrals will be required to provide proof of (1) first dose of a 2-dose series (mRNA) or (2) a single dose vaccine (Johnson & Johnson) no later than September 21, 2021.

**Action Needed**

# LIBERTY COUNSEL

**DISTRICT OF COLUMBIA**
109 Second Street NE
Washington, DC 20002
Tel 202-289-1776
Fax 407-875-0770
LC.org

**FLORIDA**
PO Box 540774
Orlando, FL 32854
Tel 407-875-1776
Fax 407-875-0770

**REPLY TO FLORIDA**

**VIRGINIA**
PO Box 11108
Lynchburg, VA 24506
Tel 407-875-1776
Fax 407-875-0770
Liberty@LC.org

September 1, 2021

**VIA FACSIMILE and EMAIL**

Kathy Hochul
Governor
State of New York
NYS State Capital Building
Albany, NY 12224
Facsimile: (518) 474-1513

Letitia James
Office of the Attorney General
State of New York
28 Liberty Street
New York, NY 10005
Facsimile: (212) 416-6030
Email: civil.rights@ag.ny.gov

Howard A. Zucker
Commissioner
New York State Department of Health
Corning Tower
Empire State Plaza
Albany, NY 12237
Email: dohweb@health.ny.gov

> RE: Unlawful Attempt to Remove Religious Exemptions and Accommodations from State's Mandatory COVID-19 Vaccine Policy

**<span style="color:red">THIS IS A LEGAL DEMAND LETTER. YOUR PROMPT RESPONSE IS REQUIRED ON OR BEFORE TUESDAY, SEPTEMBER 7, 2021 AT 12:00 P.M. TO AVOID A LAWSUIT</span>**

Dear Governor Hochul, Commissioner Zucker, and Attorney General James:

Liberty Counsel is a national non-profit litigation, education and public policy organization with an emphasis on First Amendment liberties, and a particular focus on religious freedom and the sanctity of human life. Liberty Counsel has engaged in extensive litigation in the last year regarding civil rights violations ostensibly justified by "COVID-19," and has had great success holding both government entities and private actors accountable. *See, e.g., Harvest Rock Church, Inc. v. Newsom*, 141 S. Ct. 1289 ( 2021) (permanent injunction granted and $1,350,000 in attorney's fees awarded in *Harvest Rock Church, Inc. v. Newsom*, No. 2:20-cv-06414, C.D. Cal., May 17, 2021); *Harvest Rock Church, Inc. v. Newsom,* 141 S. Ct. 889 (2020); *Elim Romanian*

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 2

*Pentecostal Church v. Pritzker*, 962 F.3d 341 (7th Cir. 2020); *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610 (6th Cir. 2020).

I write on behalf of numerous doctors, nurses, medical professionals, and other health care workers who have been forced to choose between the exercise of their sincerely held religious beliefs and feeding their families. No individual in New York should be forced into such an unconscionable decision. On August 16, 2021, the Governor of New York announced that the State will now require health care workers to accept or receive one of the three currently available COVID-19 vaccines in order to remain employed in the healthcare profession. *See* Office of Governor, *Governor Cuomo Announces COVID-19 Vaccination Mandate for Healthcare Workers* (Aug. 16, 2021), https://www.governor.ny.gov/news/governor-cuomo-announces-covid-19-vaccination-mandate-healthcare-workers (last visited Sept. 1, 2021) ((hereinafter "Mandatory COVID-19 Vaccination Policy"). The deadline for healthcare workers in New York to become fully vaccinated is Monday September 27, 2021. (*Id.*) The Mandatory COVID-19 Vaccination Policy applies to healthcare workers in all "hospitals, nursing homes, diagnostic and treatment centers, adult care facilities, certified home health agencies, hospices, long-term home health care programs, AIDS home care programs, licensed home care service agencies and limited licensed home care service agencies." (*Id.*)

Though the Governor's announcement initially indicated that there would be "limited exceptions for workers with religious or medical reasons" (*id.*), the State's Public Health and Health Planning Council eliminated such an exemption and accommodation for religious reasons on August 26th. *See* Spencer Tracy, *New York Department of Health eliminates religious exemption for healthcare workers who refuse vaccination* Localsyr.com (Aug. 31, 2021), https://www.localsyr.com/health/coronavirus/unvaccinated-healthcare-workers-could-lose-jobs-over-new-vaccine-mandate/ (last visited Sept. 1, 2021). In fact, under the State's rule change, the only exemptions permitted in the State of New York will be for medical reasons documented by a physician or certified nurse practitioner. *See* Section 2.61 Rule Change (Aug. 26, 2021), https://www.health.ny.gov/facilities/public_health_and_health_planning_council/meetings/2021-08-26/docs/revised_proposed_regulation.pdf (last visited Sept. 21, 2021).

**As you are undoubtedly aware, while New York may choose not to provide certain religious exemptions in its state statutory scheme under some circumstances, <u>virtually every employee in New York – including the health care workers who have been subjected to the Mandatory COVID-19 Vaccination Policy – are protected by Title VII of the Civil Rights Act, which does provide for religious exemptions and accommodations, and mandates that employers provide them</u>.**

**New York cannot override federal law, or the federal Constitution. New York's purported guidance and attempts to remove federal protections and even religious exemptions available under federal law is causing direct and irreparable harm.**

We ask that you advise us and the public by noon on this <u>Tuesday September 7, 2021</u>, **that New York will honor all federal protections and entitlements to accommodation for sincerely held religious beliefs. Your failure to timely and positively provide this assurance will indicate to us that New York is, in fact, continuing in its attempt to nullify and override legal protections afforded to religious objectors under federal law and the United States Constitution. In that event, we will proceed with an emergency legal action against New York and other entities to protect the fundamental rights of New York's citizenry.**

A.   **New York's Attempt to Nullify, Override, Dissuade, Discourage, or Suppress Requests for Religious Accommodations and Exemptions is Plainly Inconsistent with Title VII; Denying Merited Religious Exemptions and Accommodations Would Violate Title VII; and New York is Not Permitted to Inquire into Correctness of an Employee's Sincerely Held Religious Beliefs.**

As you are undoubtedly aware, Title VII of the Civil Rights Act prohibits every employer in New York from discriminating against its employees on the basis of their sincerely held religious beliefs. *See* 42 U.S.C. §2000e-2(a) ("It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin"). *See also EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768 (2015) (same). And, **health care workers who are employed by the State of New York itself are also afforded the same protection under Title VII**. *See* 42 U.S.C. §2000e(f); *Fitzpatrick v. Bitzer*, 427 U.S. 445 (1976) (noting that States are also required to abide by Title VII's mandates in relation to their employees). Title VII defines "religion" as "all aspects of religious observance and practice, as well as belief." 42 U.S.C. §2000e(j). Put simply, an employer violates Title VII if it makes employment decisions related to an employee based solely upon that individual's sincerely held religious beliefs. *Abercrombie & Fitch*, 575 U.S. at 773 ("**An employer may not make an applicant's religious practices, confirmed or otherwise, a factor in employment decisions**." (emphasis added)).

Put simply, employers in New York and the State itself as an employer are mandated by Title VII to provide reasonable accommodations to employees with sincerely held religious objections to the COVID-19 vaccines. 42 U.S.C. §2000e(j). Indeed, hospitals have been sued and lost over forced influenza vaccines. *See, e.g. EEOC v. Mission Hosp., Inc.*, No. 1:16-cv-118-MOC-DLH, 2017 WL 3392783 (W.D.N.C. Aug. 7, 2017) (resulting in permanent injunction against Mission Hospital from improperly denying religious exemptions from mandatory vaccinations and requiring the hospital to pay $89,000 in damages); *United States v. Ozaukee Cnty.*, No 18-cv-343-pp (E.D. Wis. 2018) (resulting in a permanent injunction against the county for failure to grant religious exemptions from compulsory vaccinations and ordering county to pay $18,000 in damages to the employee).

As you also must know, **federal law and the United States' Constitution are supreme over any New York statute or edict, and New York cannot override, nullify, or violate federal law**. *See* U.S. Const. Art. VI, cl. 2 ("**This Constitution, and the Laws of the United States** which shall be made in Pursuance thereof; and all Treaties made, or which shall be made, under the Authority of the United States, **shall be the supreme Law of the Land**; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." (emphasis added)). "**This Court has long made clear that federal law is as much the law of the several States as are the laws passed by their legislatures**." *Haywood v. Drown*, 556 U.S. 729, 734 (2009) (emphasis added). In fact, as the Supreme Court has made clear,

> **It is a familiar and well-established principle that the Supremacy Clause . . . invalidates state laws that interfere with, or are contrary to, federal law. Under the Supremacy Clause . . . state law is nullified to the extent that it actually conflicts with federal law.**

*Hillsborough Cnty. v. Automated Med. Labs., Inc.*, 471 U.S. 707, 712-13 (1985) (emphasis added) (cleaned up). **Thus, as you are undoubtedly aware, New York's constant refrain to its health care workers that there is no religious exemption to the Mandatory COVID-19 Vaccination Policy is legally incorrect. Federal law provides protection for every health care worker in New York with a religious objection, and requires accommodation from such mandates. New York simply has no authority to override this federal law.**

While there may be some who consider COVID-19 vaccines to be acceptable as a matter of religious doctrine or belief, no employer in New York – including the State – is permitted to determine which religious adherent has a correct understanding of religious doctrine or whether a health care worker's sincerely held religious beliefs are shared broadly among members of her faith. As the Supreme Court has recognized, an employee's "religious beliefs need not be acceptable, logical, consistent, or comprehensible to others in order to merit First Amendment protection." *Thomas v. Rev. Bd. of Ind. Emp. Sec. Div.*, 450 U.S. 707, 714 (1981). *See also Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah,* 508 U.S. 520, 531 (1993) (same). Additionally, though membership in or adherence to the tenets of an organized religious is plainly sufficient to provide protection for an individual's sincerely held religious beliefs, it is not a necessary precondition. *See Frazee v. Ill. Dep't of Emp. Sec.*, 489 U.S. 829, 834 (1989) ("**Undoubtedly, membership in an organized religious denomination, especially one with a specific tenet forbidding members to work on Sunday, would simplify the problem of identifying sincerely held religious beliefs, but we reject the notion that to claim the protection [for sincerely held religious beliefs], one must be responding to the commands of a particular religious organization**." (emphasis added)). *See also Office of Foreign Assets Control v. Voices in the Wilderness*, 329 F. Supp. 2d 71, 81 (D.D.C. 2004) (noting that the law provides protection for "sincerely held religious beliefs," "not just tenets of organized religion").

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 5

In fact, the law provides protection for sincerely held religious beliefs even when some members of the same religious organization, sect, or denomination disagree with the beliefs espoused by the individual. That some individuals may have sincerely held religious beliefs that differ from those espoused by health care providers with a sincere religious objection to the three currently available COVID-19 vaccines is irrelevant to whether those sincerely held religious beliefs are entitled to protection under Title VII. Indeed,

> **[i]ntrafaith differences of that kind are not uncommon among followers of a particular creed, and the judicial process is singularly ill equipped to resolve such differences . . .** and **the guarantee of free exercise is not limited to beliefs which are shared by all of the members of a religious sect. Particularly in this sensitive area, it is not within the judicial function and judicial competence to inquire whether the petitioner or his fellow worker more correctly perceived the commands of their common faith. Courts are not arbiters of scriptural interpretation**.”

450 U.S. at 715-16 (emphasis added).

Moreover, the denial of an employee’s request for a religious accommodation and exemption based upon the views of other individuals who do not share their sincere religious beliefs is unlawful. In fact, it is legally irrelevant what other individuals think or religiously believe. Once an employee has articulated her sincerely held religious objections to acceptance or receipt of the currently available COVID-19 vaccines, the proper inquiry is at its end.

Indisputably, all three of the currently available COVID-19 vaccines are produced by, derived from, manufactured with, tested on, developed with, or otherwise connected to aborted fetal cell lines. There is no question about the accuracy of this determination. The North Dakota Department of Health, in its literature for those considering one of the three, currently available COVID-19 vaccines, notes the following: “[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**.” *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (bold added).

The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine, which used PER.C6 fetal cell line, “is a retinal cell line that was **isolated from a terminated fetus in 1985**.” Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (bold added).

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 6

The same is true of the Moderna and Pfizer/BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their COVID-19 mRNA vaccines. Louisiana Department of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 12, 2020), *available at* https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/You_Have_Qs_COVID-19_Vaccine_FAQ.pdf. The North Dakota Department of Health, in its handout literature on COVID-19 vaccines, notes: "[e]arly in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), *available at* https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf (last visited Aug. 10, 2021) (emphasis added).

Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with the aborted fetal cell lines HEK-293 and PER.C6, the sincerely held religious beliefs of the employees we represent compel them to abstain from accepting or injecting any of these products into their body, regardless of the perceived benefit or rationale. Thus, while there may be some faith leaders and other adherents whose understanding of Scripture is different, and who may be willing to accept one of the three currently available COVID-19 vaccines despite their connection with aborted fetal cell lines, official recognition of a sincerely held religious objection to acceptance or receipt of a vaccine that is inextricably intertwined with aborted fetal cell lines is unnecessary to warrant protection.

**In sum, denying a health care worker's request for a religious accommodation based upon the beliefs of others is unlawful, and refusing to grant a health care worker a religious accommodation at all is plainly a violation of Title VII, regardless of the New York rule or any other provision of New York law**.

B. **The First Amendment to the United States Constitution Protects New York Healthcare Workers Employed by the State of New York.**

Further, all healthcare workers in the State of New York that are employed by the State also have protection for the exercise of their sincerely held religious beliefs under the First Amendment. It is beyond cavil that government employees do not shed their constitutional rights upon entering government employment. *See Martin v. Lauer*, 686 F.2d 24, 31(D.C. Cir. 1982) ("**government employees do not shed their first amendment rights on assuming public responsibilities**" (emphasis added)). Indeed, "**people do not give up their free-exercise or free-speech rights when they become government employees**." *Warnock v. Archer*, 380 F.3d 1076, 1082 (8th Cir. 2004) (emphasis added). *See also Bd. of Cnty. Comm'rs, Wabaunsee Cnty. v. Umbehr*, 518 U.S. 668, 675 (1996) ("The First Amendment's guarantee . . . protects government employees."); *Putnam v. Regional Sch. Unit 50*, No. 1:14-cv-154-JAW, 2015 WL 5440783, *14

(D. Me. Sept. 15, 2015) ("This guarantee applied to government employees as well, who should not 'suffer reprisal from a government official . . . because of the possible chilling effect against the free exercise of constitutional rights.'" Quoting *Rosaura Bldg. Corp. v. Mun. of Mayaguez*, 778 F.3d 55, 66 (1st Cir. 2015)).

As the Supreme Court made clear last year, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (2020) (emphasis added). Moreover, the Supreme Court has further noted that it will not "abandon the field when government officials with experts in tow seek to infringe a constitutionally protected liberty." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 718 (2021) (Gorsuch, J.). Indeed, **"[e]ven in times of crisis—perhaps *especially* in times of crisis—we have a duty to hold governments to the Constitution**." *Id.* (emphasis added).

Every healthcare worker employed by the State of New York has the First Amendment right to the free exercise of their religion, including whether to accept a forcible injection of a vaccine. Neither the flick of the Governor's pen, nor a purported public health emergency cannot override those cherished constitutional liberties.

### C. New York Law Protects Every Individual's Right to Refuse Unwanted Medical Treatment.

New York law provides a long-established common law right to all individuals to refuse unwanted medical care. *See Rivers v. Katz*, 495 N.Y.2d 337, (N.Y. Ct. App. 1986) ("we recognized that a patient's right to determine the course of his medical treatment was paramount to what might otherwise be the doctor's obligation to provide medical care, and that **the right of a competent adult to refuse medical treatment must be honored, even though the recommended treatment may be beneficial or even necessary to preserve the patient's life**" (emphasis added)); *Randolph v. City of N.Y.*, 501 N.Y.S.2d 837, 841 (N.Y. Sup. Ct. 1986) (noting "the right of the competent adult to make his own decision . . . although the treatment may be beneficial or even necessary to preserve the patient's life"); *In re Westchester Cnty. Med. Ctr. on Behalf of Connor*, 72 N.Y.2d 517, (N.Y. Ct. App. 1988) ("It has long been the common-law rule in this State that a person has the right to decline medical treatment, even life-saving treatment").

As the California Supreme Court noted,

Anglo American law starts with the premise of thorough-going self-determination. It follows that **each man is considered to be master of his own body, and he may, if he be of sound mind, expressly prohibit the performance of lifesaving surgery, or other medical treatment**. A doctor might well believe that an operation or form of treatment is desirable or necessary, but the law does not permit him to substitute his own judgment for that of the patient by any form of artifice or deception.

Religious Exemption and Accommodations from Mandatory Covid-19 Vaccine Policy
September 1, 2021
Page 8

*Thor v. Superior Ct.*, 855 P.2d 375, 381-82 (Cal. 1993) (emphasis added).

Put simply, "if the patient's informed consent is to have any meaning at all, **it must be accorded respect even when it conflicts with the advice of the doctor or the values of the medical profession as a whole**." *Thor*, 855 P.2d at 386. By mandating that all New York health care workers submit to one of the COVID-19 vaccines as a condition of retaining their ability to feed their families and earn a living, New York runs roughshod over this basic protection. If an employee decides for herself that she desires to abstain from forcible injunction of a COVID-19 vaccine that violates her sincerely held religious beliefs, that is her basic right. Put simply, "**[t]he forcible injection of medication into a nonconsenting person's body represents a substantial interference with that person's liberty**." *Washington v. Harper*, 494 U.S. 210, 229 (1990) (emphasis added). The Governor's Mandatory COVID-19 Vaccination Policy blatantly ignores this well-established principle of bodily integrity and personal autonomy.

## CONCLUSION

We await your prompt confirmation, on or before close of business on this Tuesday, **Sept. 7, 2021, that New York will no longer purport to nullify or override the right of New York citizens to seek religious exemptions from vaccination requirements under federal and state law. Absent this confirmation, we will understand that New York is continuing in its attempt to nullify and override legal protections afforded to religious objectors, and we will proceed with an emergency legal action against New York and other entities to protect the fundamental rights of New York's citizenry. We will seek emergency injunctive relief and all other remedies available under law.**

Sincerely,

Daniel J. Schmid[†]

cc:
Laurian Cristea (Attorney admitted in New York)
Horatio G. Mihet

---

[†] Licensed in Virginia

CIVIL CAUSE FOR Motion Hearing by Telephone

BEFORE JUDGE: Eric Komitee, U.S.D.J.
DATE: 9/13/2021
TIME IN COURT: 2 Hrs.


DOCKET NUMBER: CV 21-5067
TITLE: Does, et al v. Hochul, et al

COURT REPORTER: Electronically recorded
FTR LOG:

APPEARANCES:

      Plaintiffs:                Daniel Schmid, Horatio Mihet
      State Defendants:        Seth Farber
      Trinity Health, Inc.:     Jacqueline Polito
      N.Y. Presbyterian:      Liza Velazquez
      Westchester Medical Ctr:   Marc Sittenreich


SUMMARY: Discussion held. Decision reserved.

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

JOHN DOES 1-2, JANE DOES 1-3, JACK
DOES 1-750, JOAN DOES 1-750,

                              **MEMORANDUM & ORDER**

           Plaintiffs,        21-CV-5067(AMD)(TAM)


         -against-

KATHY HOCHUL, in her official
capacity as Governor of the State of
New York, et al.,

           Defendants.

------------------------------------x
ERIC KOMITEE, United States District Judge:

      On September 13, 2021, I held oral argument on the

Plaintiffs' motion for a temporary restraining order and

preliminary injunction.  As I informed the parties then, the

argument was in connection with the Court's evaluation of the

motion for a TRO.  Plaintiffs' application for a preliminary

injunction motion will proceed before the Hon. Anne M. Donnelly,

the judge assigned to this case, on a schedule to be determined.[1]

      This morning, while Plaintiffs' motion remained

pending, United States District Judge David N. Hurd of the

Northern District of New York granted a TRO awarding the same

---

    [1] Because Judge Donnelly was unavailable to hear the case on an
expedited basis, I heard oral argument (as the assigned Miscellaneous Judge),
and issued this order shortly thereafter.  The case will revert to Judge
Donnelly for all purposes going forward.

1

relief that Plaintiffs seek here — namely, a TRO enjoining the State of New York from enforcing the New York State Department of Health's August 26, 2021 regulation entitled "Prevention of COVID-19 transmission by covered entities," N.Y. Comp. Codes R. & Regs., tit. 10, § 2.61.  *See Dr. A. v. Hochul*, No. 1:21-CV-1009-DNH-ML (N.D.N.Y. Sept. 14, 2021), ECF No. 7.  Judge Hurd's TRO applies throughout New York State.  The order indicates that Judge Hurd will hear argument on September 28, 2021 on whether the TRO in that case should be converted into a preliminary injunction.  *Id.* ¶ 10.

In light of this development, Plaintiffs' instant motion for a TRO — the only part of their motion that is before me — is now moot.  *See, e.g.*, *People v. Seneci*, 817 F.2d 1015, 1017 (2d Cir. 1987) (affirming dismissal of request for injunction where a state court had already granted plaintiffs "all of the injunctive relief requested in the present case"); *Marshel v. AFW Fabric Corp.*, 552 F.2d 471, 472 (2d Cir. 1977) ("[A]ny application for injunctive relief is now moot, in view of [a related state-court injunction]."); *see also Eggers v. City of Key West*, No. 05-10093-CIV, 2008 WL 5070261, at *7 (S.D. Fla. Nov. 25, 2008) (request for injunction moot because challenged acts were already enjoined); *Kramer v. NCS Pearson, Inc.*, No. CIV 03-1166, 2003 WL 21640494, at *3 (D. Minn. July 9,

2003) (denying motion for TRO as moot where judge in another district already granted the same relief).[2]

Accordingly, Plaintiffs' motion for a TRO is denied. Plaintiffs may apply to Judge Donnelly for a preliminary injunction. If Plaintiffs wish to proceed anonymously with this action, they must file (under seal) a motion that states the reasons why the Court should permit them to do so. This motion must be captioned a "Motion

---

[2] This case differs from *Dr. A.* in that the private defendants (Plaintiffs' employers) are named here, whereas no hospital employer appears in the caption of that case. But this difference does not affect the justiciability issue. At the outset, it is not obvious that Plaintiffs are even seeking relief against the private defendants in the instant motion. (Plaintiffs' motion for the TRO discusses Title VII only in discussing the "Supremacy Clause" claim (which is against the state defendants), and Plaintiffs filed no proposed order indicating precisely what relief they seek against the private defendants.) Even if Plaintiffs were seeking to enjoin the private defendants, those requests would be moot now as well. The factual predicate for Plaintiffs' claims against the private defendants is the fear that the hospitals would deny religious exemptions and terminate Plaintiffs because of the compulsion arising from the New York State rule. *See, e.g.*, Verified Complaint ¶¶ 169-70, ECF No. 1 (alleging that the private defendants violated Title VII by refusing to grant an "accommodation or exemption to the Governor's COVID-19 Vaccine Mandate" and by "threatening to fire Plaintiffs unless they . . . comply with the Governor's COVID-19 Vaccine Mandate"). But the state rule is not currently enforceable, given the Northern District order. In any event, Plaintiffs have not established a likelihood that the private defendants will cause irreparable harm absent injunctive relief. *See, e.g.*, *Sampson v. Murray*, 415 U.S. 61, 90-92 (1974) (loss of earnings does not constitute "irreparable harm" in the employment context).

3

to Proceed Anonymously" and should be submitted by October 1, 2021; Defendants' opposition, if any, shall be due by October 20, 2021; and Plaintiffs' reply, if any, shall be due by November 1, 2021.


        SO ORDERED.


                /s Eric Komitee                   
                ERIC KOMITEE
                United States District Judge


Dated:      September 14, 2021
            Brooklyn, New York

```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF NEW YORK



------------------------------X
                              :
JOHN DOES 1-2, et al.,        :
                              :      21-CV-5067 (AMD)(TAM)
              Plaintiff,      :
                              :      September 13, 2021
                              :
          V.                  :      Brooklyn, New York
                              :
KATHY HOCHUL, et al.,         :
                              :
              Defendant.      :
------------------------------X


             TRANSCRIPT OF CIVIL CAUSE FOR MOTION
            BEFORE THE HONORABLE ERIC R. KOMITEE
                 UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:           DANIEL SCHMID, ESQ.
                             Liberty Counsel
                             1053 Maitland Ctr Commons Blvd
                             Maitland, FL 32751


For the Defendant:           SETH FARBER, ESQ.
                             Assistant Attorney General
                             120 Broadway, 24th Floor
                             New York, NY 10271

                             JACQUELINE PHIPPS POLITO, ESQ.
                             Littler Mendelson
                             375 Woodcliff Drive, Suite 2D
                             Fairport, NY 14450

                             LIZA VELASQUEZ, ESQ.
                             Paul Weiss, et al.
                             1285 Avenue of the Americas
                             New York, NY 10019
```

```
 1              UNITED STATES DISTRICT COURT
                EASTERN DISTRICT OF NEW YORK
 2

 3

 4
     APPEARANCES CONTINUED:
 5
     For defendants:              MARC SITTENREICH, ESQ.
 6                                Garfunkel Wild P.C.
                                  111 Great Neck Road
 7                                Great Neck, NY 11021

 8

 9

10

11

12

13

14

15
     Court Transcriber:          ARIA SERVICES, INC.
16                               c/o Elizabeth Barron
                                 102 Sparrow Ridge Road
17                               Carmel, NY 10512
                                 Aria@leinen.net
18

19

20

21

22

23

24
     Proceedings recorded by electronic sound recording,
25   transcript produced by transcription service
```

JA 134

```
 1              THE CLERK:  Civil cause for motion hearing,

 2    Does, et al. v. Hochul, et al., docket number 21-CV-

 3    5067.

 4              Before I ask you all to state your

 5    appearances, there are a few things to go over.  First,

 6    these proceedings are public.  The recording and/or re-

 7    broadcasting of them are not allowed.  We're making an

 8    audio recording of today's conference so for purposes

 9    of a clear record, please identify yourself each time

10    you speak, speak slowly, and mute your phone when

11    you're not speaking to eliminate background noises.

12              Would you all now please state your

13    appearances for the record, starting with the

14    plaintiffs.

15              MR. SCHMID:  Good afternoon, your Honor.

16    Daniel Schmid, Liberty Counsel, on behalf of the

17    plaintiffs.  Joining me today are Roger Gannam and

18    Horatio Mihet, also on behalf of the plaintiffs.

19              THE COURT:  Good afternoon.

20              MR. FARBER:  Good afternoon, your Honor.

21    This is Seth Farber from the Attorney General's Office.

22    I am appearing on behalf of the state defendants,

23    Governor Hochul and Health Commissioner Howard Zucker.

24              THE COURT:  Good afternoon.

25              MR. FARBER:  Good afternoon.
```

```
 1              MS. POLITO:  Good afternoon, your Honor.
 2   Jacqueline Phipps Polito of Littler Mendelson, on
 3   behalf of defendant Trinity Health, Inc.
 4              THE COURT:  Good afternoon.
 5              MS. VELASQUEZ:  Good afternoon, your Honor.
 6   Liza Velasquez from Paul Weiss, on behalf of defendant
 7   New York Presbyterian Healthcare System.  With me on
 8   the audience lines are my colleagues, Bruce Barenboim,
 9   Michael Gertzman, and Greg Laufer.
10              THE COURT:  Good afternoon.
11              MR. SITTENREICH:  Good afternoon, your
12   Honor.  Marc Sittenreich, Garfunkel Wild, and I'm
13   representing Westchester Medical Center Advanced
14   Physician Services, P.C.
15              THE COURT:  Good afternoon.
16              THE CLERK:  That's it, Judge.
17              THE COURT:  All right, thank you.
18              Good afternoon to everybody.  We are here
19   for oral argument on the plaintiffs' motion for a
20   temporary restraining order.  A couple of disclosures
21   from me just before we get started, which are I think
22   not ultimately anything that would to my mind really
23   come close to requiring my recusal but in the interests
24   of caution, I'll put them on the record anyway.
25              First, like so many people in New York, my
```

1   family has a bit of a relationship with New York

2   Presbyterian Hospital.  My kids were born there.  We

3   have donated I would say relatively modestly to them

4   over the ensuing years, including as recently as last

5   year, so through and including my time on the bench

6   here but, again, not in amounts that are going to be

7   certainly life changing for the hospital and I would

8   say the same is true for me.

9           Secondly, Mr. Birenboim, who we just heard

10  is on the phone but not arguing today, at Paul Weiss,

11  and I have worked together in the past at my former

12  employer.  We had I would say a significant legal

13  matter in which Paul Weiss and Mr. Birenboim in

14  particular were counsel.  Again, I don't see any basis

15  for a potential recusal based on any of that stuff.

16  Indeed, I actually hesitated on the subject of whether

17  even to raise these issues today but do so in an

18  abundance of caution.

19          If the plaintiff would like to be heard on

20  those subjects, I'm happy to hear you, either orally

21  right now or if you want to put a letter in before we

22  move forward, that's fine as well.  Otherwise, it's my

23  intention to begin with the plaintiff on the merits of

24  the motion.

25          MR. SCHMID:  Thank you, your Honor.

1  Plaintiffs have no objection to any of the things that

2  you stated, nor do we object to you adjudicating our

3  matter here.

4          THE COURT:  All right.  Do you want to --

5  I'm thinking 30 minutes for each side and that you

6  should try to tailor your arguments to fill up 20 or so

7  of those minutes so you can leave some time for

8  questions from me.  But with that, let me hear first

9  from the plaintiff.

10          MR. SCHMID:  Yes, your Honor, good

11  afternoon.  This is Daniel Schmid on behalf of the

12  plaintiffs.  As you indicated, Judge, if you'd permit

13  me, I'd like to reserve about 10 minutes for rebuttal

14  as well.

15          THE COURT:  That's fine.

16          MR. SCHMID:  Your Honor, as the Supreme

17  Court noted in a case that originated in this district

18  court last year, Roman Catholic Diocese v. Cuomo, even

19  in a pandemic, the Constitution cannot be put away and

20  forgotten.  Its provisions are equally as applicable

21  today as they were the day before Covid entered

22  America.

23          The TRO should issue for two reasons:  One,

24  the government defendant's removal of religious

25  exemptions and their disparate treatment of religious

adherents in New York from the mandatory vaccine are
neither neutral nor generally applicable, and they fail
strict scrutiny.  And two:  The employer defendants run
roughshod over their obligations under federal law by
claiming that compliance with federal law is an undue
hardship.

It's important to note, your Honor, that
plaintiffs are not seeking a broad-scale attack on the
governor's authority to issue a mandatory vaccine or
whether the government has the authority to issue
certain public health measures.  The only thing that is
in focus here, your Honor, is whether the protections
of federal law, the First Amendment, and Title 7 in
particular are still applicable in New York, and the
answer to that question is a resounding yes.  The TRO
should issue immediately.

THE COURT:  Why do you say -- why do you say
that the law is not neutrally applicable?

MR. SCHMID:  Your Honor, as pointed out in
the -- in section B of the verified complaint, the
governor issued a mandatory vaccine policy for
healthcare workers in Maine.  On August 18ᵗʰ, the state
health department issued regulations allowing for
religious and medical exemptions.  On August 26ᵗʰ, the
governor issued a proposed rule that is now in effect

1  that has revoked the availability of religious

2  exemptions in New York while maintaining a policy that

3  permits medical exemptions.  It has taken the available

4  exemptions, singled out religious beliefs for disparate

5  treatment, removed them from protection, and said they

6  no longer apply in New York.

7         That removes the governor's restrictions

8  from a neutral and generally applicable requirement

9  because as the Supreme Court said last year in Catholic

10  Diocese and as it said in Tanden v. Newsom (ph) just

11  earlier this year, the government violates the First

12  Amendment whenever it treats any comparable activity

13  more favorable than religious exercise.  Here we have a

14  government policy that suggests there are exemptions

15  available.  At first, we said there were religious and

16  medical exemptions available, then we revoked the

17  religious exemptions while maintaining medical

18  exemptions, therefore removing it from a neutral and

19  generally applicable law and subjecting it to strict

20  scrutiny.

21         Here you have all plaintiffs that have

22  articulated sincerely held religious objections to the

23  governor's mandate.  In paragraphs 42 through 66 of the

24  verified complaint, you have a number of objections

25  that are outlined based on the inextricable connection

```
 1    to aborted fetal cell lines and other scriptural

 2    references that apply to the bulk of plaintiffs.  In

 3    addition, you have John Doe 2, who is a Christian

 4    Scientist, who has a long history of objections to all

 5    vaccines, not just a Covid 19 vaccination --

 6                THE COURT:  Does the verified complaint --

 7                MR. SCHMID:  -- and who had --

 8                THE COURT:  Sorry.  Does the verified

 9    complaint actually say that John Doe is a Christian

10    Scientist.

11                MR. SCHMID:  It does, your Honor, in

12    paragraph 67 of the verified complaint, and it outlines

13    his other ones in paragraph 68 and 69 as well.  And

14    because of those exemptions, he has for many years, I

15    think ten years at his current employment, sought and

16    received exemptions from mandatory vaccines, whether it

17    be flu or otherwise.  And he was given an exemption

18    this year, prior to the government's revocation of

19    religious exemptions on August 26th to say yes, your

20    longstanding exemption is still applicable to you, only

21    to subsequently have it revoked upon the governor's

22    change of the rules.

23                So we have a number of plaintiffs and then

24    obviously John Doe as well, who is an employer in New

25    York, who wishes to provide his employees with the
```

 1   protections that the First Amendment and Title 7 grant

 2   them, which is to request a reasonable accommodation

 3   from the governor's mandate.  He has been instructed

 4   that his facility will face crippling fines and closure

 5   should he offer the protection to his employees that

 6   federal law demands.  So here you have clear First

 7   Amendment injury, irreparable harm being imposed every

 8   day this choice is forced upon the plaintiffs, all

 9   because the governor of New York and the state health

10   defendants have removed the protections that are

11   clearly applicable to them under the First Amendment

12   and under Title 7.  And because it fails neutral and

13   generally applicable, the government is subject to

14   strict scrutiny and the governor cannot satisfy --

15           THE COURT:  On the irreparable harm

16   question, how do you intend with the cases that we see

17   in New York Hospital's brief from today that say that

18   the loss of employment is not irreparable harm for TRO

19   purposes.

20           MR. SCHMID:  For TRO purposes against a

21   private employer defendant, your Honor, the government

22   -- the private employer defendants may have a point.

23   The state defendants have no -- there is zero question

24   that the loss of First Amendment rights for even

25   minimal periods of time under Elrod v. Burns, under

1  Catholic Diocese v. Cuomo, under Tanden v. Newsom and

2  South Bay Pentecostal Church, all of the ones that have

3  arisen even in the context of Covid 19 litigation, all

4  suggest that the loss for even minimal periods of time

5  is per se irreparable harm.

6  So what we have here is all plaintiffs

7  against the government defendant that have created the

8  situation where there are no more religious exemptions

9  in New York.  That is per se First Amendment injury

10  because they have substantially burdened by the

11  government revoking religious exemptions that were

12  otherwise applicable and that are still applicable

13  under federal law but that the state defendants,

14  through state action, have imposed an unconscionable

15  choice on these plaintiffs for choosing between the

16  exercise of their religious beliefs or their ability to

17  feed their family.

18  That is per se irreparable harm under the

19  First Amendment.  Regardless of whether the private

20  employer defendants and the subsequent Title 7 cases

21  that come later are at issue, there is zero question

22  that as to the state defendants, which are all here

23  because of their policy change revoking religious

24  exemptions, are creating per se First Amendment harm.

25  So that takes us back, your Honor, to strict

1   scrutiny and the government's burden to prove that

2   because its law is neither neutral nor generally

3   applicable, that it must be supported by a compelling

4   interest and the least-restrictive means.  There can be

5   no question that the government's wholesale revocation

6   of exemptions that mirror what these plaintiffs and

7   many other healthcare providers in New York have been

8   doing for the last 18 months and being declared heroes

9   for doing so are not only -- are no longer available at

10  the flick of the governor's pen because she said no,

11  we're not going to recognize them anymore.

12           Here we know accommodations are available.

13  It is not the least-restrictive means because under

14  McCullon v. Cokely (ph), it says you have to seriously

15  undertake to address the problems, meaning in some

16  context look to what other exemptions and

17  accommodations are available.  Here we have 45 other

18  states offering the exact accommodation that plaintiffs

19  are seeking here.  We have the largest healthcare

20  provider in the country, the Department of Veterans

21  Affairs, that is offering religious accommodations to

22  its healthcare providers under the First Amendment as

23  it is required to do.

24           It's not a question that these

25  accommodations can be available and that they can be

1   reasonably accommodated for the exercise of their

2   sincere religious beliefs while maintaining the

3   governor's ability to protect those who need healthcare

4   and who have been receiving it from these exact

5   plaintiffs for the last 18 months, under the same

6   conditions that they are seeking now.  Interestingly --

7           THE COURT:  How does <u>Phillips</u>, the Second

8   Circuit case from 2015, affect your First Amendment

9   analysis?

10          MR. SCHMID:  I don't think it does, your

11  Honor, because I think here, under all of the cases

12  that I just articulated -- you have <u>Elrod</u>, you have

13  <u>Catholic Diocese</u>, and you have <u>South Bay United</u>

14  <u>Pentacostal Church</u>, and all of these other cases that

15  say that once you have imposed irreparable First

16  Amendment injury on a plaintiff because you have

17  treated him differently than any other activity, which

18  here you have medical exemptions that are offered and

19  you don't permit religious exemptions, which are

20  required by the law.

21          You have fallen into strict scrutiny.  You

22  are required to grant these accommodations.  They are

23  not granting them.  Some of the defendants here, indeed

24  Trinity, are offering religious exemptions across the

25  country in many other states, yet they aren't here

1    because of the governor's mandate.  So here, we have a

2    prototypical First Amendment claim against the state

3    defendants, regardless of whether it arises in the

4    employer/employee context, here it is the state

5    imposing this burden on the plaintiff and requiring

6    that they violate their conscience in order to feed

7    their families, and that is why a TRO is needed today.

8    We have a strict scrutiny analysis --

9           THE COURT:  Just coming back to -- just

10    coming back to Phillips.  Phillips to me seems to adopt

11    persuasive dictum from the Supreme Court that says that

12    a parent cannot claim freedom from compulsory

13    vaccination for either the child or himself on

14    religious grounds, citing Prince (Supreme Court 1944).

15    Is that the law of the Second Circuit as it stands and

16    if not, why?

17           MR. SCHMID:  Those cases -- first, your

18    Honor, I would submit to you that under the motive

19    analysis that has come to subsequent to that, under

20    Cuomo and Catholic Diocese, under South Bay United

21    Pentacostal Church, under the other ones, that even in

22    a pandemic, you cannot put away the Constitution and

23    say it's forgotten.  Those have over-ridden all of the

24    cases that suggest in a public health emergency, there

25    are constitutional provisions we can ignore.  To the

1　extent Phillips suggests that First Amendment

2　accommodations are not available to plaintiffs because

3　Covid 19 is here, I submit to the Court that Roman

4　Catholic Diocese, South Bay United Pentecostal Church,

5　Haverstraw v. Newsom (ph), Tanden v. Newsom, and a host

6　of other cases that arose last year suggest that you

7　cannot put those away just because there's an illness

8　going on.

9　　　　　THE COURT:  Right.  So focusing on the

10　Diocese for a second, Diocese says that religion was

11　afforded less-favorable treatment than comparable

12　activities, and the comparable activities are things

13　like going to the bank, and to a big-box shopping

14　store, and other things that don't involve life and

15　death.  Here you're saying that religion is being

16　singled out for unfavorable treatment because there is

17　a medical exemption.  What exactly does the medical

18　exemption say and what -- if a person wants to avoid

19　vaccinations on the basis of a medical exemption and

20　still keep their job, how would that work under the

21　regulations?

22　　　　　MR. SCHMID:  The rule states, your Honor,

23　that a person with a medical condition -- and it has to

24　be supported by a doctor or a licensed nurse

25　practitioner, specific things that are outlined in the

1    rule, which is Exhibit B or C to our complaint.  It

2    says that having a note from a doctor that says it's

3    contraindicated for this particular patient, they can

4    be accommodated and exempted from the mandatory

5    vaccination policy.  Because the face of that provides

6    that there are exemptions available, under <u>Tanden</u> and

7    <u>Diocese</u>, that is treating any comparable secular

8    activity differently than it is religion.

9            Religion has been singled out for removal

10    from the exemption.  The virus doesn't know the

11    difference of whether a person has a medical exemption

12    and accommodation or a religious exemptions and

13    accommodation, but the governor has seen fit to revoke

14    the protections that are offered to religious

15    adherents, when we know that there are accommodations

16    that can be had for the plaintiffs because we have a

17    host of other jurisdictions.  We have the government

18    doing it.  We have the defendants here, prior to the

19    rule change, all granting many of the plaintiffs here

20    exemptions and accommodations only to revoke them at

21    the governor's rule change.  So under <u>Tanden v. Newsom</u>

22    -- I understand <u>Catholic Diocese</u> involved religious

23    worship services versus non-religious gatherings of

24    like kind.  Here the analogy is that you have medical

25    workers that are seeking exemptions based on the

1  previously two, now only one exemption available and we

2  have revoked the religious exemption while permitting

3  the medical exemption and accommodation, which singles

4  out religion for especially (ui), which is what <u>Tanden</u>

5  and <u>Catholic Diocese</u> and the others say requires the

6  application of strict scrutiny.

7          And because it requires the application of

8  strict scrutiny, the government has the burden to

9  demonstrate that there are no reasonable alternatives

10 that can be had, that it is the least-restrictive means

11 we have available to undertake to protect the health

12 and welfare of those in the hospital, while we have a

13 number of jurisdictions that already demonstrated --

14 and as I just articulated, the defendants before the

15 Court today already have accommodated these plaintiffs

16 with the exact same accommodations they seek here, and

17 the accommodations that they have been engaging in for

18 the last 18 months while being declared heroes.  So the

19 singling out of plaintiffs --

20          THE COURT:  Do you have a case from 3either

21 the U.S. Supreme Court or the Second Circuit that says

22 that religion is being singled out for disfavored

23 treatment when there's a medical exemption but not a

24 religious exemption?

25          MR. SCHMID:  <u>Tanden v. Newsom</u>, your Honor.

```
 1   It says whenever -- this is a quote from Tanden v.
 2   Newsom.  Whenever -- the government violates the First
 3   Amendment whenever it treats any comparable activity
 4   more favorable than religious exercise.
 5              THE COURT:  Right, but that just begs the
 6   question of whether we really are talking about
 7   comparable activity.  I think the best case for you
 8   would be then Judge Alito's opinion in The Fraternal
 9   Order of Police case, but that's not binding here.  So
10   my question is, do you -- you don't see any case in the
11   Second Circuit or the Supreme Court that specifically
12   says that offering a medical exemption but not a
13   religious exemption is disfavored treatment sufficient
14   to trigger --
15              MR. SCHMID:  I think when you look at the
16   description -- under Catholic Diocese and under Tanden
17   v. Newsom, and under South Bay and all the rest of
18   them, or the Supreme Court (ui).
19              THE COURT:  You've really got some kind of
20   background noise.  I don't know if that's --
21              MR. SCHMID:  Yeah, it's not from me.  I
22   don't understand.
23              THE COURT:  Maybe we can mute that.
24              MR. SCHMID:  Shall I continue, your Honor?
25              THE COURT:  Yeah.
```

1          MR. SCHMID:  So picking up where I left off,

2     under <u>Tanden v. Newsom</u> and under <u>Catholic Diocese</u>, it

3     describes a host of what activities are comparable for

4     First Amendment purposes.  And presuming -- those cases

5     all say that presuming one is more dangerous than the

6     other is insufficient to then single out religious

7     treatment -- for less-favorable treatment.  In all of

8     those cases, they looked at different comparables and

9     in all of those cases, the government asserted that,

10    well, they're different because they're congregant

11    activities so religion needs to be treated less

12    favorably, when there was no indication that the virus

13    knew the difference.

14          Here the same is true.  You have offered an

15    exemption to certain individuals from the policy,

16    meaning you have created a system of individualized

17    exemptions, which is what (ui) calls them, so because

18    you have some, when you have singled out religion for

19    not having the availability of such an exemption,

20    you're subject to strict scrutiny under all of the

21    cases that we have just articulated.

22          THE COURT:  Okay, so let me just -- let me

23    just summarize your position to make sure I understand

24    it.  Tell me if I'm getting this wrong.  I think you

25    would acknowledge -- tell me if this is wrong -- that

```
 1  if Phillips v. City of New York is still good law, then
 2  you have a problem establishing a likelihood of success
 3  on the merits here.  But you told me that the way you
 4  deal with that case is to say you believe it's been
 5  overruled by the Newsom case and the Diocese case.  Is
 6  that a correct statement?
 7            MR. SCHMID:  To the extent that Phillips
 8  suggests, your Honor, that the First Amendment can be
 9  applied differently in the context of mandatory
10  vaccinations or other public health measures, I believe
11  yes, that they have found a way -- that those cases
12  require the application of strict scrutiny, and you
13  cannot single out religion for especially harsh
14  treatment.
15            THE COURT:  But Phillips looks at a vaccine
16  requirement -- I don't know if we know from the
17  Phillips case whether they offered a medical exemption
18  but --
19            MR. SCHMID:  And to the extent that there
20  was no other -- to the extent that in Phillips, New
21  York did not create a system where there were other
22  available alternatives for those plaintiffs or for
23  others who objected but there was -- it was a broad-
24  scale application of the same policy towards everyone
25  and they did not grant religious exemptions or medical
```

1   exemptions or anything.  Here that's not what we have.

2   If you have the application --

3          THE COURT:  So I just found it in <u>Phillips</u>.

4   There is a medical exemption available there and it's

5   the same one that the state is offering here.  <u>Phillips</u>

6   says right up front in the background section that a

7   medical exemption is available if a physician licensed

8   to practice medicine certifies that immunization may be

9   detrimental to a child's health.  And despite that --

10   despite that medical exemption, the <u>Phillips</u> court goes

11   on to say -- goes on to call this a law of neutral and

12   general applicability, right?  It doesn't say that

13   <u>Lukumi Bobalueye</u> (ph) applies and if this is on the

14   right side of the line, that applies there because --

15          MR. SCHMID:  And I would submit to you, your

16   Honor, that when <u>Tanden v. Newsom</u> and <u>Catholic Diocese</u>

17   come along and say the government violates the First

18   Amendment whenever it treats any comparable activity

19   dissimilarly to religion, it's not neutral and it's not

20   generally applicable and therefore, it's subject to

21   strict scrutiny.  Here you have two identical workers,

22   one with a religious exemption, one with a medical

23   condition.  You have said that exemptions and

24   accommodations which are sufficient to advance the

25   government's interest in -- are sufficient there with

 1  the healthcare exemption but not with a religious

 2  exemption, you have singled out the religious adherents

 3  for disparate treatment.  Under <u>Cuomo</u> and under

 4  <u>Catholic Diocese</u> and under <u>Haverstraw</u> and all the other

 5  ones that we've discussed, I think that supersedes

 6  <u>Phillips</u>'s notion that it didn't single it out because

 7  there was a medical exemption.  Here <u>Tanden</u> clearly

 8  says if any comparable activity is given more favorable

 9  treatment, then you're subject to strict scrutiny under

10  <u>Lukumi</u> and under all of the other cases.

11          THE COURT:  Okay.  Anything else you want to

12  say before we turn to defense counsel?

13          MR. SCHMID:  I will reserve the rest of my

14  time if you will permit me, your Honor.

15          THE COURT:  Thank you.

16          Why don't we hear from the defendants at

17  this point.

18          MR. FARBER:  Thank you, your Honor.  This is

19  Seth Farber from the Attorney General's Office on

20  behalf of the state defendants, Governor Hochul, and

21  Commissioner Zucker.

22          Your Honor, as we move into the colder

23  weather of autumn and winter, where more people are

24  likely to spend more time indoors and increase the risk

25  of the spread of Covid 19, the State of New York has

1    implemented a common-sense regulation to protect the

2    public health and mitigate the spread of --

3              THE COURT:  Mr. Farber --

4              MR. FARBER:  Yes.

5              THE COURT:  How do you deal with the

6    argument that when there's a medical exemption but not

7    a religious exemption, that the law is no longer a law

8    of general applicability --

9              MR. FARBER:  Well, your Honor --

10             THE COURT:  (Ui).

11             MR. FARBER:  Your Honor, there are two cases

12   that have come down subsequent to the cases cited by

13   the plaintiffs that I'm aware of.  One is the Southern

14   District case of W.D. v. Rockland County, which is at

15   2021 W.L. 707065, and the other, which is even more on

16   point, is a state court case, F.F. v. State.  That's at

17   66-MC-3467, as affirmed at 194 A.D. -- I believe A.D.3d

18   80.

19             THE COURT:  Do either of those cases say

20   head on what I'm asking about here, namely that you can

21   have a medical exemption?

22             MR. FARBER:  Yeah, the state court case

23   does.  The state court case found that the medical

24   exemption did in fact create a distinction and defeat

25   an equal protection claim.  In other words, those

```
 1  children that could not be vaccinated without, you

 2  know, subjecting themselves to medical harm were not

 3  similarly situated to those who could be vaccinated.

 4  So I would argue that the Third Department's affirmance

 5  -- I'm specifically referring to 194 A.D.3d at 89 and

 6  90 -- are on point.  Let me see if I can get a quote.

 7            THE COURT:  Okay, so this is just an equal

 8  protection claim.

 9            MR. FARBER:  I believe -- I believe -- no.

10  F.F. also raised a free exercise claim literally

11  associated with the removal by the legislature of the

12  religious exemption to statewide vaccinations of school

13  children in New York, so it's a pretty close case on

14  point.

15            Returning to my argument, we're here --

16            THE COURT:  By the way, just as a

17  preliminary matter --

18            MR. FARBER:  Sure.

19            THE COURT:  How are the defendants dividing

20  the argument?

21            MR. FARBER:  I'm going to go first, your

22  Honor.  I'm going to try to, if at all possible, keep

23  myself under 15 minutes or so.  Then I believe New York

24  Presbyterian is going to proceed and then the other two

25  defendants, I believe Trinity and then Westchester but
```

```
 1   they will -- counsel will identify themselves.

 2            THE COURT:  Okay.  So I had asked the

 3   defendants to communicate among themselves about how to

 4   divide up the time.  Has that happened?

 5            MR. FARBER:  We have done so, your Honor,

 6   yes.

 7            THE COURT:  Okay, so what is the division?

 8            MR. FARBER:  I'm going to be approximately

 9   15 minutes if I can, and then the remaining defendants,

10   the remaining three defendants are going to divide the

11   remaining time.

12            THE COURT:  Five minutes each?

13            MR. FARBER:  I'm sorry, I'm going to defer.

14            MS. POLITO:  Judge, this is Jacqueline

15   Polito on behalf of Trinity Health.  The bulk of the

16   remaining time is going to be reserved for Ms.

17   Velasquez because they have submitted paperwork in

18   opposition to the TRO.  Then Trinity and Westchester,

19   we're only requesting one minute each.

20            THE COURT:  Okay, terrific.

21            MS. POLITO:  Thank you, Judge.

22            MR. FARBER:  Thank you, your Honor.  Going

23   back to my argument, plaintiffs contend that they have

24   a good-faith religious objection to receiving the Covid

25   19 vaccines available from either Pfizer, Moderna, or
```

 1 | Johnson & Johnson, on the basis that the three vaccines
 2 | at issue had some involvement, no matter how
 3 | attenuated, whether in manufacturing or tested, with
 4 | stem cell lines that at some point were derived from
 5 | stem cells from aborted fetuses.  On this basis, they
 6 | argue they are entitled to a temporary restraining
 7 | order enjoining the governor and the health
 8 | commissioner from implementing this regulation and
 9 | against the named healthcare entity defendants, to
10 | enjoin them from requiring that they be vaccinated
11 | pursuant to the regulation.
12 |         Plaintiffs are literally arguing that their
13 | right to claim a religious exemption and to continue to
14 | work in healthcare, including physicians, involving
15 | direct contact with patients and the public, or at
16 | least with staff involved in direct contact with
17 | patients and the public supersedes the ability of the
18 | state to impose a common-sense public-health measure.
19 | Plaintiffs are incorrect.
20 |         Plaintiffs are specifically seeking to
21 | enjoin the regulation at 10 N.Y.C.R.R. Section 251,
22 | which is entitled "prevention of Covid 19 transmission
23 | by covered entities," mandating that personnel of
24 | covered entities be vaccinated against Covid 19 and
25 | providing no exemption except for a medical exemption,

```
 1   which is the case where a physician or nurse
 2   practitioner certifies that receipt of the vaccine
 3   would be detrimental to the health of the person
 4   receiving the vaccine.
 5            Covered entities include hospitals, nursing
 6   homes, and other healthcare entities identified in the
 7   regulation.  Personnel include medical, nursing, and
 8   other staff, paid or unpaid, volunteer students, or
 9   anyone likely to infect a patient, resident, or other
10   staff if they were to contract Covid 19.  With respect
11   to hospitals and nursing homes, personnel are required
12   to get at least a first vaccine by September 27th.
13   Other healthcare entities are required to get their
14   first shot by October 7th.
15            Here plaintiffs are seeking a TRO for a
16   mandatory preliminary injunction -- preliminary
17   injunctive relief against the government --
18            THE COURT:  Mr. Farber?
19            MR. FARBER:  Yes, sir.
20            THE COURT:  Let me give you the five-minute
21   warning here.
22            MR. FARBER:  Okay.
23            THE COURT:  If there are things you want to
24   bring to my attention -- you don't have to rehash the
25   plaintiffs' argument.
```

```
 1              MR. FARBER:  Sure.  Your Honor, plaintiffs
 2    can't show probably success on the merits.  Under the
 3    long line of Jacobson precedent, the Supreme Court has
 4    held that a community has the right to protect itself
 5    against an epidemic of disease which threatens its
 6    members and that in such times, judicial scrutiny is
 7    reserved for a measure that has no real or substantial
 8    relation to the object of protecting the public or is
 9    beyond -- is beyond question.
10              I should add with respect to the medical
11    exemption as requested that the government doesn't
12    actually decide the medical exemption.  The patient,
13    the physician, and the hospital would.  But in any
14    event, we believe -- we believe that your Honor is
15    correct, that the Phillips case, 775 F.3d 538,
16    ostensibly puts the issue of -- puts the issue to rest
17    of being able to mandate vaccines without a religious
18    exemption.  In that case, it's the context of the
19    public school and as your Honor noted, citing the
20    Prince cases and the other cases cited -- the court in
21    Phillips held that New York could constitutionally
22    require that all children be vaccinated in order to
23    attend public school, period, without a religious
24    exemption.
25              As I indicated, the recent case of W.D. v.
```

1  <u>Rockland County</u>, 2021 W.L. 707065, is in accord.  That

2  case was decided after the Supreme Court cases cited by

3  plaintiff.  The Southern District upheld Rockland

4  County's declaration conditioning any public assembly

5  or school attendance, including private school

6  attendance, for a period of thirty days, upon obtaining

7  an appropriate vaccination in order to contain a

8  measles outbreak.  That case collected cases to the

9  effect that the free exercise clause was not violated

10  by this requirement.

11        As I indicated, the New York State case,

12  <u>F.F.</u>, is in accord.  It rejected a free exercise

13  challenge to the elimination of religious exemption to

14  vaccine requirements for public school attendance,

15  following the <u>Phillips</u> line.  If school attendance or

16  even public assembly can be conditioned on obtaining a

17  vaccination without running afoul of the free exercise

18  clause, then clearly the state can require vaccinations

19  in the present case, where plaintiffs purport to be

20  healthcare staff who, if they become infected with

21  Covid 19, really run the risk of infecting patients,

22  other staff, and members of the public, a risk the

23  state is reasonably regulating with this vaccine

24  requirement.  And accordingly, the free exercise claim

25  fails.

1          Similarly, plaintiffs' equal protection

2 claim fails.  Healthcare personnel with a medical

3 exemption simply cannot be vaccinated without a risk of

4 detriment to their health based on a pre-existing

5 health condition.  Plaintiffs here, absent their own

6 medical exemption, are not appropriate comparitors, let

7 alone comparitors equal in all material respects.  They

8 do not allege they will suffer a detriment to their

9 health if they're vaccinated.  They of course claim

10 their free exercise violation, which we submit fails as

11 a matter of law.

12          And as I noted, the Third Department's

13 affirmance in F.F. also rejected an equal protection

14 claim raised by plaintiffs between children who could

15 claim a medical exemption and those who could not.

16 That court found that this distinction warranted denial

17 of an equal protection claim.

18          Absent equal protection or free exercise,

19 with respect to the claim of supremacy clause or Title

20 7, I note that the other defendants will be addressing

21 that in more detail than I am.  I will state that in

22 the context of the state here, the state is acting as a

23 regulator rather than as an employer and is thus not

24 ordinarily subject to Title 7 claims.  I would cite

25 Galino v. New York State Education Department, 450 F.3d

1   351, and <u>Shahab v. New York State Department of</u>

2   <u>Transportation</u> (ph), 255 F.Appx.9, to the effect that

3   unless the state is acting -- directing the terms and

4   conditions of employment, it's a regulator and thus,

5   Title 7 is not applicable.

6           In any event, the Title 7 claim rests on the

7   incorrect assumption that plaintiffs can seek a

8   religious exemption from a vaccine requirement that

9   will allow them to continue to work with patients and

10  staff while they are not vaccinated, and they plainly

11  cannot.  There is no inconsistency with Title 7 here.

12  Employers can certainly consider reasonable

13  accommodations that do not run afoul of the regulation,

14  whether that be administrative or telemedicine or

15  something remote.  But what they cannot do is what

16  plaintiffs ask here, accommodate them by permitting

17  them to continue to work with patients, the public, and

18  other staff without being vaccinated.

19          Turning the civil conspiracy claim raised,

20  the allegations are vague and conclusory and we submit

21  miss the mark.  The state defendants promulgated

22  regulation binding on both the healthcare entities and

23  the plaintiffs, that the healthcare entities are

24  complying with a duly promulgated regulation simply

25  cannot be the basis for a civil rights conspiracy

1    claim.  And in any event, the allegations of a civil

2    rights conspiracy are vague and conclusory, and

3    plaintiffs have not suffered a deprivation of their

4    civil rights at all, for the reasons I have argued.  On

5    top of that --

6              THE COURT:  One question --

7              MR. FARBER:  Yes, your Honor.

8              THE COURT:  -- before we move on to the next

9    defendant.  Do you know The Fraternal Order of Police

10   Newark Lodge Number 12 case from the Third Circuit that

11   I referred to earlier?

12             MR. FARBER:  I really am not familiar with

13   that case, your Honor.  I could submit a letter

14   addressing it if the Court permits.

15             THE COURT:  It's written by Judge Alito when

16   he was a Third Circuit judge, and he said -- the State

17   of New Jersey or the City of Newark or whatever it was

18   has a policy prohibiting certain employees from growing

19   beards but permits a medical exemption from that.  So

20   if you've got certain medical conditions that make

21   shaving difficult or dangerous, you're exempt.  But if

22   you have a religious obligation to grow a beard, you

23   are not exempt.  The opinion holds that religious

24   motivations are being held to a higher and disfavored

25   standard compared to the medical exemptions.  How would

```
 1   you contend with that?  Is that not the law in the
 2   Second Circuit and if not, why not?
 3            MR. FARBER:  Well, I'm not aware of Second
 4   Circuit authority to that effect but, again, I would --
 5   I would go back for example to the W.D. case, which has
 6   come down after the Diocese case.
 7            THE COURT:  Read me the cite for W.D. again.
 8            MR. FARBER:  One second.  2021 W.L. 707065.
 9            THE COURT:  And this takes head on the
10   question of whether if they're provided a medical
11   exemption but not a religious exemption, it constitute
12   disfavored treatment of religion?
13            MR. FARBER:  Well, essentially --
14   essentially, there was no medical exemption with
15   respect to a vaccine requirement -- I'm sorry, there
16   was no religious exemption for a vaccine requirement,
17   and the court held that that was permissible.
18            THE COURT:  Was there a medical exemption,
19   though?
20            MR. FARBER:  I am not -- I am not aware of
21   whether there was a specific medical exemption
22   available in that case.  There has been as a matter of
23   state law.  I don't know off the top of my head.
24            THE COURT:  Yeah, there is a medical
25   exemption there but the magistrate judge seems to just
```

```
 1   assume that the medical exemption does not mean that
 2   religion is given disparate treatment without really
 3   discussing that.
 4           MR. FARBER:  Well, if I can raise one
 5   distinction with The Fraternal Order of Police, your
 6   Honor.  It was the police department that was deciding
 7   whether the plaintiff there met the medical exemption
 8   for beards.  That's not the case here, where the
 9   medical exemption has to be determined by a physician
10   or a nurse practitioner within the meaning of the
11   regulation.  We argue that's at least one significant
12   distinction.
13           In any event, if I can go back to my
14   argument.  As I said, there's no basis for civil
15   conspiracy here.  There is a looming Article III case
16   and controversy and potential standing problem here in
17   so far as plaintiffs are proceeding entirely
18   anonymously.
19           THE COURT:  That issue I'm aware of.  If the
20   case is going to move forward, and I take it it's going
21   to move forward one way or the other, we'll ask the
22   plaintiffs to brief the anonymous litigation issue.
23           All right, why don't hear from the next
24   defense counsel, please.
25           MS. VELASQUEZ:  Thank you, your Honor.  Liza
```

```
 1    Velasquez on behalf of New York Presbyterian Hospital
 2    System.  In the middle of the most severe public health
 3    crisis in a century, one that continues to tragically
 4    affect thousands of New Yorkers, plaintiffs are seeking
 5    an extraordinary remedy of this Court.  They're asking
 6    the Court to interfere with New York Presbyterian's
 7    lawful and live-saving vaccination policy, a policy
 8    that protects patients, healthcare workers, and their
 9    communities.
10           Courts around the country have consistently
11    denied requests for TRO's challenging employer Covid 19
12    vaccination policies.  Most recently, just yesterday,
13    Judge William Kuntz of this Court denied a TRO
14    challenge to the very same New York State health
15    regulation which is the basis of the plaintiffs' claims
16    here.  Plaintiffs' motion should be denied because they
17    have no viable claim, much less a likelihood of success
18    against New York Presbyterian, nor can they satisfy any
19    of the other requirements for injunctive relief.
20           Let me get to the claims.  Their supremacy
21    clause claim is unlikely to succeed for the simple
22    reason that it doesn't provide a private right of
23    action.  The supremacy clause is a rule of decision
24    that instructs courts what to do when state and federal
25    law clash.  It's not the source of any federal rights.
```

1 As for their argument that Title 7 preempts New York

2 State law, that argument is without merit.  To the

3 contrary, there is a strong presumption that state and

4 local regulation of matters related to health and

5 safety, like what we have here, are valid under the

6 supremacy clause absent clear and manifest purpose of

7 Congress to preempt such laws.  Here there is no

8 indication that Congress intended Title 7 to preempt

9 state health and safety laws, and plaintiffs don't

10 point to anything in the language of Title 7 to suggest

11 otherwise.

12   The state law that we're dealing with here

13 is facially neutral and it doesn't even target or

14 mention religion.  Every employee without a medical

15 exemption is treated the same, and the law is clear

16 that when you have a law like this one that is neutral

17 and of general applicability, strict scrutiny does not

18 apply and those laws need not be justified by

19 compelling government interest, even if the law has the

20 incidental effect of burdening a particular religious

21 practice.  Moreover, there is no actual conflict

22 between the requirements of Title 7 and New York State

23 law because Title 7 does not require employers to

24 accommodate religious beliefs or practices when doing

25 so would pose an undue hardship on the employer, which

```
1   leads me to the deficiencies in the plaintiffs' Title 7

2   claim.

3           Plaintiffs' complaint reflects a fundamental

4   misconception of Title 7.  Title 7 does not require an

5   employer to violate a state health and safety

6   requirement or to jeopardize the health and safety of

7   its workforce and vulnerable hospital patients to

8   accommodate an employee's religious practice.  Title 7

9   requires only the reasonable accommodation of religious

10  practices that do not pose an undue hardship on the

11  conduct of the employer's business.

12          The Supreme Court has interpreted narrowly

13  the duty under Title 7 to provide religious

14  accommodations, specifically any religious

15  accommodation imposing more than a de minimus cost on

16  an employer amounts to an undue hardship.  So relevant

17  here, multiple courts in this circuit and others, and

18  we've cited those cases in our brief, have held that an

19  employer is not liable under Title 7 and that no

20  religious discrimination claim can lie when

21  accommodating an employee's religious beliefs would

22  require the employer to violate federal law or state

23  law.

24          Our brief cites to two Second Circuit cases

25  on this point, Tassano (ph) and Lowman (ph).  Cases
```

1  like <u>Tassano</u>, <u>Lowman</u>, and <u>Battia</u> (ph) out of the Ninth

2  Circuit demonstrate that Title 7 imposes no obligation

3  on New York Presbyterian to violate state law, thereby

4  jeopardizing its license, its ability to care for

5  patients, and the livelihoods of tens of thousands of

6  its employees in order to provide a religious

7  accommodation.

8          But, your Honor, even setting aside the

9  requirements imposed by New York state law,

10  considerations of workplace and public safety also

11  undermine plaintiffs' Title 7 claim.  Permitting

12  unvaccinated hospital employees to put other employees

13  and an already vulnerable patient population at risk

14  would clearly impose more than a de minimus cost and

15  constitute an undue burden, which Title 7 does not New

16  York Presbyterian to bear.

17          The <u>Necaxi v. New York City Transportation</u>

18  <u>Authority</u> case out of the Eastern District of New York,

19  which was affirmed by the Second Circuit case as

20  instructive, in that case, the Second Circuit affirmed

21  Judge Gleeson's grant of summary judgment for the

22  employer under Title 7 because the religious

23  accommodations the plaintiff sought to refuse to wear a

24  hard hat and to perform only work duties that didn't

25  require him to wear a hard hat on the basis of his

1  religious beliefs threatened to compromise the safety

2  in the workplace.

3          _Robinson v. Children's Hospital Boston_ out

4  of the District of Massachusetts is also instructive

5  because that case involves vaccination.  The employer

6  in that case was found not to violate Title 7 when it

7  terminated an employee who refused the influenza

8  vaccination because granting the plaintiffs' request

9  would increase the risk of transmitting influenza to an

10 already vulnerable patient population.

11         While plaintiffs cavalierly and erroneously

12 argue that the vaccination status of healthcare workers

13 is irrelevant to health and safety -- you can see that

14 on page 17 of their brief -- there can be no question

15 that the factual record in this case will demonstrate

16 that the single most effective way to prevent the

17 transmission of Covid 19 and protect vulnerable

18 patients and healthcare workers from life-threatening

19 illness is vaccination.  Currently, 76% of our patients

20 diagnosed with Covid 19 who are on a ventilator are

21 unvaccinated.  Title 7 does not require an employer to

22 grant religious accommodations that threaten to

23 compromise workplace safety or increase the risk of

24 life-threatening disease.

25         To the extent that plaintiffs are attempting

```
 1   to assert a disparate impact claim under Title 7, that
 2   claim, too, cannot succeed.  Here they fail to even
 3   state a prima facie case for disparate impact and they
 4   don't allege any facts showing that a disparity based
 5   on religion exists as a consequence of our vaccination
 6   program.
 7           Given that 91% of New York Presbyterian's
 8   work force are in compliance with our program -- your
 9   Honor, that's thousands of employees who no doubt
10   subscribe to a wide range of religious faiths and
11   creeds, there is virtually no chance that plaintiffs
12   could ever make such a showing of religious disparate
13   impact.  And there can't be any dispute that our
14   vaccination policy is consistent with business
15   necessity.  For New York Presbyterian to grant
16   religious exemptions in violation of the Department of
17   Health's mandate would jeopardize our license and
18   threaten our core mission of providing patient care.
19           Finally, plaintiffs are unlikely to succeed
20   on their Section 1985 conspiracy claim.  As Mr. Farber
21   has discussed, they have no viable constitutional
22   claims against the state, much less against a private
23   employer like New York Presbyterian that could form the
24   predicate of any such conspiracy.  I mean, step back
25   and think about the theory of that Section 1985 claim.
```

```
 1    Essentially, they're arguing that defendants can be
 2    held liable as civil rights coconspirators merely for
 3    complying with a state law.
 4              In any event, they don't remotely state a
 5    Section 1985 claim.  They have not alleged and their
 6    allegations in their complaint demonstrate that they
 7    could not possibly prove that there was any intent by
 8    New York Presbyterian much less a meeting of the minds
 9    amongst the defendants to discriminate against
10    plaintiffs.
11              Instead, their complaint acknowledges, as it
12    must, that we adjusted our vaccination policy to comply
13    with state law after that law was enacted.  There's no
14    allegation, nor could there be, that we had any
15    involvement or influence in the development or
16    enactment of the state law, nor could plaintiffs
17    plausibly allege any discriminatory class-based animus
18    by New York Presbyterian in complying with the
19    facially-neutral mandate imposed by the state.  Our
20    vaccination program is neutral on its face.  It applies
21    to employees and was enacted to protect the health and
22    safety of patients, employees, and the communities in
23    which they live.
24              As for the irreparable injury requirement,
25    plaintiffs are required to satisfy that in order to
```

```
 1   obtain a TRO.  Mr. Schmid concedes this point with
 2   respect to the private employer defendants.  In the
 3   employment context, the law is well established that
 4   neither the loss of employment nor financial loss
 5   constitutes irreparable harm because reinstatement
 6   and/or money damages can make a discharged employee
 7   whole.  That is fatal to plaintiffs' motion for
 8   injunctive relief.
 9             As for the balance of the equities, whereas
10   plaintiffs can be made whole through an award of money
11   damages or reinstatement, enjoining New York
12   Presbyterian from complying with New York State law or
13   otherwise interfering with our vaccination program
14   would jeopardize our ability to care for patients in a
15   pandemic as well as the livelihoods of tens of
16   thousands of employees, and put patient, employee, and
17   community health at risk.  The real irreparable harm
18   here, your Honor, is exposing healthcare workers and
19   patients to unvaccinated employees, which could lead to
20   infection and death.
21             Finally, the relief that plaintiffs seek
22   here is contrary to the public interest, and New York
23   courts have already found that vaccine policies like
24   ours unquestionably effectuate a compelling interest,
25   namely stemming the spread of Covid 19 and protecting
```

```
1   the most vulnerable members of our community.  As the
2   New York court of appeals said in the Garcia case,
3   there is a direct connection between vaccination rules
4   and the preservation of health and safety.  Plaintiffs'
5   motion, which seeks to undermine that compelling
6   interest in the middle of a public health crisis,
7   should be denied.
8            THE COURT:  Can you just say -- assume we
9   were talking about a tiny universe of plaintiffs who
10  could establish a likelihood of success on the merits
11  here and that the question to the hospital defendants
12  was, would accommodations to those plaintiffs be
13  possible?  If there's an infinitesimal number of
14  plaintiffs who would like to keep their jobs but say
15  that it would directly contravene their honestly held
16  religious beliefs to be vaccinated, not only because of
17  the fetal tissue stuff that we see in the complaint but
18  because they are people who decline every vaccination
19  as Christian Scientists or something like that.  Would
20  there be a way that the hospital could accommodate
21  their ability to continue to do their jobs and to serve
22  the hospital's needs that would minimize the risk to
23  other people, including patients and colleagues?
24           MS. VELASQUEZ:  Taking as a given that we
25  would have to comply with the state law, which poses no
```

```
1   conflict with our -- with compliance of our Title 7
2   obligations.  Although we did exercise our discretion
3   to grant a limited number of religious accommodations
4   prior to the Department of Health's regulation on
5   August 26th, given the circumstances here, including a
6   public health situation which has unfortunately changed
7   for the worse in recent weeks with the Delta variant
8   circulating, it's unlikely that plaintiffs could
9   demonstrate that the undue hardship standard would be
10  met such that a religious accommodation would be
11  required under Title 7.
12          Moreover, I know that plaintiffs pointed to
13  the fact that we had previously granted a limited
14  number of religious accommodations, but the federal law
15  is clear that employers are free under Title 7 to
16  reevaluate the justification for religious
17  accommodations previously granted.
18          THE COURT:  Right, but that cuts against
19  you, right, because you were free to reevaluate and
20  until the state told you you had to remove the
21  religious exemption, you didn't feel it necessary for
22  your own purposes to do so.  So assume that -- I don't
23  mean to say anything about what I'm deciding here.  Im
24  still thinking through every aspect of this case, but
25  just assume for purposes of argument that the state
```

 1  were enjoined from pursuing any remedies against the

 2  hospital for violation of this regulation, right, so

 3  that potential harm to your client would be off the

 4  table.  Could you accommodate the plaintiffs -- what

 5  were you doing by way of accommodation for people who

 6  claimed religious exemptions while there was one?  Were

 7  you moving them to different places in the hospital,

 8  different jobs?

 9          MS. VELASQUEZ:  Well, we hadn't gotten to

10  that point yet, your Honor.  We were considering

11  requests.  We had a very robust actually two-tiered

12  process and there are details about the process in Sean

13  Smith's declaration.  So we had a panel of internal

14  experts, including doctors as well as members of

15  pastoral care and H.R. and Social Services, as well as

16  a panel of external religious, moral, and ethical

17  experts really scrutinize and look at these requests.

18          We did grant some, others we denied, and

19  some were in the appeal stages when the state mandate

20  came down.  So in the scenario that you posit, where

21  sort of the state law has either been adjusted to allow

22  for religious exemptions or, you know, sort of just,

23  you know, adjust it in a way that no longer prohibits

24  us from considering them, then we would -- we would

25  implement the process that we had put in place, which

```
 1   is one where we do engage in a case-by-case sort of

 2   review of whether or not there is an undue hardship

 3   that takes into account safety, that takes into account

 4   what the employee's role is and who he or she comes

 5   into contact with, that takes into account whether the

 6   religious belief that's being expressed is one which is

 7   sincerely held.

 8          THE COURT:  Okay, but assume that you

 9   determine that the religious belief is sincerely held

10   and now you've got somebody who was a nurse on whatever

11   wing of the hospital.  What happens then?

12          MS. VELASQUEZ:  Well, I mean, you know, each

13   case is going to be highly fact-intensive.  But it

14   seems to me that an employee who was patient-facing,

15   that certainly raises a risk of health and safety that

16   I think is likely to rise to the level of an undue

17   burden under Title 7.

18          THE COURT:  Right, and there's no obligation

19   in the ordinary Title 7 course for you to find a new

20   role for that person.

21          MS. VELASQUEZ:  Yeah, that's right, your

22   Honor.  There really isn't.  It's interesting because

23   while plaintiffs (ui) the elimination of religious but

24   not medical exemptions demonstrates that religious

25   exemptions have been improperly disfavored under the
```

```
 1   New York State statute, actually, federal anti-
 2   discrimination law provides for different standards in
 3   determining undue hardship in the religious exemption
 4   and medical exemption context, whereas under the -- in
 5   the context of religious exemptions, anything more than
 6   a de minimus cost is an undue hardship and the employer
 7   is not required to provide the accommodation.
 8              Under the ADA, which applies to the requests
 9   for medical exemptions, the standard is significant
10   difficulty or expense, so that sort of disparate
11   treatment if you will from medical versus religious
12   exemptions is in fact baked into the fabric of federal
13   anti-discrimination law applicable to employers.
14              THE COURT:  And you're not aware of a First
15   Amendment challenge to that disparity.  We're going a
16   little far afield here but --
17              MS. VELASQUEZ:  I'm not aware of one because
18   we're not a public employer, but I'm not aware of one.
19              THE COURT:  Okay.  Should we turn back to
20   plaintiffs' counsel for a few words in rebuttal?  I
21   think you may be on mute if plaintiffs' counsel is
22   speaking.
23              MR. SCHMID:  Thank you, your Honor.  Just a
24   few points on rebuttal if you will permit me.
25              THE COURT:  Yeah.  Before you even get to
```

```
1   that, would you mind taking me back to first principles
2   here?  You've got a number of different plaintiffs, all
3   of whom you say in the complaint have sincerely held
4   religious beliefs that you say are burdened unfairly by
5   this regulation, and we talked through paragraph 67 of
6   the complaint, whereby one of them is (ui) and one of
7   them is identified as a Christian Scientist.  But where
8   am I looking to ascertain the underlying sincerely held
9   religious beliefs in the verified complaint?  Does it
10  spell out (ui).
11          MR. SCHMID:  Your Honor, it does in great
12  detail.  In paragraphs 42 through 66, plaintiffs'
13  sincerely held religious beliefs are outlined, many of
14  them arising from the inextricable connection to
15  aborted fetal cells, other religious beliefs where they
16  have prayed and sought the guideline of the holy spirit
17  and have not been convicted to accept the vaccine.
18  Then with John Doe 2, his religious beliefs being that
19  he opposes all vaccines as a Christian Scientist in
20  paragraphs 67 through 69.  And then for John Doe 1 as
21  well, who is an employer who wishes to provide for
22  religious beliefs, all in paragraphs 42 through 69 in
23  the verified complaint.
24          THE COURT:  Have the plaintiffs who are not
25  Christian Scientists, have they made other medical
```

1   decisions in life on the basis of these religious

2   beliefs that you can point to?

3          MR. SCHMID:  Yes, your Honor.  In fact, for

4   Jane Does 1 and 3, they had previous exemptions that

5   were already granted for flu vaccinations because they

6   had objections to those as well, and other -- it's

7   outlined there in the verified complaint where this is

8   not a new request from them.  They have engaged in this

9   process with their employer many times before and up

10  until a couple weeks ago, all of them still being

11  granted the exemptions that were previously given them,

12  until the state said, you're no longer allowed to give

13  religious exemptions in New York, we're excepting

14  religion from New York, which is interesting and takes

15  us back, your Honor, to the Phillips case.

16          I wanted to point your Honor's attention to

17  page 541 and 543 of that case, where the issue was not

18  whether or not there was a religious exemption.  The

19  question there arose in the context of whether the

20  belief was sincerely held by the parent.  And on page

21  541, it said that the conclusion as to this parent was

22  not that it was a sincere religious objection to the

23  vaccine requirement for their child's schooling.  It

24  was more of a medical and philosophical type of

25  objection but it was not religious.  But the court went

1   on to note on page 543 that the New York law in that

2   case went far beyond what we were requesting here, your

3   Honor, which is that it allowed religious exemptions.

4   The question there was only that the particular

5   plaintiff parents did not satisfy the religious

6   exemption request.

7           THE COURT:  There was also a statement --

8   Phillips holds, I think, that kids who have had the

9   religious exemption applied to them can be barred from

10  attending school during the period following.  So if

11  you claim a religious exemption for the chicken pox

12  vaccine and then there is a confirmed case of chicken

13  pox in the school, what the New York state law was

14  doing in that case or the state law was dictating that

15  the unvaccinated child would be excluded from public

16  education.

17          MR. SCHMID:  For a limited time, but it also

18  said that there would be religious exemptions to that

19  request.  That's on page 543.  So you had the broad

20  policy that said all children must be vaccinated

21  against the chicken pox, and these particular

22  plaintiffs had requested a religious exemption from

23  that, and the question was whether or not it was

24  sincerely held.  If they had found that it was

25  sincerely held, they would have qualified.  But because

```
1   the state or because the court found that the
2   particular objection wasn't a sincerely held religious
3   belief -- and here we clearly have --
4              THE COURT:  I don't understand what you're
5   saying.  The line I'm looking at in Phillips has the
6   Second Circuit saying "we agree with the Fourth Circuit
7   following the reasoning of Jacobson and Prince that
8   mandatory vaccination as a condition for admission to
9   school does not violate the free exercise clause."
10             MR. SCHMID:  Correct, if you look at the --
11             THE COURT:  Presumably -- let me just
12  finish.  Presumably, that extends to people who have
13  sincerely held religious beliefs and Phillips -- you
14  know, we looked at the background section -- is a case
15  where there was a medical exemption.  So to my mind,
16  that seems to -- where that leaves us is that if you
17  take Phillips at its word, it undermines your position
18  that allowing a medical exemption but not a religious
19  exemption constitutes disfavored treatment for religion
20  relative to comparables.
21             MR. SCHMID:  I don't think it does, your
22  Honor, because if you look at the very next sentence
23  after the sentence you just read, or two sentences
24  later, forgive me, it says that the school offered --
25  the reason it did not violate the free exercise clause
```

1  was because it offered exemptions for parents with

2  genuine and sincere religious belief.  So Phillips

3  involved the very accommodation we are asking the Court

4  to --

5         THE COURT:  It says New York goes beyond

6  what the Constitution requires by allowing that

7  exemption.  And in the sentence prior to that, the

8  court is saying very specifically that even if there

9  was no religious exemption, it would still be

10 constitutional, right?

11        MR. SCHMID:  And to the extent that it says

12 that, your Honor, I think that that is where Cuomo and

13 Catholic Diocese and the other cases say if you treat

14 any of them comparable -- I suggest that all of them

15 can --

16        THE COURT:  But you're making -- you're

17 making an inferential leap there.  You're making a very

18 large, inferential leap there because Catholic Diocese

19 and the Newsom case from California, they don't involve

20 religion being disfavored relative to a medical

21 exemption.

22        MR. SCHMID:  Which is where your Honor

23 points to The Fraternal Order of Police, which I think

24 does suggest that when the government makes a value

25 judgment as to exemptions --

```
 1              THE COURT:  Yeah, I agree with you but The
 2    Fraternal Order of Police is not the law in this
 3    circuit and that's what I'm trying to get at.  So I
 4    think that if you were sitting in New Jersey right now
 5    having this argument, you might be in a better position
 6    because of the Third Circuit authority.
 7              MR. SCHMID:  But, your Honor, this Court has
 8    likewise followed it in the Lewis v. New York Transit
 9    Authority case, and the Southern District has also
10    followed it in the Lichtman v. New York Police
11    Department (ph) case.
12              THE COURT:  What's the -- sorry, the Lewis
13    case?
14              MR. SCHMID:  The Lewis case.  It's 12
15    F.Supp.3d 413.  It goes into that as well as Lichtman,
16    which is 2013 W.L. 6049066.  Both of them --
17              THE COURT:  Tell me what they say.  They
18    say --
19              MR. SCHMID:  Both of which cite The
20    Fraternal Order of Police for the proposition that when
21    the government makes a value judgment as to one
22    exemption being available and the other one not, they
23    are violating the First Amendment when the value
24    judgment precludes the religious exemption.  So in the
25    case of The Fraternal Order of Police, it was a beard.
```

```
 1   In Lewis and in Lichtman, it was also length of beard

 2   requirements and whether the exemption or accommodation

 3   was available.  It was in the medical context, it was

 4   not in the context of a religious exemption request.

 5   So when the government makes a value judgment as to

 6   which exemptions are available, by singling out

 7   religion for especially harsh treatment, which is what

 8   Catholic Diocese and the others suggest, you have

 9   created a system of individualized exemptions, excluded

10   religion from that system, and there are --

11              THE COURT:  Give me the Lewis cite.

12              MR. SCHMID:  Lewis is 12 F.Supp.3d 413.

13              THE COURT:  And you're saying that Lewis

14   says what The Fraternal Order of Police says.

15              MR. SCHMID:  It does, and then also the

16   Lichtman case out of the Southern District of New York

17   in 2013 comes back and says --

18              THE COURT:  Hold on a second.  What's the

19   pinpoint cite in Lewis?  By the way, the cite you read

20   me I think took me to the wrong place.  Tell me the

21   cite again.

22              MR. SCHMID:  It's 12 F.Supp.3d 418 and then

23   the pin is 455.

24              THE COURT:  455.

25              MR. SCHMID:  Then also Lichtman out of the
```

1    Southern District of New York, 2013 W.L. 6049066, pin

2    cite there being *3.  Both of them rely on The

3    Fraternal Order of Police for the exact same

4    proposition, which is that when the government makes a

5    value judgment that certain secular motivations for

6    engaging in an activity are more important than the

7    religious motivations for the exact same activity, it

8    violates the First Amendment because it's not neutral

9    or generally applicable.  It takes you right back into

10   strict scrutiny.

11          There are a number of authorities even in

12   the Second Circuit.  They are -- they recognize that

13   value judgment analysis as well.  Also, I would like to

14   point your Honor's attention to the fact --

15          THE COURT:  I'm looking at Lewis and I'm

16   trying to find the point where your -- where is the

17   place in Lewis where the court says that offering a

18   medical exemption but not a religious exemption

19   constitutes disfavored treatment of religion?

20          MR. SCHMID:  It's in the analysis of -- if

21   you'll forgive me, just one second, your Honor.  It

22   notes Justice Alito's analysis where it says -- on page

23   455, it says the challenged policies were not facially

24   neutral because it allowed certain other exemptions.

25   And it was a head gear requirement in Lewis, it was a

facial hair requirement in the <u>Lichtman</u> case out of the
Southern District of New York.  They said it's not
neutral because they allowed for secular exemptions and
not religious exemptions.  That's on page 455.

THE COURT:  Yeah, but that's not responsive
to my question.  My question is -- the premise of my
question is that <u>The Fraternal Order of Police</u> case in
the Third Circuit specifically says that if you give a
medical exemption but not a religious exemption, you
are impermissibly -- your distinction is going to be
subject to strict scrutiny.  I think you can agree with
me now that we're trying to look at the language, that
<u>Lewis</u> does not say that.  It doesn't specifically say
that if the sole exemption is medical in nature, then
you have to give a religious exemption also or else
you're going to be subject to strict scrutiny.  Is that
right?

MR. SCHMID:  But it's the same value
judgment analysis, your Honor, which is, if you allow
for a non-religiously-motivated exemption, whether it
be medical or some other secular --

THE COURT:  No, I don't think that's true.
The Supreme Court says in the <u>Diocese</u> case, look, if
you're going to let people go to Costco to shop for
television sets, then you've got to let them go to

1    church, right?  It's disfavoring religion because those

2    things should be treated comparably.  But to my mind,

3    that's a very different thing from saying that you

4    can't go to church but you can go to the hospital for

5    life-saving surgery, right?

6              There's no indication on the face of the

7    _Diocese_ case that the court would have ruled the same

8    way if the only thing singled out for better treatment

9    than religion was necessary medical exemptions.  And

10   I'm asking you if you see any case in the Second

11   Circuit or the Second Circuit that does that, and I

12   think the answer is no.

13             MR. SCHMID:  Except for the fact that _Tanden_

14   -- I understand the comparable groups were different in

15   the --

16             THE COURT:  That's my whole point.

17             MR. SCHMID:  -- (ui) cases versus this.

18             THE COURT:  That's my whole point.

19             MR. SCHMID:  But the analysis is the same.

20   If you have granted exemptions for non-religious

21   activity -- that's what _Tanden_ says.  Whenever you

22   treat any comparable activity more favorably than

23   religious ones --

24             THE COURT:  I understand.  You're just

25   begging the question of what's comparable.  All right,

1  I think you can move on.

2         MR. SCHMID:  Understandable, your Honor, and

3  with the question that you presented to the employer

4  defendants as to what an accommodation could look like,

5  for one, we know they were granting exemptions with

6  just personal protective equipment and masking and

7  testing, and the various other things that 45 or 46

8  other states are doing, along with the Department of

9  Veterans Affairs, which is the same -- which is the

10  largest medical provider in the country.

11         Also as to John Doe 2, if you look at

12  Exhibit F -- forgive me, I believe it's Exhibit E to

13  the complaint.  He knows -- he's an entirely remote

14  employee.  He's a Christian Scientist who objects to

15  vaccinations in general, has no plaintiff -- client-

16  facing interactions, is wholly remote, and is still

17  being told that he cannot under any circumstances

18  continue his job if he refuses to get vaccinated, even

19  though he has been granted an exemption for ten years,

20  and they granted one even in this context but removed

21  it from him.

22         Because, your Honor, we would submit that

23  the law is not neutral and generally applicable and

24  because the governor cannot demonstrate that they're

25  allowing exemptions -- a broad-scale refusal to grant

1  any accommodation is not the least-restrictive means, I

2  would suggest to you that the governor's mandate

3  violates the First Amendment.  The private employers'

4  refusal to even consider much less engage in an

5  interactive process with the plaintiffs to secure and

6  request religious exemptions also violates federal law,

7  and the TRO should issue today.

8          THE COURT:  Okay.  I'm circling back now to

9  the question I asked at the beginning of your rebuttal

10  argument, which I asked ineloquently.  Where in the

11  complaint is the description of John Doe number 2's

12  sincerely held religious beliefs.  I understand

13  starting at paragraph 40 and there's all this stuff

14  about the scriptures and fetal tissue.  But I'm asking

15  where you lay out in the verified complaint the tenets

16  of Christian Science -- Christian Science, I guess.

17          MR. SCHMID:  It's paragraph 67, your Honor,

18  68, and 69.  Plaintiff John Doe is a member of the

19  Church of Christ Scientists, who has a sincerely held

20  religious belief to all vaccines.  Under his religious

21  beliefs, it compels him to believe that healing comes

22  through prayer and that a focus on prayer and Bible-

23  based approaches to healing in all health-related

24  issues should guide his decisions.  Also, the Book of

25  Psalms 103 verse 3 says, God will health all thy

```
 1   diseases.  Those are the bases for his objection to all

 2   vaccines, and the fact that he has been granted all of

 3   the exemptions for his entire career at his defendant

 4   employer, and is fully remote and can have no

 5   interfacing interactions with clients suggests that

 6   there can be accommodations granted to plaintiffs, your

 7   Honor, and the outright refusal to do so is a violation

 8   of federal law.

 9                THE COURT:  Okay, but that -- so to the

10   extent I'm looking for more information about the

11   tenets of -- is it Christian Science?  Is that the way

12   to articulate the name of the religion?

13                MR. SCHMID:  Christian Scientists.  That's

14   what he would refer to them as, your Honor.

15                THE COURT:  I'm talking about the religion,

16   not the person.

17                MR. SCHMID:  It's the Church of Christ

18   Scientists.

19                THE COURT:  Okay.  If I'm looking for more

20   information about the tenets of that church's teachings

21   and specifics on what they require their adherents to

22   forego, it's just 67, 68, and 69?

23                MR. SCHMID:  That outlines his religious

24   objections to it, your Honor, yes.

25                THE COURT:  Okay, all right, I understand.
```

```
 1   Can you just say a little bit more about the time line

 2   here?  The law is effective today and --

 3           MR. SCHMID:  Some of the plaintiffs, your

 4   Honor, have a deadline of today without being fired

 5   because of the way the vaccination process works and

 6   backtracking it to -- because the deadlines of

 7   September 27 and October 7 are for full vaccination.

 8   So it's not go the day before and you satisfy the

 9   requirement.  Many of them, that deadline is today and

10   they face termination from employment today if they're

11   not granted relief, even for a pause, your Honor.  The

12   First Amendment still applies in New York and the fact

13   that they're not even considering much less engaging in

14   any interactive dialogue -- they're going to be fired

15   and it will compound by the day because the deadline is

16   today, and all for the exercise of their sincerely held

17   religious beliefs.  So the time frame is immediate, it

18   is today.

19           THE COURT:  Tell me why again that is.  What

20   happens today?

21           MR. SCHMID:  Because the rule sets out -- if

22   you look at paragraph 5 of the verified complaint, your

23   Honor, it sets forth -- the deadline from the governor

24   for hospital employees is September 27$^{th}$.  For other

25   facilities, senior care and various other ones, it's
```

 1   October 7ᵗʰ.  But because it's full vaccination, which

 2   requires acceptance of either two of the two-dose

 3   vaccine or one of the Johnson & Johnson single dose 14

 4   days prior to the deadline, those deadlines are urgent

 5   and immediate, some of which are today.

 6           We've had clients already that have been

 7   suspended and placed on leave because they have not

 8   accepted the vaccine.  Even the defendants that we have

 9   in this particular context have informed everyone that

10   their deadlines are the 13ᵗʰ.  It's not -- it will not

11   be postponed and all the rest of it.  It's full

12   vaccination by the 27ᵗʰ or the 7ᵗʰ, and we already have

13   people facing termination and suspension today.

14           THE COURT:  Okay.

15           MS. VELASQUEZ:  Your Honor, this is Liza

16   Velasquez from Paul Weiss, if I may.

17           THE COURT:  Please.

18           MS. VELASQUEZ:  That point about sort of the

19   date on which certain plaintiffs might face termination

20   or suspension, again, that does not constitute

21   irreparable harm.  If plaintiffs succeed on any of

22   their claims with respect to the employer defendants,

23   back pay, reinstatement would suffice.  It does not --

24   that does not justify granting a TRO.

25           THE COURT:  Right, but you're not -- this is

```
 1    an interesting question, I think.  You're not arguing
 2    that that law of irreparable harm that you're stating
 3    would benefit the state defendants.  You're saying that
 4    applies only in the employment context.  So to the
 5    extent the plaintiffs might otherwise be entitled to
 6    relief under the First Amendment vis a vis the state,
 7    the state couldn't be heard to make that same argument
 8    that just because people would lose their job because
 9    of the state action, that's not a basis for
10    articulating irreparable harm.
11              MS. VELASQUEZ:  I think, your Honor, for the
12    reasons that you've identified and that we see in the
13    Phillips case and in a case called Central Rabbinical
14    Congregation, which is a Second Circuit case, 763 F.3d
15    from 2014, free exercise protects the performance of
16    acts such as assembling for worship.  It doesn't
17    relieve the individual of an obligation to comply with
18    a valid and neutral law of general applicability on the
19    ground that the law prescribes or proscribes conduct
20    that his religion might prescribe or proscribe.  A law
21    such as this one is subject only to a rational basis
22    test and --
23              THE COURT:  That's the question we've talked
24    about at great length here is --
25              MS. VELASQUEZ:  Yeah, yeah.
```

```
 1            THE COURT:  -- how to you -- I think to

 2   answer this question is to answer the whole TRO

 3   application.  Is this law generally applicable and

 4   neutral on its face as to religion or is there some

 5   basis on which the plaintiffs can argue that religion

 6   is disfavored here relative to the medical exemption

 7   ala The Fraternal Order of Police.  But put that

 8   question aside for the moment.

 9            I'm just talking about the legal principle

10   that you articulated that the loss of one's job is not

11   irreparable harm, at least in the employment context.

12   Let's say there were no private defendants here, (ui)

13   defendants, and we had a state law that just said

14   anybody who wants to work in the national economy -- or

15   a federal law.  Anybody who wants to work in the

16   national economy has to be vaccinated or else they

17   can't be employed.

18            MS. VELASQUEZ:  I think, your Honor --

19            THE COURT:  In a First Amendment claim?

20            MS. VELASQUEZ:  I don't think so.  On this

21   point, we can look to the court's decision in the

22   Houston Methodist case, where that court did deny a TRO

23   earlier this summer.  Look, these plaintiffs are free

24   to exercise their religion.

25            THE COURT:  Sorry, the case you just cited,
```

1    the court denied the TRO --

2            MS. VELASQUEZ:  The TRO, yeah.

3            THE COURT:  -- on the basis that --

4            MS. VELASQUEZ:  It's the Houston Methodist

5    case.

6            THE COURT:  -- on the basis that loss of

7    livelihood is not irreparable harm?

8            MS. VELASQUEZ:  That's right, yes, that's

9    right.  It's not in the First Amendment context but the

10   point I'm making here is that what we're talking about

11   are jobs, not any sort of broader restriction or more

12   fundamental restriction on the ability of plaintiffs to

13   exercise their religion.  We talked about W.D. case and

14   cases like W.D. and Phillips make clear that where a

15   law is of neutral application, is entirely neutral on

16   its face, even if it has the incidental effect of

17   burdening a particular religious practice, there is no

18   First Amendment violation --

19            THE COURT:  Just for my edification --

20            MS. VELASQUEZ:  Yeah.

21            THE COURT:  I realize this may be beyond the

22   scope of your own client's interests.  Why is the law

23   truly of general application and neutral as to

24   religions when it contains one kind of exception,

25   namely the medical exception, but not another, namely

1   the religious exception?  I think that Justice Alito --

2   Judge Alito would have said around the time of The

3   Fraternal Order of Police that that's not neutral as to

4   religion.  I think I do read the Phillips case and the

5   Rockland County case the way you do but what's the

6   reasoning?

7           MS. VELASQUEZ:  Sure, your Honor.

8           THE COURT:  (Ui).

9           MS. VELASQUEZ:  Yeah.  Obviously, the law

10  doesn't target or even mention religion but sort of

11  more fundamentally, every employee who doesn't have a

12  medical exemption is treated the same under this

13  statute.  So the fact that it might have an incidental

14  effect of burdening some employees' religious practices

15  just does not rise to the level of a First Amendment

16  violation.  I think it's also important to remember --

17          MR. SCHMID:  Your Honor --

18          MS. VELASQUEZ:  There's a whole other line

19  of case law here, you know, constitutional case --

20  Supreme Court case law that the state can enact

21  reasonable regulations to protect public health and

22  public safety, and that compulsory immunizations are a

23  permissible exercise of the state's police power.  You

24  have the Jacobson case, the Zuck (ph) case.  Again, the

25  constitutionally protected free exercise of religion

 1   does not excuse an individual from compulsory

 2   immunization.  I'll cite <u>Prince v. Massachusetts</u>, 321

 3   U.S. 158 (1944).

 4           THE COURT:  Yeah.

 5           MS. VELASQUEZ:  The cases on which

 6   plaintiffs are relying, the (ui) case and the <u>Roman</u>

 7   <u>Catholic Diocese</u> case, those cases are very different.

 8   The executive order in that case actually called out

 9   religious institutions and treated religious

10   institutions differently than non-religious

11   institutions in terms of being able to operate.  This

12   law is so far from that and in addition, it presents

13   significant public health and public safety concerns

14   that bring into play all of the other Supreme Court

15   cases like <u>Jacobson</u> and <u>Zuck</u> and <u>Prince</u> that really

16   give the state sort of leeway if you will to enact

17   reasonable regulations to protect the public health.

18           So absent evidence of intentional

19   discrimination, the state's law is subject to a

20   rational basis review and this mandate is rationally

21   related to its public health purpose.  It is intended

22   to protect lives.  Every unvaccinated employee is at

23   risk of putting patients and other employees and the

24   communities in which they live at risk of illness and

25   death.

```
1           THE COURT:  Right, but that's true of people

2     who have medical exemptions, also, and the law doesn't

3     say -- imagine two people articulating what they think

4     are medical exemptions.  One says, I have blood-clot

5     problems and this vaccination could cause me to develop

6     blood clots and die.  And the second person says, I

7     have a fear of needles and really, really don't want to

8     feel the inordinate pain that comes with me getting a

9     shot.  The first person has a better medical exception

10    than the second one, point one, and we don't know

11    exactly what the law here means by medical exceptions.

12    More importantly for this, point two, the person who

13    says, I have the blood-clot problem is still allowed to

14    go to work.

15          MS. VELASQUEZ:  Your Honor, it's precisely

16    that category of people who -- for whom the vaccination

17    -- and it is a small group -- would be actually

18    medically contraindicated.  It is those people who need

19    the protection the most.  It's those people --

20          THE COURT:  I agree.

21          MS. VELASQUEZ:  Yeah.

22          THE COURT:  I agree.

23          MS. VELASQUEZ:  So that's why -- yeah.

24    That's why this law is, you know -- it is rationally

25    related to protecting public health, it's rationally
```

1   related to protecting the public health of individuals

2   for whom, you know, vaccination is not possible because

3   of their preexisting medical conditions.

4            THE COURT:  Right.  So the hospital

5   presumably has patients who can't be vaccinated because

6   of their medical conditions.

7            MS. VELASQUEZ:  That's right.

8            THE COURT:  And yet that would seem all the

9   more reason to tell an employee who can't be vaccinated

10  because of a medical exception, we're sorry, you can't

11  be on the wing at this point because we've got

12  patients --

13           MS. VELASQUEZ:  That's right, your Honor.

14           THE COURT:  -- who haven't been vaccinated

15  and you could communicate this to them.

16           MS. VELASQUEZ:  Yeah, no, that's right, your

17  Honor.  The plaintiffs were incorrect in suggesting

18  that we, you know, sort of -- as I mentioned earlier,

19  we have not yet gotten to that stage of the process

20  where with respect to those employees who do have valid

21  medical exemptions, of figuring out whether and what

22  religious accommodation is possible with respect to the

23  role that they do in their day-to-day jobs.  It may

24  very well be that some of those employees cannot work

25  on the floor and sort of depending on whether or not

```
 1   it's possible to sort of use them in a different role

 2   sort of given their skills, you know, we obviously have

 3   to look at that on a case-by-case basis, so that's

 4   right.

 5            MR. SCHMID:  Your Honor, this proves the

 6   point that we're making on the plaintiffs' side as

 7   well, that they're permitting a process to take place

 8   with the medical exemptions.  Religion they said it

 9   doesn't -- we have explicitly revoked it from the

10   statute providing exemptions, and they are providing a

11   process to other exemptions while saying to the

12   plaintiffs there is no process because there is no

13   exemption.  Plaintiffs aren't asking to wander about

14   the facility at their leisure, they're asking for the

15   same accommodation and the same protective measures

16   that they used for the last 18 months.

17            THE COURT:  What's the accommodation?

18            MR. SCHMID:  And the hospital is saying

19   there isn't a process to even evaluate that.

20            THE COURT:  Understood.

21            MR. FARBER:  Your Honor, this is Seth

22   Farber, if I could jump in on that.

23            THE COURT:  Yeah, let's give the state the

24   last word for a minute here.

25            MR. FARBER:  Sure.  Thank you, your Honor.
```

1 As an initial matter, I should note that the regulation

2 at issue provides for a first dose by September 27th for

3 hospitals, and in nursing homes, a first dose by

4 October 7th.  If institutions for their own reasons move

5 up that date, I can't speak to that, but I can speak to

6 the regulation itself provides for September 27th.

7 That's subsection (c) of the regulation --

8                THE COURT:  (Ui).

9                MR. SCHMID:  Yeah.  Subsection (d), (d)(1)

10 specifically discusses the medical exemption and that

11 provides for a licensed physician or nurse practitioner

12 to certify that the immunization is detrimental to the

13 health of the relevant personnel based on a preexisting

14 health condition.

15                THE COURT:  Right.  So the question that I

16 was asking and that plaintiffs' counsel picked up on

17 is, if it's so critical that we not have conscientious

18 objectors for religious reasons on the wing here

19 because they could infect patients and other people --

20 I understand you might have to give medical exemptions

21 to people who could be seriously physically harmed and

22 maybe have their lives put at risk by the vaccine, but

23 the regulation could also have told those people not to

24 come to work if their unvaccinated presence was so

25 potentially harmful, and the regulation doesn't do

1    that.  The question is, is that at odds with your

2    assertion that to allow unvaccinated people to be

3    performing these jobs is simply too risky to -- is so

4    risky that we have to override sincerely held religious

5    beliefs?

6            MR. FARBER:  Well, it's a rational

7    determination that the medical exemption would be

8    relatively few people.  Obviously, medical exemption

9    plus the religious exemption would obviously be, you

10   know, substantially more people than just the medical

11   exemption.

12           THE COURT:  Why?  How many Christian

13   Scientists do you believe work at --

14           MR. FARBER:  Well, I should -- you know, I

15   should note something, your Honor.  To the extent that

16   the Christian Scientist plaintiff is working remotely,

17   this regulation does not -- does not require the denial

18   of a religious exemption for him --

19           THE COURT:  Why?

20           MR. FARBER:  -- because he's not within the

21   definition of personnel who are -- who "engage in

22   activities such that they were infected with Covid 19,"

23   they could potentially expose other covered personnel,

24   patients, or residents to the disease.  I'm quoting

25   (a)(2) from the definition of the regulation.  So

1  unless that person regularly comes to a hospital and

2  interacts with staff and patients, arguably that person

3  is not subject to this regulation.

4        MR. SCHMID:  And yet, your Honor, he has

5  been denied an exemption and told he will be fired for

6  exactly this policy.

7        THE COURT:  Where is that in the verified

8  complaint?

9        MR. SCHMID:  It's being interpreted this way

10  and people are going to lose their jobs if --

11        THE COURT:  Sorry, sorry.  The question for

12  plaintiffs' counsel -- point to me to the paragraph in

13  the verified complaint that says what you just said,

14  that if he doesn't get vaccinated, he will get fired,

15  even though he is remote at this time.

16        MR. SCHMID:  If your Honor will look at

17  Exhibit E to the verified complaint, there is -- it is

18  an email from John Doe 2 to his employer stating, I was

19  given an exemption and they took it away.  What does

20  this do to fully remote people?  The response to him is

21  that there's no more religious exemptions.  You have to

22  be -- and it doesn't matter if they're fully remote,

23  and that he has been informed by his employer that a

24  failure to be vaccinated will result in his being

25  placed on leave and then if he doesn't comply,

```
 1   ultimately being fired.
 2              THE COURT:  Sorry.  So we are looking at
 3   Exhibit E to the complaint.  Hold on a second.  Yeah,
 4   so that's -- you're asking them for me to enjoin a
 5   state law that does not pick up your John Doe number 2
 6   client by its terms because his employer appears to be
 7   misinterpreting the law.
 8              MR. SCHMID:  No.  We're asking you to enjoin
 9   a state law that precludes religious exemptions and is
10   therefore being used to deny religious exemptions under
11   a myriad of different things.  Paragraph 82 also
12   discusses John Doe 2's -- the point being that the
13   state has put forward a non-neutral and non-generally-
14   applicable regulation that is being used to deny
15   religious exemptions to even fully remote people
16   (ui) --
17              THE COURT:  Who is --
18              MR. SCHMID:  -- while allowing others --
19              THE COURT:  Who is John Doe number 2's
20   employer?
21              MR. SCHMID:  Pardon?  I'm sorry, your Honor?
22              THE COURT:  Who is John Doe number 2's
23   employer?
24              MR. SCHMID:  It is New York Presbyterian, I
25   believe, your Honor.
```

```
 1            MS. VELASQUEZ:  It's New York Presbyterian,
 2   your Honor.  Obviously, we have no idea who this person
 3   is.  They've proceeded by pseudonym so we have no way
 4   of assessing whether or not the fact that -- he claims
 5   to be 100% fully remote.  Does that mean he's
 6   performing the essential functions of his job?  Is that
 7   a temporary accommodation such that, you know, he's
 8   temporarily not performing all of the essential
 9   functions of his job?  We have no idea.  I mean,
10   obviously --
11            THE COURT:  Okay, but you agree with the
12   state's reading of paragraph (a)(2) of the amended
13   regulation that says it only applies to people who
14   engage in activities such that if they were infected,
15   they could potentially expose other covered personnel,
16   patients, or residents to the disease.  And if this
17   person is working remotely, it could be --
18            MS. VELASQUEZ:  Could be.
19            THE COURT:  -- that the regulation doesn't
20   pick them up.
21            MS. VELASQUEZ:  It could be.  The definition
22   is quite broad so, you know, it obviously would depend
23   on whether or not this person ever needed to interact
24   with other personnel, other staff, any clients.
25   Obviously, we see the definition of covered personnel
```

1    under the law and, you know, we'll proceed accordingly.

2             MR. SCHMID:  Your Honor, Seth Farber for one

3    second, if I can jump back in.  We note that

4    vaccination requirements protect those relatively few

5    people with medical exemptions as well as vulnerable

6    patients, so that's the basis of our vaccination

7    requirement.  Thank you.

8             THE COURT:  Thank you.  I think the only

9    place where this case -- well, the place where this

10   case gets most difficult, it seems to me, is with

11   respect to somebody who is a member of the Church of

12   Christ Scientist and has for their entire life declined

13   any vaccine, not only vaccines derived from fetal

14   tissue research but anything, and if we only have one

15   person that we're aware of who's in that category and

16   that person is in right now a fully remote status where

17   they're unlikely to -- unlikely to infect anybody.  It

18   would be of interest to know, if it was possible to

19   know this in the next 18 hours, that New York Hospital

20   is not inclined to terminate the person's employment on

21   the basis of this regulation.  I realize that that may

22   be too much to ask because it's specific as to one

23   person and you don't even know that person and you

24   don't even know that person's identity, but I just

25   leave this open-ended opportunity --

1          MR. SCHMID:  Your Honor, if I may --

2          THE COURT:  -- for New York Presbyterian's

3  plaintiffs, that if there's anything else you want to

4  say on the subject, it would be of interest to hear it.

5          MR. SCHMID:  Yes, your Honor, the --

6          THE COURT:  That was a question to Ms.

7  Velasquez.

8          MS. VELASQUEZ:  Your Honor, I think it would

9  be helpful for the plaintiffs to let us know who this

10  plaintiff is so that we can take a look at the facts.

11          THE COURT:  I think that sounds like the

12  right answer.

13          MS. VELASQUEZ:  Yeah.

14          MR. SCHMID:  Your Honor, we would request a

15  protective order for that.  It was coming in our motion

16  to proceed under a pseudonym as well to protect the

17  identities of our various plaintiffs.  I also would be

18  remiss not to point out, your Honor, that the other

19  plaintiffs have articulated sincere beliefs to the

20  vaccination requirement that aren't strictly limited to

21  a Christian Scientist.

22          John Doe 1 in particular would like to grant

23  religious exemptions and allow people to follow their

24  religious beliefs, which is a belief he has held his

25  entire life as well.  No one could have had a life-long

```
1   objection to a Covid 19 vaccination when the thing
2   itself has not existed but for a couple of months.  So
3   the sincerity of the other plaintiffs' religious
4   beliefs --
5               THE COURT:  I think the mumps, measles, and
6   Rubella vaccine is also --
7               MS. VELASQUEZ:  That's right.
8               THE COURT:  -- derived from fetal issue
9   research, and I don't read any of your non-Christian-
10  Scientist plaintiffs to say in the verified complaint
11  that they've refused that, have they?
12              MR. SCHMID:  For one, your Honor, those are
13  often administered to children when they don't have a
14  choice.  Two, this line of questioning gets into
15  whether a person's religious belief is logical or --
16              THE COURT:  But your clients -- they didn't
17  have a choice as to what happened to them as children
18  but they have a choice as to what they do for their own
19  children.
20              MR. SCHMID:  And many of them have objected
21  to the flu vaccine, have had a religious exemption --
22              THE COURT:  Why to the flu vaccine?  Is the
23  flu vaccine derived from fetal tissue research?
24              MR. SCHMID:  Many of them have had religious
25  exemptions to vaccinations.  Some of them believe in
```

```
1   natural healing, some of them believe prayer -- healing
2   comes through prayer.  There are a number of
3   allegations outlined in the verified complaint between
4   paragraphs 44 and --
5            THE COURT:  Okay, let me sum up by going
6   through --
7            MR. FARBER:  Your Honor --
8            THE COURT:  I'm sorry, we've got to cut this
9   off at some point and I think that point has been
10  reached.  This case is not my case.  It belongs to
11  Judge Donnelly.  I'm here as the miscellaneous duty
12  judge because she is otherwise engaged.  I am going to
13  be ruling on the temporary restraining order
14  application alone and not the preliminary injunction
15  request.  It may be that to the extent more evidence
16  could help the plaintiffs here, they will have an
17  opportunity to put that evidence in.  But at the
18  moment, we find ourselves proceeding on the record as
19  it exists in the verified complaint full stop.
20           I understand the time pressures here and I
21  will endeavor to put an order up on ECF as quickly as I
22  possibly can.  Thank you, everyone, for the
23  comprehensive arguments this afternoon and stay well.
24           MR. SCHMID:  Thank you, your Honor.
25           MR. FARBER:  Thank you, your Honor.
```



1          MS. VELASQUEZ:  Thank you, your Honor.

2                    * * * * * * *

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

ELIZABETH BARRON                    September 15, 2021

1

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------x
JOHN DOES 1–2, JANE DOES 1–3,
JACK DOES 1–1750, JOAN DOES 1–750,

                                  Case No. 21-cv-5067 AMD-TAM

                Plaintiffs,

        v.

KATHY HOCHUL, in her official capacity as      **STATE DEFENDANTS'**
Governor of the State of New York,          **NOTICE OF MOTION TO**
HOWARD A. ZUCKER, in his official capacity  **DISMISS THE COMPLAINT**
as Commissioner of the New York State
Department of Health, TRINITY HEALTH,
INC., NEW YORK-PRESBYTERIAN
HEALTHCARE SYSTEM, INC.,
WESTCHESTER MEDICAL CENTER
ADVANCED PHYSICIAN SERVICES, P.C.,

              Defendants.
-------------------------------------------------------------------x

     **PLEASE TAKE NOTICE** that, upon the State Defendants' Memorandum of Law in

Support of Their Motion to Dismiss the Complaint, dated February 17, 2022, and all pleadings

and proceedings had heretofore in this case, defendants KATHY HOCHUL, in her official

capacity as Governor of the State of New York, and HOWARD A. ZUCKER[1], in his official

capacity as Commissioner of the New York State Department of Health ("DOH"), together "the

State Defendants," by their attorney, LETITIA JAMES, Attorney General of the State of New

York, shall move this Court before the Honorable Ann M. Donnelly, United States District

Judge, at the United States Courthouse for the Eastern District of New York located at 225

Cadman Plaza East, Brooklyn, New York 11201, at a date and time to be determined by the

Court, for an Order and Judgment pursuant to Rule 12(b)(6) of the Federal Rules of Civil

---

[1] Mary T. Bassett, M.D., M.P.H., was appointed Acting DOH Commissioner on December 1, 2021 and is
automatically substituted for former DOH Commissioner Zucker pursuant to Federal Rule of Civil Procedure 25(d).

Procedure dismissing the complaint upon the grounds that the Court fails to state a claim upon which relief can be granted, and for such further relief as is just and proper.

**PLEASE TAKE FURTHER NOTICE** that, as previously ordered by the Court, Plaintiffs shall serve and file any opposition papers on or before March 21, 2022, and the State Defendants shall serve and file any reply papers on or before April 4, 2022.

Dated:  New York, New York
       February 17, 2022

LETITIA JAMES
Attorney General
State of New York
**Attorney for the State Defendants**
By:

/s/ _Seth J. Farber_
Seth J. Farber
Assistant Attorney General
28 Liberty Street
New York, New York 10005
Tel. No.: (212) 416-8029
Email: Seth.Farber@ag.ny.gov

TO:     All Counsel of Record (via ECF)

2

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOE 1, JANE DOES 1-3, JACK DOES 1-1750, JOAN DOES 1-750,<br><br>              Plaintiffs,<br><br>v.<br><br>KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C.<br><br>              Defendants. | Case No. 1:21-cv-05067-AMD-TAM<br><br>**NOTICE OF MOTION TO DISMISS** |

**PLEASE TAKE NOTICE** that upon the accompanying Declaration of Jacqueline Phipps Polito, Esq. dated February 17, 2022, the Declaration of Kathleen Hoffman dated February 15, 2022, and Memorandum of Law in Support of Defendant's Motion to Dismiss the Complaint, and all previous papers and proceedings in this action, Defendant Trinity Health Corporation (incorrectly captioned as Trinity Health, Inc.), by and through their attorneys, Littler Mendelson, P.C., will move this Court before the Honorable Ann M. Donnelly, at the United States District Courthouse, Eastern District of New York, 225 Cadman Plaza East, Brooklyn, New York 11201, on a date and time to be designated by the Court, for an Order, pursuant to Rule 12(b)(3) and (b)(6) of the Federal Rules of Civil Procedure, dismissing the Complaint in its entirety against Defendant Trinity Health Corporation (incorrectly captioned as Trinity Health, Inc.), along with such other and further relief as the Court may deem just and proper.

JA 217

PLEASE TAKE FURTHER NOTICE that pursuant to the briefing schedule as set by the Court on January 20, 2022, any papers in opposition to this motion are to be served on or before March 21, 2022.  Reply affidavits and memoranda of law shall be served on or before April 4, 2022.

PLEASE TAKE FURTHER NOTICE that in the event of the denial of this motion to dismiss, in whole or in part, Defendant Trinity Health Corporation (incorrectly captioned as Trinity Health, Inc.) respectfully requests thirty days from the docketing of the order in which to answer the Complaint.

Date:   February 17, 2022
        Fairport, New York

/s/ Jacqueline Phipps Polito
Jacqueline Phipps Polito
Erin M. Train (*pro hac vice*)
LITTLER MENDELSON, P.C.
375 Woodcliff Drive, Suite 2D
Fairport, NY  14450
jpolito@littler.com
etrain@littler.com
Tel. 585.203.3400

Attorneys for Defendant
  TRINITY HEALTH, INC.

To:   All counsel of record (via ECF)

4826-6885-0371

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| JOHN DOES 1–2, JANE DOES 1–3, JACK DOES 1–750, JOAN DOES 1–750,<br><br>            Plaintiffs,<br><br>    vs.<br><br>KATHY HOCHUL, in her official capacity as Governor of the State of New York, HOWARD A. ZUCKER, in his official capacity as Commissioner of the New York State Department of Health, TRINITY HEALTH, INC., NEW YORK-PRESBYTERIAN HEALTHCARE SYSTEM, INC., WESTCHESTER MEDICAL CENTER ADVANCED PHYSICIAN SERVICES, P.C.,<br><br>            Defendants. | Case No. 1:21-cv-05067 |

## NOTICE OF MOTION TO DISMISS

PLEASE TAKE NOTICE THAT, Defendant New York-Presbyterian Healthcare System, Inc. ("NYP"), by its counsel, Paul, Weiss, Rifkind, Wharton & Garrison LLP, hereby moves pursuant to Fed. R. Civ. P. 12(b)(6), upon the accompanying Memorandum of Law, to dismiss with prejudice the Second, Fourth, and Fifth Causes of Action asserted in plaintiffs' September 10, 2021 Complaint to the extent those claims are asserted against NYP.

Dated:  February 17, 2022

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

By: */s/ Liza Velazquez*

Bruce Birenboim
Michael E. Gertzman
Liza M. Velazquez
Gregory F. Laufer
Jonathan Hurwitz

JA 219

Emily A. Vance
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
bbirenboim@paulweiss.com
mgertzman@paulweiss.com
lvelazquez@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com
evance@paulweiss.com

*Counsel for New York-Presbyterian
Healthcare System, Inc.*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                              :

JOHN DOES 1–2, JANE DOES 1–3, JACK DOES   :
1–750, JOAN DOES 1–750,
                              :

                 Plaintiffs,    :

    -against-                     :

KATHY HOCHUL, in her official capacity as   :
Governor of the State of New York, HOWARD A.
ZUCKER, in his official capacity as Commissioner  :
of the New York State Department of Health,
TRINITY HEALTH, INC., NEW YORK-    :
PRESBYTERIAN HEALTHCARE SYSTEM, INC.,
WESTCHESTER MEDICAL CENTER    :
ADVANCED PHYSICIAN SERVICES, P.C.,
                              :

               Defendants.   :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

       **NOTICE OF MOTION**

       Docket No. 21-CV-5067-AMD-TAM

      **PLEASE TAKE NOTICE** that, upon the Declaration of Marc A. Sittenreich, dated

February 17, 2022, and the Exhibit annexed thereto; the accompanying Memorandum of Law,

dated February 17, 2022; and upon all the pleadings and proceedings heretofore had herein,

Defendant Westchester Medical Center Advanced Physician Services, P.C. ("APS") will move

this Court, before the Honorable Ann M. Donnelly, United States District Judge, of the United

Stated District Court, Eastern District of New York, located at 225 Cadman Plaza East,

Brooklyn, New York, 11201, on the 4th day of April, 2022, or as soon thereafter as counsel may

be heard, for an Order, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure,

dismissing the Complaint against APS in its entirety, with prejudice, and granting such other and

further relief to APS as the Court deems, just, equitable, or proper.

JA 221

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Court's January 20, 2022 Order, opposition papers must be served on or before March 21, 2022, and reply papers, if any, must be served on or before April 4, 2022.

Dated: Great Neck, New York
February 17, 2022

GARFUNKEL WILD, P.C.
*Attorneys for Defendant Westchester Medical*
*Center Advanced Physician Services, P.C.*


By:  _____/s/ Marc A. Sittenreich_____
Michael J. Keane
Marc A. Sittenreich
Anthony Prinzivalli
111 Great Neck Road
Great Neck, New York 11021
(516) 393-2200

TO:  LIBERTY COUNSEL
*Attorneys for Plaintiffs*
P.O. Box 540774
Orlando, Florida 32854

NEW YORK STATE OFFICE OF
  THE ATTORNEY GENERAL
*Attorneys for Defendants Kathy Hochul*
  *and Howard A. Zucker*
120 Broadway, 24th Floor
New York, New York 10271

PAUL, WEISS, RIFKIND, WHARTON
  & GARRISON LLP
*Attorneys for Defendant New York-Presbyterian*
  *Healthcare System, Inc.*
1285 Avenue of the Americas
New York, New York 10019

LITTLER MENDELSON P.C.
*Attorneys for Defendant Trinity Health, Inc.*
375 Woodcliff Drive, Suite 2D
Fairport, New York 14450

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

-----------------------------------------------------------X
JOHN DOES 1–2, JANE DOES 1–3, JACK
DOES 1–750, and JOAN DOES 1–750,

                        Plaintiffs,

          -against-

KATHY HOCHUL, in her official
capacity as Governor of the State of New
York; HOWARD A. ZUCKER, in his
official capacity as Commissioner of the
New York State Department of Health;
TRINITY HEALTH, INC.; NEW YORK-
PRESBYTERIAN HEALTHCARE
SYSTEM, INC.; and WESTCHESTER
MEDICAL CENTER ADVANCED
PHYSICIAN SERVICES, P.C., as assignee
of WMC Health,

                        Defendants.
-----------------------------------------------------------X

**MEMORANDUM AND ORDER**
21-CV-5067 (AMD) (TAM)

**TARYN A. MERKL**, United States Magistrate Judge:

On September 10, 2021, New York healthcare professionals who claim sincerely

held religious objections to receiving the COVID-19 vaccine ("Plaintiffs") initiated this

action to challenge aspects of the state's vaccine mandate. (*See* Complaint ("Compl."),

ECF No. 1.) The complaint names as Defendants New York Governor Kathy Hochul

and New York Department of Health Commissioner Howard A. Zucker, in their official

capacities, as well as Trinity Health, Inc., New York-Presbyterian Healthcare System,

Inc., and Westchester Medical Center Advanced Physician Services, P.C., as assignee of

WMC Health ("Defendants"). (*See id.*) Plaintiffs are seeking, among other things, a

religious exemption from New York State's COVID-19 vaccine mandate. (*See generally*

*id.*; *see also* Pls.' Mot. for TRO & Prelim. Inj., ECF No. 2.)

Currently before this Court is Plaintiffs' motion for a protective order and to proceed using pseudonyms, which the Honorable Ann M. Donnelly referred to the undersigned Magistrate Judge. (Pls.' Mot. for Protective Order ("Pls.' Mot."), ECF No. 41; Oct. 4, 2021 ECF Order Referring Mot.) For the reasons stated herein, the Court grants Plaintiffs' motion, in part.[1]

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The Court assumes general familiarity with the substance and history of the case and includes only the background relevant to the instant motion. As noted above, Plaintiffs are a group of New York healthcare workers who seek religious exemptions from the COVID-19 vaccine mandate enacted by Governor Hochul and implemented by Commissioner Zucker[2] (the "New York Defendants"). (*See* Compl., ECF No. 1, ¶¶ 10–22, 39–41.) Defendants Trinity Health, Inc. ("Trinity"), New York-Presbyterian Healthcare System, Inc. ("New York-Presbyterian"), and Westchester Medical Center Advanced Physician Services, P.C. ("Advanced Physician Services"), allegedly employ a number of Plaintiffs in this case. (*Id.* ¶¶ 11–20, 23–25.)[3]

---

[1] A motion for a protective order and to proceed under a pseudonym is a non-dispositive pre-trial motion within a magistrate judge's jurisdiction. *See* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); E.D.N.Y. Local R. 72.2; *cf. Doe v. Cornell Univ.*, No. 19-CV-1189 (MAD) (ML), 2021 WL 6128807, at *1 (N.D.N.Y. Sept. 22, 2021).

[2] The Court notes that Mary T. Bassett is currently the New York Department of Health Commissioner. *See* https://www.health.ny.gov/commissioner/ (last visited Mar. 18, 2022).

[3] Plaintiffs' complaint alleges that up to 250 Jack and Joan Does work for each of the three respective private employer Defendants — potentially totaling 1,500 additional "Doe" Plaintiffs. (*See* Compl., ECF No. 1, ¶¶ 15–20.) However, as Defendant New York-Presbyterian observes, the complaint "does not make clear whether any of these hundreds of purported [] Does are real persons represented by plaintiffs' counsel, or, instead, whether these allegations simply reflect an effort by plaintiffs to make it appear that their objections to vaccination are shared by large numbers of other [] employees." (New York-Presbyterian Mem., ECF No 68, at 3.) The Court notes that Plaintiffs' declaration indicates that counsel spoke "personally" with John Does 1–2 and Jane Does 1–3, i.e., five Plaintiffs, in anticipation of filing the instant motion. (*See* Declaration of Daniel J. Schmid ("Schmid Decl."), ECF No. 41-1, ¶ 2.)

Plaintiffs initiated this action by moving for a temporary restraining order ("TRO") and a preliminary injunction. (*See generally id.*; Pls.' Mot. for TRO & Prelim. Inj., ECF No. 2.) Specifically, Plaintiffs are challenging the constitutionality and enforcement of N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(c) (2021), the emergency regulation requiring most healthcare workers to be fully vaccinated against COVID-19. (*See* Compl., ECF No. 1, ¶¶ 119–90; Pls.' Mot. for TRO & Prelim. Inj., ECF No. 2, at 5–15.)

On September 14, 2021, the Honorable Eric R. Komitee, sitting as the miscellaneous duty judge, denied Plaintiffs' motion for a TRO as moot in light of the statewide TRO issued the same day by the Honorable David N. Hurd in the Northern District of New York, in *Dr. A. v. Hochul*, 21-CV-1009, 2021 WL 4189533, at *1 (N.D.N.Y. Sept. 14, 2021). (*See* Sept. 14, 2021 Order, ECF No. 35.) Judge Komitee instructed Plaintiffs that they may apply to the assigned District Judge, Judge Donnelly, for a preliminary injunction, and that "[i]f Plaintiffs wish to proceed anonymously with this action, they must file (under seal) a motion that states the reasons why the Court should permit them to do so." (*Id.* at 3.)[4]

---

[4] On September 21, 2021, Plaintiffs proceeded with a motion for a preliminary injunction. (*See* Mot. to Expedite, ECF No. 37.) However, on October 18, 2021, Judge Donnelly held Plaintiffs' motion in abeyance pending an appeal to the Second Circuit of the preliminary injunction entered by Judge Hurd in *Dr. A v. Hochul*, No. 21-CV-1009, 2021 WL 4734404, at *1 (N.D.N.Y. Oct. 12, 2021), *vacated and remanded sub nom. We the Patriots USA, Inc. v. Hochul*, No. 21-2179, 2021 WL 5103443 (2d Cir. Oct. 29, 2021). (*See* Oct. 18, 2021 ECF Scheduling Order (citing *We The Patriots v. Hochul*, No. 21-2179 (2d Cir. Oct. 13, 2021)).) Judge Donnelly also held a pre-motion conference on November 3, 2021, regarding Defendants' anticipated motions to dismiss. (Nov. 3, 2021 ECF Minute Entry and Order.) On December 3, 2021, in anticipation of the Supreme Court's review of two emergency applications for writs of injunction following the Second Circuit's ruling in *We the Patriots* and *Dr. A*, Judge Donnelly directed Defendants to file their respective motions to dismiss within forty-five days of the Supreme Court's decision. (*See* Dec. 3, 2021 ECF Scheduling Order; Dec. 3, 2021 Joint Status Report, ECF No. 74.) On February 17, 2022, following the Supreme Court's denial of the two applications, Defendants filed their respective motions to dismiss, which are pending before the District Court. (*See* Jan. 20, 2022 ECF Order; Mots. to Dismiss, ECF Nos. 81, 83, 84, 87.) *See also Dr. A v. Hochul*, 142 S. Ct. 552 (2021); *We The Patriots USA Inc. v. Hochul*, 142 S. Ct. 734 (2021).

Plaintiffs filed their motion for a protective order and to proceed under pseudonyms on October 1, 2021, which Judge Donnelly thereafter referred to the undersigned Magistrate Judge. (*See* Pls.' Mot., ECF No. 41; Oct. 4, 2021 ECF Order Referring Mot.) Defendants filed their respective responses to Plaintiffs' motion on November 2, 2021, and Plaintiffs filed their reply in support on November 22, 2022. (*See* Trinity Resp., ECF No. 67; New York-Presbyterian Mem., ECF No 68; Advanced Physician Services Resp., ECF No. 69; New York Defs.' Resp., ECF No. 70; Pls.' Reply, ECF No. 72.)[5] On December 14, 2021, this Court held a telephonic motion hearing and heard argument on Plaintiffs' motion. (Dec. 14, 2021 ECF Minute Entry and Order; Transcript of December 14, 2021 Hearing ("Tr."), ECF No. 78.)

After careful consideration of the parties' submissions and the record before the Court, and for the reasons set forth herein, the Court grants Plaintiffs' motion for a protective order and to proceed using pseudonyms, in part, pursuant to the directives below.

## DISCUSSION

### I. Legal Standards

Federal Rule of Civil Procedure 10(a) requires that the title of a complaint name all the parties to the action. Fed. R. Civ. P. 10(a). This requirement "serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 188–89 (2d Cir. 2008). However, "in limited circumstances, courts may grant an exception to this rule and allow a plaintiff to proceed under a pseudonym when the plaintiff's 'interest in

---

[5] In addition, the Court notes that the parties have filed several notices of supplemental authority related to Plaintiffs' motion for a protective order and to proceed under pseudonyms, which that Court has taken under advisement. (*See* ECF Nos. 73, 76, 79, 88, 89.)

anonymity' outweighs 'both the public interest in disclosure and any prejudice to the defendant.'" *Doe v. City Univ. of New York*, No. 21-CV-9544 (NRB), 2021 WL 5644642, at *2 (S.D.N.Y. Dec. 1, 2021) (quoting *Sealed Plaintiff*, 537 F.3d at 189). The Second Circuit has established a non-exhaustive list of ten factors for courts to consider when balancing these interests. These factors are:

> (1) whether the litigation involves matters that are highly sensitive and of a personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the party seeking to proceed anonymously or even more critically, to innocent non-parties; (3) whether identification presents other harms and the likely severity of those harms, including whether the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity; (4) whether the plaintiff is particularly vulnerable to the possible harms of disclosure, particularly in light of his age; (5) whether the suit is challenging the actions of the government or that of private parties; (6) whether the defendant is prejudiced by allowing the plaintiff to press his claims anonymously, whether the nature of that prejudice (if any) differs at any particular stage of the litigation, and whether any prejudice can be mitigated by the district court; (7) whether the plaintiff's identity has thus far been kept confidential; (8) whether the public's interest in the litigation is furthered by requiring the plaintiff to disclose his identity; (9) whether, because of the purely legal nature of the issues presented or otherwise, there is an atypically weak public interest in knowing the litigants' identities; and (10) whether there are any alternative mechanisms for protecting the confidentiality of the plaintiff.

*Sealed Plaintiff*, 537 F.3d at 190 (quotation marks, citations, and alterations omitted). Courts are not required to "list each of the factors or use any particular formulation as long as it is clear that the court balanced the interests at stake in reaching its conclusion." *Sealed Plaintiff*, 537 F.3d at 191 n.4.

## II.    Analysis

Plaintiffs' motion to proceed anonymously in this case presents a close call. Plaintiffs argue that the "principles of open proceedings and judicial access" are outweighed here by Plaintiffs' potential exposure to "public vitriol, shaming and ostracization," as well as the risks to their livelihood, if they were to personally reveal their religiously-guided vaccination choices. (Pls.' Reply, ECF No. 72, at 2; *see also* Pls.'

Mot., ECF No. 41, at 4–8, 9–14.) Plaintiffs also contend that this case involves "a purely legal question that does not depend at all on the identity of the Plaintiffs," and that proceeding under pseudonyms would not prejudice Defendants, particularly in light of Plaintiffs' proposed protective order. (Pls.' Mot., ECF No. 41, at 9; Pls.' Proposed Protective Order, ECF No. 41-2; *see also* Pls.' Mot., ECF No. 41, at 15–16; Pls.' Reply, ECF No. 72, at 13–17; Tr., ECF No. 78, at 12:22–25, 39:7–40:18.)

As an initial matter, the Court notes that the New York Defendants and Defendant Advanced Physician Services do not oppose Plaintiffs' motion to proceed using pseudonyms at this juncture, assuming the parties can agree on a satisfactory protective order. (*See generally* Advanced Physician Services Resp., ECF No. 69; New York Defs.' Resp., ECF No. 70; *see also* Tr., ECF No. 78, at 22:17–20, 23:7–21.) Defendants Trinity and New York-Presbyterian, on the other hand, argue that Plaintiffs have failed to meet their burden under *Sealed Plaintiff* to warrant an exception to the general rule of disclosure.[6] (*See generally* Trinity Resp., ECF No. 67; New York-Presbyterian Mem., ECF No 68; *see also, e.g.*, Tr., ECF No. 78, at 30:8–14 ("We think that Plaintiffs have to come forward with a particularized risk of harm to them and sufficient specificity showing the incremental injury that would result to them from disclosure of their identities. We do not think it's enough to point to news stories, MSNBC programs that are months old at this point, that really have no, you know, direct connection to these Plaintiffs.").)

Although the Court agrees with Defendants that the potential physical and mental harms identified by Plaintiffs could be more particularized, on balance, Plaintiffs John Does 1–2 and Jane Does 1–3 have established a sufficient interest in anonymity at this phase of the litigation to overcome the public's interest in disclosure and any

---

[6] Unless otherwise noted, the Court's references to "Defendants" hereinafter refer to Defendants Trinity and New York-Presbyterian.

prejudice to Defendants. The same cannot be said for the nominal Plaintiffs, Jack Does 1–750 and Joan Does 1–750, about whom the record is less developed with respect to the need for anonymity. Accordingly, as set forth below, the Court (1) grants Plaintiffs' motion to proceed under pseudonyms for John Does 1–2 and Jane Does 1–3; (2) respectfully directs the parties to meet and confer and to submit a proposed protective order to the Court on or before April 1, 2022, as well as a letter indicating how many additional "Doe" Plaintiffs will proceed under a pseudonym, if any, and providing supplemental information and/or authority as to why these additional Plaintiffs should be allowed to proceed anonymously; and (3) reserves the authority to reconsider Plaintiffs' anonymity should the case proceed past the motion to dismiss stage. *See, e.g.*, *Does 1-6 v. Mills*, No. 21-CV-242 (JDL), 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021) (permitting plaintiffs to proceed under pseudonym while reserving authority to "revisit this issue" at a later stage in the litigation).

## *Sealed Plaintiff* Factors

As the Second Circuit has explained, the *Sealed Plaintiff* factors are designed to ensure that courts "balance plaintiff's interest in proceeding anonymously against the interests of defendants and the public." *Sealed Plaintiff*, 537 F.3d at 191; *see also id.* at 191 n.4. Balancing these factors here, the Court finds that Plaintiffs John Does 1–2 and Jane Does 1–3 have justified proceeding anonymously.

### A. Nature of the Litigation

The first *Sealed Plaintiff* factor deals with whether the litigation implicates highly sensitive or personal matters. *Sealed Plaintiff*, 537 F.3d at 190. Plaintiffs argue that this lawsuit satisfies this factor because the nature of the litigation involves personal medical decisions regarding vaccinations, as well as sincerely held, "quintessentially private" religious beliefs. (*See* Pls.' Mot., ECF No. 41, at 4–7; Pls.' Reply, ECF No. 72, at

5–7; Tr., ECF No. 78, at 5:14–19.) In response, Defendants argue that "even if [P]laintiffs' vaccination status constitutes medical information, it is not sufficiently sensitive to justify proceeding under [a] pseudonym," and that "[P]laintiffs' alleged religious objections to vaccination against COVID-19 do not qualify as 'matters of the utmost intimacy' that may overcome the presumption against anonymity." (New York-Presbyterian Mem., ECF No. 68, at 6, 8 (quoting *Guerrilla Girls, Inc. v. Kaz*, 224 F.R.D. 571, 573 (S.D.N.Y. 2004)); *see also* Trinity Resp., ECF No. 67, at 9 ("[T]he allegations contained within Plaintiffs' Complaint are not so sensitive and personal as to justify employing the unusual procedure of a pseudonymous suit[.]").)

By comparison, "[c]ourts have found that cases relating to birth control, abortion, homosexuality, welfare rights of illegitimate children, and abandoned families are highly sensitive and of a personal nature." *Doe v. Skyline Automobiles Inc.*, 375 F. Supp. 3d 401, 405 (S.D.N.Y. 2019). With respect to whether religious objections to the COVID-19 vaccine qualify as highly personal or sensitive matters, district courts across the country have reached different conclusions. For example, in *Navy Seal 1 v. Austin*, the court concluded that "[a]lthough the defendants argue that the plaintiffs' vaccination status is not a matter of utmost intimacy, this action encompasses substantially more intimate detail than whether a person chose to accept a vaccine." No. 21-CV-2429 (SDM) (TGW), 2022 WL 520829, at *1 (M.D. Fla. Feb. 18, 2022) (quotation marks omitted); *see also Air Force Officer v. Austin*, No. 5:22-CV-0009 (TES), 2022 WL 468030, at *2 (M.D. Ga. Feb. 15, 2022) ("[T]he Court has previously recognized that religion is perhaps a quintessentially private matter and in doing so, it respected the fact that a plaintiff should be allowed to proceed anonymously in a case against the government if religion is on the table." (quotation marks and alterations omitted)).

In contrast, in *Doe v. City Univ. of New York*, the Honorable Naomi Reice
Buchwald found that "relying on a medical issue as a basis for anonymity does not
withstand analysis" where "there is no independent medical issue separate and apart
from plaintiff's refusal to receive a COVID-19 vaccine on religious grounds." 2021 WL
5644642, at *2; *see also Does 1 through 11 v. Bd. of Regents of Univ. of Colorado*, No. 21-CV-
2637 (RM) (KMT), 2022 WL 43897, at *3 (D. Colo. Jan. 5, 2022) (referred to herein as
"*Univ. of Colorado*") ("[S]tanding alone, a medical condition that is described as
unvaccinated against COVID-19 is not so highly sensitive and personal in nature as to
overcome the presumption of openness in judicial proceedings."); *Oklahoma v. Biden*,
No. 21-CV-1136-F, 2022 WL 356736, at *2 (W.D. Okla. Feb. 2, 2022) ("A decision to be
vaccinated, or not, against COVID-19 is certainly a personal matter, but it is not
intrinsically sensitive, let alone highly sensitive.").

As to the medical aspect of Plaintiffs' argument, the Court does not equate the
decision to receive the COVID-19 vaccine (or not) with other medical treatments,
conditions, or immutable characteristics that one may never have to disclose to an
employer. (*See* Tr., ECF No. 78, at 8:8–17.) Nevertheless, the Court recognizes the unique
sensitivities that exist within the current political climate and social context, particularly
as to Plaintiffs' religious convictions, and finds that this factor tips slightly in Plaintiffs'
favor. *See City Univ. of New York*, 2021 WL 5644642, at *3 ("[T]he fact that plaintiff has
put his religious beliefs at issue in this case means this factor weighs in favor of plaintiff
proceeding anonymously."). *Cf. Univ. of Colorado*, 2022 WL 43897, at *3 (discussing the
political climate and public attitudes concerning people who refuse the COVID-19
vaccine). In any event, "the first factor itself is not dispositive, and the other factors
must be taken into consideration and analyzed in comparison to the public's interest

and the interests of the opposing parties." *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 406.

## B. Risks of Identification

The next three *Sealed Plaintiff* factors task the Court with assessing the potential risks associated with identifying the anonymous party, including the potential for retaliatory physical or mental harm, and the severity of such harms. *Sealed Plaintiff*, 537 F.3d at 190.[7]

Here, Plaintiffs argue that "there is no question that Plaintiffs face the threat of retaliation from the community and their employers." (Pls.' Mot., ECF No. 41, at 10.) As evidence, Plaintiffs point to the harsh public sentiment displayed in response to those who oppose receiving the COVID-19 vaccine for religious reasons. (*See id.* at 11–12 (citing a "sampling of community comments from news articles about similar challenges to vaccination mandates" as well as other media commentary); *see also* Pls.' Reply, ECF No. 72, at 9–11 (quoting social media posts).)[8] Plaintiffs claim that these

---

[7] The Court notes that the fourth *Sealed Plaintiff* factor, whether Plaintiffs are particularly vulnerable in light of their age, does not support Plaintiffs' proceeding anonymously because as healthcare workers, they are almost certainly above the age of eighteen, and because Plaintiffs have made no representations about their respective ages. *Sealed Plaintiff*, 537 F.3d at 190.

[8] For example, Plaintiffs cite to a transcript of one of Governor Hochul's speeches, where she praised those who had decided to get vaccinated and stated that "there's people out there who aren't listening to God and what God wants. You know who they are." (Pls.' Mot., ECF No. 41, at 10–11 (citing Schmid Decl., ECF No. 41-1, ¶ 7).) Plaintiffs also point to an ABC News commentator's suggestion that the government should "just make it almost impossible for people to — to live their lives without being protected and protecting the rest of us." (*Id.* at 11–12.) In addition, Plaintiffs highlight the tenor of the social media discourse surrounding this issue, including comments reacting to religious objectors to the vaccine such as: "These people turn my stomach! Somebody's fake religion has nothing to do with our health. Such a lawsuit shouldn't even be considered by the court. In fact, maybe as citizen, Americans ought to be suing the fools who put this lawsuit together," (*id.* at 11); "Get vaccinated! If not, you pay the consequences. Absolutely no sympathy for these selfish people!" (Pls.' Reply, ECF No. 72, at 10); and "Any 'Doctor' or 'Nurse' who refuses to inoculate themselves should not be allowed to work anywhere. They're obviously not qualified to provide care and are endangering the lives of the people around them." (*id.* at 11).

clippings "decisively illustrate that the issue in this case incites people's passions and creates a serious risk that Plaintiffs or their families will be harassed, scorned, intimidated, retaliated against, threatened with permanent job loss, or even physically harmed if their identities become known." (Pls.' Reply, ECF No. 72, at 11.)[9] Plaintiffs do not, however, cite to any "offline examples in support of their concerns," such as intimidation or harassment from supervisors. *Doe 1 v. NorthShore Univ. HealthSystem*, No. 21-CV-5683, 2021 WL 5578790, at \*10 (N.D. Ill. Nov. 30, 2021).

Plaintiffs' counsel also submitted a sworn declaration attesting that Plaintiffs John Does 1–2 and Jane Does 1–3 "are concerned that disclosure of their identities will negatively impact all of their future abilities to obtain employment in New York." (Declaration of Daniel J. Schmid ("Schmid Decl."), ECF No. 41-1, ¶¶ 2, 10.) Furthermore, Plaintiffs allude to a potential "chilling effect" that would result from revealing their identities. (*See* Tr., ECF No. 78, at 18:4–19:7 (arguing that "[t]he harm is not merely retaliation. . . . [F]ear of retaliation would diminish [Plaintiffs'] willingness and ability to pursue legal remedies before this Court"); Pls.' Reply, ECF No. 72, at 8.) More specifically, Plaintiffs "fear that pursuit of their claims in the instant litigation without pseudonym protection will result in undue and unconscionable retaliation," and therefore maintain that they "would not pursue their claims if required to disclose their personal identities to the public." (Schmid Decl., ECF No. 41-1, ¶ 11; *see also* Pls.' Mot., ECF No. 41, at 12 ("Plaintiffs with otherwise merited claims will refuse to pursue such claims if forced to litigate in their own names.").)

In response, Defendants argue that Plaintiffs' fears are far too speculative and broad to justify proceeding anonymously. (*See, e.g.*, Tr., ECF No. 78, at 26:9–16

---

[9] The Court notes that Plaintiffs state that they fear retaliation from "their employers," but do not provide any further context. (Pls.' Mot., ECF No. 41, at 10.)

(characterizing Plaintiffs' showing of harm as "highly generalized and highly speculative," and arguing that "[w]hat's required under [S]ealed Plaintiff is that these specific Plaintiffs have to identify a particularized risk of harm to them"); *see also id.* at 30:8–14; Trinity Resp., ECF No. 67, at 11–14; New York-Presbyterian Mem., ECF No. 68, at 8–11.)

Generally speaking, "'the potential for embarrassment or public humiliation does not, without more, justify a request for anonymity.'" *Skyline Automobiles Inc.*, 375 F. Supp. 3d at 405 (quoting *Abdel-Razeq v. Alvarez & Marsal, Inc.*, No. 14-CV-5601 (HBP), 2015 WL 7017431, at *3 (S.D.N.Y. Nov. 12, 2015)). Nor does the desire to protect one's "professional or economic life." *Guerrilla Girls, Inc.*, 224 F.R.D at 573. Indeed, the prospect of being publicly linked to an unpopular viewpoint will not suffice to overcome the presumption of identification in judicial proceedings, "absent more direct evidence linking disclosure of [plaintiff's] name to a specific physical or mental injury." *Doe v. Gong Xi Fa Cai, Inc.*, No. 19-CV-2678 (RA), 2019 WL 3034793, at *2 (S.D.N.Y. July 10, 2019). Although the Court appreciates the potential harm from being subjected to intense public scrutiny, whether in the media or on the internet, it does not find the commentary directed at large swaths of the unvaccinated population to be compelling or particularized evidence of the physical or mental harms that Plaintiffs in this case may face. Moreover, to the extent that the sweeping negative comments about unvaccinated healthcare workers are emotionally harmful to Plaintiffs, proceeding anonymously will not shield them from such harm.

At the same time, however, the Court acknowledges that social opprobrium toward individuals in Plaintiffs' position has fluctuated, and may continue to fluctuate, depending on the prominence of the COVID-19 virus at varying points in time. Additionally, even though Plaintiffs have not established a risk of retaliatory harm, the

Court credits that they are afraid and that a "chilling effect" could result from Plaintiffs' being required to reveal their identities. This weighs in favor of permitting Plaintiffs to continue anonymously, as do the potentially adverse implications for Plaintiffs' future employment in the healthcare industry. *See, e.g.*, *Doe v. Colgate Univ.*, No. 15-CV-1069 (LEK) (DEP), 2016 WL 1448829, at *3 (N.D.N.Y. Apr. 12, 2016) ("The Court is also mindful of the potential chilling effect that forcing Plaintiff to reveal his identity would have on future plaintiffs facing similar situations."); *Doe v. Cabrera*, 307 F.R.D. 1, 7 (D.D.C. 2014) ("Having the plaintiff's name in the public domain, especially in the Internet age, could subject the plaintiff to future unnecessary interrogation . . . as a result of bringing this case."). *But see Doe v. Trustees of Indiana Univ.*, No. 21-CV-2903 (JRS) (MJD), 2022 WL 36485, at *6 (S.D. Ind. Jan. 3, 2022) (rejecting plaintiff's argument concerning "harm in the form of emotional and reputational damages, economic injuries, the loss of educational and career opportunities and future earnings" (quotation marks omitted)).

Accordingly, while the second *Sealed Plaintiff* factor concerning risk of retaliatory physical and mental harm weighs against Plaintiffs' anonymity here, the Court finds that the third factor, concerning the risk of other harms and the likely severity of those harms, favors Plaintiffs John Does 1–2 and Jane Does 1–3.[10]

### C. Prejudice to Defendants

The fifth and sixth *Sealed Plaintiff* factors address the defendants' identities, whether they will be prejudiced by plaintiff's anonymity, whether such prejudice (if

---

[10] Without more specific information regarding the nominal Plaintiffs, Jack Does 1–750 and Joan Does 1–750, the Court cannot evaluate whether the risk of such harms similarly extends to them.

any) differs at various stages of the litigation, and whether the court can mitigate such prejudice. *Sealed Plaintiff*, 537 F.3d at 190.

As previously noted, Plaintiffs bring this action against the New York Defendants in their official capacities, as well as three private employer Defendants. "While suits against the government involve no injury to the Government's reputation, suits against private parties may cause damage to their good names and reputations— which supports denying a request to proceed anonymously." *Gong Xi Fa Cai, Inc.*, 2019 WL 3034793, at *2 (quotation marks omitted); *see also Skyline Automobiles Inc.*, 375 F. Supp. 3d at 406. Defendants argue that their status as private entities weighs in favor of disclosure because of the reputational risks they face. (*See* Trinity Resp., ECF No. 67, at 14–15; New York-Presbyterian Mem., ECF No. 68, at 11–12.) Plaintiffs respond that Defendants' reputations are not at risk, as "Plaintiffs are not making salacious allegations about Defendants, or allegations that apply only to Plaintiffs themselves and that are not already known by the public at large." (Pls.' Reply, ECF No. 72, at 16; *see also* Tr., ECF No. 78, at 39:7–40:18.)

While the Court agrees with Defendants that being a private entity favors disclosure of Plaintiffs' identities, the potential for reputational harm is significantly lessened here by the gravamen of Plaintiffs' complaint, which is challenging New York State's vaccine regulation. (*See generally* Compl., ECF No. 1.) *Cf. Plaintiffs # 1-21 v. Cnty. of Suffolk*, 138 F. Supp. 3d 264, 274 (E.D.N.Y. 2015) ("Where, as here, a plaintiff attacks governmental activity, for example a governmental policy or statute, the plaintiff's interest in proceeding anonymously is considered particularly strong." (quotation marks omitted)). At bottom, Defendants' alleged wrongdoing in this case was complying with a state law requiring most healthcare workers to be inoculated against

COVID-19. (*See, e.g.*, Compl., ECF No. 1, ¶¶ 142–44.) It is unclear to the Court how such allegations will adversely impact Defendants' reputations.

The Court is troubled, though, by Plaintiffs' lack of clarity regarding the *number* of Jack and Joan Doe Plaintiffs. (*See supra* note 3; New York-Presbyterian Mem., ECF No 68, at 3.) In the Court's view, there is a difference for Defendants' reputational risk between being sued by two employees and being sued by 200 employees. Therefore, as discussed below, the Court directs Plaintiffs to clarify the number of individuals seeking to proceed anonymously and, if necessary, to submit an additional declaration in support of Plaintiffs' motion to proceed under pseudonyms, or to seek to amend the caption to remove the Jack Does and Joan Does from this case. *See* Fed. R. Civ. P. 21 (permitting courts to add or drop a party at any time).

This concern also relates to the broader question of whether Defendants are prejudiced by allowing Plaintiffs to proceed under pseudonyms. Defendant Trinity claims that "Plaintiffs' anonymity impedes Trinity's ability to effectively defend against Plaintiffs' claims." (Trinity Resp., ECF No. 67, at 15; *see also id.* at 15–17.) These concerns should be alleviated, however, by the entry of Plaintiffs' proposed protective order, which contemplates disclosing "the names and business address of all known Plaintiffs to this action" within three business days. (Pls.' Proposed Protective Order, ECF No. 41-2, ¶ 3.) *See Plaintiffs # 1-21*, 138 F. Supp. 3d at 277 ("[T]he Court finds the proposal offered by the Plaintiffs to be a reasonable way to accommodate the Plaintiffs' strong interest in anonymity while minimizing the prejudice to the Defendants by permitting limited disclosure of the Plaintiffs' identities so that they can conduct meaningful discovery and mount effective defenses."); *see also NorthShore Univ. HealthSystem*, 2021 WL 5578790, at *10 ("But as [Defendant] knows the Plaintiffs' identities, it is not

prejudiced by allowing this litigation to proceed in its current manner with Plaintiffs' names remaining undisclosed to the public.").

In addition, Plaintiffs claim that because this case involves "purely legal issues" related to Defendants' denial of all requests for religious exemptions from New York's vaccine mandate, "irrespective of any individual traits of any individual Plaintiff," Defendants will suffer no prejudice from Plaintiffs' anonymity. (Pls.' Reply, ECF No. 72, at 15.) Defendant New York-Presbyterian contends that Defendants will be prejudiced if Plaintiffs "are permitted to proceed by pseudonym beyond the preliminary injunction stage[.]" (New York-Presbyterian Mem., ECF No. 68, at 12.) Similarly, Defendant Advanced Physician Services conditioned its non-opposition to Plaintiffs' motion to proceed using pseudonyms on its reservation of "the right to challenge Plaintiffs' request to proceed pseudonymously in the event that . . . [Plaintiffs'] identities become more relevant to the adjudication of their claims." (Advanced Physician Services Resp., ECF No. 69; *see also* Tr., ECF No. 78, at 23:7–21.)

At the current stage of the litigation, with Defendants' motions to dismiss pending (*see* Mots. to Dismiss, ECF Nos. 81, 83, 84, 87), the Court finds that Plaintiffs John Does 1–2 and Jane Does 1–3's proceeding anonymously causes little prejudice to Defendants. This is especially so given Plaintiffs' willingness to stipulate to a protective order that will allow Defendants to learn Plaintiffs' identities. However, should this action continue beyond the motion to dismiss phase — or in the event that Plaintiffs cannot adequately support the Jack or Joan Does' request to proceed under pseudonyms — it may be necessary to revisit whether Plaintiffs' anonymity is obfuscating discovery, causing reputational damage to Defendants, or undermining the fundamental fairness of the proceedings. *Cf. Rapp v. Fowler*, 537 F. Supp. 3d 521, 531 (S.D.N.Y. 2021); *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003).

### D. The Public's Interest in the Litigation & Alternative Mechanisms for Protecting Plaintiffs' Confidentiality

The final four *Sealed Plaintiff* factors cover whether a plaintiff's identity has been kept confidential thus far, the public's interest in the litigation vis-à-vis the plaintiff's identity, and whether there are alternative mechanisms for protecting plaintiff's confidentiality. *Sealed Plaintiff*, 537 F.3d at 190.

It is of course well settled that "'lawsuits are public events and the public has a legitimate interest in knowing the facts involved in them. Among those facts is the identity of the parties.'" *Doe v. Weinstein*, 484 F. Supp. 3d 90, 97 (S.D.N.Y. 2020) (quoting *Doe v. Shakur*, 164 F.R.D. 359, 361 (S.D.N.Y. 1996)). In addition, the Court notes that the mere "fact that a group of plaintiffs is suing the government or seeking to challenge a government policy does not, by itself, justify granting a motion to proceed anonymously." *Plaintiffs # 1-21*, 138 F. Supp. 3d at 275. "[D]oing so would lead, inappropriately, to granting anonymity to any plaintiff suing the government to challenge a law or regulation." *Id.* (quotation marks omitted). Against this legal backdrop, the final four *Sealed Plaintiff* factors weigh only slightly in favor of granting Plaintiffs' motion.

Regarding the confidentiality of Plaintiffs' identities, the parties do not dispute that Plaintiffs have remained anonymous both to Defendants and the public at large. (*See* Trinity Resp., ECF No. 67, at 17; Pls.' Reply, ECF No. 72, at 17; *see also generally* New York-Presbyterian Mem., ECF No. 68.) Therefore, this factor favors Plaintiffs. *See Skyline Automobiles Inc.*, 375 F. Supp. 3d at, 407 (explaining that "[i]f a plaintiff's confidentiality has not been maintained throughout the proceedings, there is less of a risk of harm should the plaintiff not be permitted to proceed under a pseudonym").

As for whether "the public's interest in the litigation is furthered" by requiring Plaintiffs to disclose their identities, or "whether, because of the purely legal nature of the issues . . . , there is an atypically weak public interest in knowing the litigants' identities," the Court finds that these factors also tilt toward Plaintiffs. *Sealed Plaintiff*, 537 F.3d at 190. Here, Plaintiffs assert that "[t]here is no material difference to the public if Plaintiffs are identified by their actual names or by pseudonyms," because "[t]he important public aspect of this case concerns" New York's vaccine mandate. (Pls.' Reply, ECF No. 72, at 18.) Further, Plaintiffs contend that "the public has an atypically weak interest in the identity of the Plaintiffs in this matter" due to the "purely legal questions at issue[.]" (Pls.' Mot., ECF No. 41, at 8; *see also* Pls.' Reply, ECF No. 72, at 18–19; Tr., ECF No. 78, at 13:14–24.) Defendants respond by highlighting the "strong public interest in open judicial proceedings," which is "heightened" where, as here, "the litigation involves fact-finding specific to the litigants." (New York-Presbyterian Mem., ECF No. 68, at 13 (quotation marks omitted); *see also* Trinity Resp., ECF No. 67, at 18.)

Based on the current posture of this case, the Court finds that "the identity of each of the Plaintiffs is of little-to-no value to the underlying allegations of the complaint." *Univ. of Colorado*, 2022 WL 43897, at *4; *see also id.* at *5 (finding a "uniquely weak public interest in knowing the litigants' identities" where "[t]he public will know that a group of people" in the plaintiffs' position were denied a religious exemption to a COVID-19 vaccine mandate and are seeking to vindicate what they believe to be their constitutional rights). Although Plaintiffs did not bring this action "solely against the government," the lawsuit — at least in its initial, pre-answer phase — "seeks to raise an abstract question of law" that plausibly "affects many similarly situated individuals." *Doe v. Del Rio*, 241 F.R.D. 154, 158 (S.D.N.Y. 2006). The public does have an interest, however, in knowing the size of the group raising such questions of law. Thus, while

the Court finds that the eighth and ninth *Sealed Plaintiff* factors support Plaintiffs' motion to remain anonymous, Plaintiffs are directed to list the actual number of "Doe" Plaintiffs involved.

Finally, as to the tenth factor, the Court does not find any alternative mechanisms for protecting Plaintiffs' confidentiality in this case. As Plaintiffs' counsel noted during the December 14, 2021 hearing, "[o]nce the cat's out of the bag, it's out of the bag." (Tr., ECF No. 78, at 45:15.)

*   *   *   *   *

In balancing the *Sealed Plaintiff* factors and the other considerations discussed above, the Court finds that Plaintiffs John Does 1–2 and Jane Does 1–3's interest in anonymity presently outweighs the public's interest in full disclosure of Plaintiffs' identities and any prejudice to Defendants. *See Plaintiffs # 1-21*, 138 F. Supp. 3d at 277; *NorthShore Univ. HealthSystem*, 2021 WL 5578790, at *10. The Court reaches this conclusion primarily due to the fact that there is little to no prejudice to Defendants at this stage, balanced against a credible possibility of harm to Plaintiffs if they are required to reveal their identities, as discussed above. Considering the social and political climate that has surrounded the public debate over the COVID-19 vaccine, the Court credits Plaintiffs' fear of being harassed, scorned, and intimidated, which could have a chilling effect on them or impact their employment prospects. (*See, e.g.*, Pls.' Reply, ECF No. 72, at 7–12.) But in this case, which alleges claims under Title VII and challenges private Defendants' actions as employers, Plaintiffs have "put factual questions about [their] actions at issue in this lawsuit." *City Univ. of New York*, 2021 WL 5644642, at *5. This dimension of their claims, in concert with the general presumption of openness in federal court proceedings, weighs strongly against Plaintiffs' motion to

19

proceed anonymously. Accordingly, although the balance of factors tips in favor of Plaintiffs at this phase of the case, this balance could change as the case progresses.

As to Plaintiffs Jack Does 1–750 and Joan Does 1–750, the Court does not find a sufficient basis to permit them to proceed anonymously. In the event these Plaintiffs wish to proceed under pseudonyms, Plaintiffs' counsel are respectfully directed to submit an additional declaration outlining the reasons for doing so and specifying the number of Jack and Joan Does currently participating in this lawsuit. If necessary, counsel may also move to amend the case caption.

## CONCLUSION

For the reasons contained herein, Plaintiffs' motion for a protective order and to proceed under pseudonyms (ECF No. 41) is granted, in part. The parties are respectfully directed to meet and confer and to submit a proposed protective order to the Court by April 1, 2022, as well as a letter indicating the status of Jack Does 1–750 and Joan Does 1–750, consistent with this Memorandum and Order. The Court reserves the authority to revisit Plaintiffs' anonymity should the case proceed beyond the motion to dismiss stage.

**SO ORDERED.**

Dated:     Brooklyn, New York
          March 18, 2022

_____
*Taryn A. Merkl*
TARYN A. MERKL
UNITED STATES MAGISTRATE JUDGE

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

JOHN DOES 1–2, JANE DOES 1–3,   **)**
               **)**
               **)**
     Plaintiffs,     **)** Case No. 1:21-CV-05067-AMD-TAM
v.              **)**
               **)**
KATHY HOCHUL, in her official capacity as **)**
Governor of the State of New York,  **)**
HOWARD A. ZUCKER, in his official capacity **)**
as Commissioner of the New York State **)**
Department of Health, TRINITY HEALTH, **)**
INC., NEW YORK-PRESBYTERIAN  **)**
HEALTHCARE SYSTEM, INC.,   **)**
WESTCHESTER MEDICAL CENTER  **)**
ADVANCED PHYSICIAN SERVICES, P.C., **)**
               **)**
     Defendants.    **)**

## <u>INTERIM PROTECTIVE ORDER</u>

Plaintiffs are granted leave to proceed under pseudonym, as follows:

1) The docket shall continue to reflect Plaintiffs' names as captioned in the Verified Complaint, ECF No. 1, and as modified by the Court's April 4, 2022 Order.

2) Plaintiffs will be referred to by their pseudonyms in all public pleadings and other public documents filed in this litigation, and Plaintiffs shall be allowed to endorse documents filed in this litigation using their pseudonyms.

3) By 5:00 p.m. EST on April 6, 2022, Plaintiffs' counsel shall disclose in writing the names and business addresses of John Does 1–2 and Jane Does 1–3, including which pseudonym applies to which Plaintiff (the "Identifying Information"), to counsel of record for Defendants, subject to Defendants' agreement to abide by the terms of this Order even if it has not yet been entered by the Court.

4)      To the extent Plaintiffs' motion to proceed under pseudonym is subsequently granted by the Court with respect to any Jack Does and/or Joan Does pursuant to the procedure set forth in the Court's Memorandum and Order dated March 18, 2022, Plaintiffs' counsel shall disclose in writing the names and business addresses of such Plaintiffs, including which pseudonym applies to which Plaintiff, within three business days of the Court's decision.

5)      Until further order of the Court, Defendants' counsel of record may disclose the Identifying Information only to the following: (a) the individual Defendants; (b) in-house and outside attorneys for Defendants and their legal staff, including but not limited to paralegals, clerical staff, and other assistants; (c) Defendants' employees who Defendants' counsel reasonably believe may have knowledge of the facts alleged by Plaintiffs in this action and who Defendants' counsel of record determine are reasonably necessary to assist in the defense of this case; (d) witnesses who may be deposed or asked to give testimony and who Defendants' counsel of record reasonably determine need to know the Identifying Information for purposes of their testimony, such disclosure to each witness to be limited to only so much of the Identifying Information as that witness needs to know; (e) the Court and its personnel; (f) court reporters, stenographers, or videographers; and (g) outside photocopying, graphic production services, or litigation support services acting under the direction of Defendants' counsel.

6)      Nothing in this Order shall bar Defendants from using the Identifying Information to defend against claims brought in this action. However, each person who receives any Identifying Information pursuant to this Order shall use it only for purposes of defending the claims brought in this action, and shall not disclose such Identifying Information to any other person who is not expressly authorized to receive it under this Order.

7)      Each person, other than Defendants' in-house and outside attorneys, to whom any Identifying Information is to be disclosed pursuant to this Order, shall be provided a copy of this Order and shall agree in advance and in writing[1] that he or she: (a) will be bound by this Order; (b) will not use any Identifying Information except for purposes of defending the claims brought in this action; and (c) will not disclose any Identifying Information to any person not entitled to receive it under this Order.

8)      To the extent that any court filings include any Identifying Information, and the parties wish to move to file under seal, they shall comply with the Eastern District of New York's Steps for E-Filing Sealed Documents in Civil cases, located at: https://www.nyed.uscourts.gov/sites/default/files/forms/EfilingSealedCV.pdf.

9)      Nothing in this Order shall bar Defendants from raising any arguments challenging or objecting to any request by Plaintiffs to permit any Jack Does or Joan Does to proceed under pseudonyms.

---

[1] Provision of the Order, and agreements to be bound thereby, by e-mail will be sufficient. The party disclosing Identifying Information shall retain a record of such agreements by any persons to whom disclosure is made and need not disclose such record to any other party unless so ordered by the Court.

3

10) Nothing in this Order shall bar Defendants from raising any arguments challenging or objecting to Plaintiffs proceeding under pseudonyms if the case proceeds beyond the motion-to-dismiss stage. Defendants do not waive, and expressly reserve, all of their arguments with respect to Plaintiffs' claims and the relief sought in the Verified Complaint, ECF No. 1.

If necessary, the Court will revisit this Protective Order, and the use of Identifying Information in discovery and the balance of this litigation, after Defendants' Motions to Dismiss are determined.


**SO ORDERED.**

Date:_____April 4_____, 2022
      Brooklyn, New York

*Taryn A. Merkl*
TARYN A. MERKL
United States Magistrate Judge
Eastern District of New York

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON (1946-1991)
RANDOLPH E. PAUL (1946-1956)
SIMON H. RIFKIND (1950-1995)
LOUIS S. WEISS (1927-1950)
JOHN F. WHARTON (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 - 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER

(212) 373-3096

WRITER'S DIRECT FACSIMILE

(212) 492-0096

WRITER'S DIRECT E-MAIL ADDRESS

lvelazquez@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
GERALD BRANT
ROBERT A. BRITTON
DAVID W. BROWN
WALTER F. BROWN*
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
REBECCA S. COCCARO
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
MANUEL S. FREY
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS P. GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
KARA L. HALPERIN
CLAUDIA HAMMERMAN
IAN M. HAZLETT
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
CHRISTOPHER HOPKINS
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
MATTHEW B. JORDAN
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
ROBERT A. KILLIP
BRIAN KIM
KYLE J. KIMPLER
JEFFREY L. KOCHIAN
ALEXIA D. KORBERG
ALAN W. KORNBERG

DANIEL J. KRAMER
BRIAN KRAUSE
CAITH KUSHNER
KAISA KUUSK
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH M. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
CRYSTAL L. PARKER
LINDSAY B. PARKS
DANIELLE R. PARKER
DANIELLE C. PENHALL
CHARLES J. PESANT*
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
RICHARD A. ROSEN
ELIZABETH M. SACKSTEDER
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
RAPHAEL M. RUSSO
ELIZABETH H. SACKSTEDER
JEFFREY B. SAMUELS
PAUL L. SANDLER
AARON J. SCHLAPHOFF
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
SUHAN SHIM
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
JOSHUA H. SOVEN*
MEGAN SPELMAN
SARAH STASNY
ERIC ALAN STONE
JOHN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
KRISHNA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
SAMUEL J. WELT
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
KEN ZIMAN
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

July 6, 2022

**By ECF**

Hon. Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

*Does et al* v. *Hochul et al,* No. 1:21-cv-05067-AMD-TAM (E.D.N.Y.)

Dear Judge Donnelly:

      We represent Defendant NewYork-Presbyterian Healthcare System, Inc. ("NYP") in the above-captioned matter. On behalf of all Defendants, we write to inform the Court of a recent update in two related matters challenging the New York State Department of Health regulation requiring COVID-19 vaccination for health care workers that is at issue in this case (the "DOH Mandate").

      As the Court is aware, in consolidated appeals in *We The Patriots USA, Inc.* v. *Hochul* and *Dr. A* v. *Hochul*, the Second Circuit vacated the *Dr. A* district court's order preliminarily enjoining the enforcement of the DOH Mandate and ruled that plaintiffs were

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

unlikely to succeed on the merits of their claims that the DOH Mandate (i) violates the First and Fourteenth Amendments of the U.S. Constitution and (ii) is preempted by Title VII. *See We The Patriots USA, Inc.* v. *Hochul*, 17 F.4th 266 (2d Cir. 2021) (per curiam), *reaffirmed by We The Patriots USA, Inc.* v. *Hochul*, 17 F.4th 368 (2d Cir. 2021) (per curiam), *injunction pending appeal denied by We The Patriots USA Inc.* v. *Hochul*, 142 S. Ct. 734 (2021), *and Dr. A* v. *Hochul*, 142 S. Ct. 552 (2021).

On June 30, 2022, the Supreme Court denied the *Dr. A* plaintiffs' petition for a writ of certiorari. The *We The Patriots* plaintiffs did not file a petition for writ of certiorari. Accordingly, the DOH Mandate remains in effect and the Second Circuit's decision in *We The Patriots* remains controlling.

Respectfully submitted,

By: */s/ Liza M. Velazquez*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Bruce Birenboim
Michael E. Gertzman
Liza M. Velazquez
Gregory F. Laufer
Jonathan Hurwitz
Emily A. Vance
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
bbirenboim@paulweiss.com
mgertzman@paulweiss.com
lvelazquez@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com
evance@paulweiss.com

*Attorneys for NewYork-Presbyterian Healthcare System, Inc.*

cc:    All counsel by ECF

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064
TELEPHONE (212) 373-3000

LLOYD K. GARRISON    (1946-1991)
RANDOLPH E. PAUL     (1946-1956)
SIMON H. RIFKIND     (1950-1995)
LOUIS S. WEISS       (1927-1950)
JOHN F. WHARTON      (1927-1977)

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

WRITER'S DIRECT DIAL NUMBER
(212) 373-3096

WRITER'S DIRECT FACSIMILE
(212) 492-0096

WRITER'S DIRECT E-MAIL ADDRESS
lvelazquez@paulweiss.com

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN ANDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
GERALD BRANT
ROBERT A. BRITTON
DAVID W. BROWN
WALTER F. BROWN*
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P. FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS P. GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
JEFFREY L. KOCHIAN

ALEXIA D. KORBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAVEN
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENNALL
CHARLES J. PESANT
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P. RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

August 24, 2022

## By ECF

Hon. Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 4GN
Brooklyn, New York 11201

*Does et al* v. *Hochul et al,* No. 1:21-cv-05067-AMD-TAM (E.D.N.Y.)

Dear Judge Donnelly:

       We write jointly on behalf of Defendants in the above-captioned matter to bring to the Court's attention a recent decision by Chief U.S. District Judge Jon D. Levy of the U.S. District Court of Maine in *Lowe* v. *Mills*, in which the court granted the state and hospital defendants' motions to dismiss a complaint filed by former healthcare workers challenging the denial of their requests for religious exemptions from the state's COVID-19 vaccination requirement.  No. 1:21-cv-242, ECF No. 156 (D. Me.) (attached hereto as Exhibit A).  This decision provides further support for Defendants' pending motions to dismiss (ECF Nos. 81–85, 87), as Chief Judge Levy dismissed identical causes of action (Title VII, Free Exercise Clause,

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

2

Equal Protection Clause, Supremacy Clause, and 42 U.S.C. § 1985) and legal theories as asserted in the instant complaint.

        In particular, in *Mills*, seven Maine healthcare workers brought an action challenging the lawfulness of a Maine administrative rule that requires employees of designated Maine healthcare facilities to be vaccinated against COVID-19,[1] alleging that, among other things, federal law entitled them to a religious exemption from the vaccination requirement. As noted above, plaintiffs in *Mills* asserted the same claims and legal theories advanced by plaintiffs in this litigation, and both sets of plaintiffs are represented by the same counsel.

        In his decision, Chief Judge Levy identified pleading deficiencies with respect to each of the plaintiffs' claims and dismissed the complaint in its entirety without leave to replead. Defendants have moved to dismiss each of plaintiffs' claims in this case on these very same pleading deficiencies. ECF Nos. 81–85, 87 (Defendants' motions to dismiss the instant complaint).

        *First*, the court dismissed the plaintiffs' claim under Title VII of the Civil Rights Act of 1964 as barred by the affirmative defense of undue hardship, as it was clear from the face of the complaint that granting the exemptions sought would violate state law, thereby subjecting the hospital defendants to the imposition of a fine and suspension of a license. Exhibit A at 15–22. In so concluding, the Chief Judge Levy noted that, "based on the allegations of the amended complaint, the sole accommodation sought by the Plaintiffs [was] a religious exemption from the vaccine requirement." *Id.* at 15.[2]

        *Second* and *third*, the court dismissed the plaintiffs' claims under the Free Exercise Clause of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, finding that the state's COVID-19 vaccination requirement, which does not permit religious exemptions, is both neutral and generally applicable, and is rationally related to the "legitimate governmental interests" of protecting the lives and health of Maine people and safeguarding Maine's healthcare capacity. Exhibit A at 33–34.

---

[1] Immunization Requirements for Healthcare Workers, 10-144-264 Me. Code R. §§ 1-7 (amended Nov. 10, 2021) (LexisNexis 2022).

[2] As Chief Judge Levy acknowledged, the plaintiffs' complaint "declares at the outset, in bold letters: '**All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for over two years.**' ECF No. 152 ¶ 8." Paragraph 8 of plaintiffs' Complaint in this litigation contains almost identical language. *See* ECF No. 1 ¶ 8 ("**All Plaintiffs seek in this lawsuit is to be able to continue to provide the healthcare they have provided to patients for their entire careers, and to do so under the same protective measures that have sufficed for them to be considered superheroes for the last 18 months.**").

*Fourth*, the court dismissed the plaintiffs' claim under the Supremacy Clause, holding that the Supremacy Clause "is not the source of any federal rights" and "does not create a cause of action." *Id.* at 34 (internal quotation marks and citations omitted).

*Fifth*, the court dismissed the plaintiffs' conspiracy claim under 42 U.S.C. § 1985, because the plaintiffs failed to plead facts that could demonstrate the existence of a conspiracy. *Id.* at 35–36. In so concluding, the court determined that hospital defendants' "public statements that were supportive of the COVID-19 vaccine mandate after it was announced" and "subsequent[] refus[al] to grant religious exemptions from the COVID-19 vaccination requirement" were insufficient to plead a conspiracy. *Id.* at 35.

Defendants are prepared to discuss this supplemental authority and to answer any questions the Court may have.

Respectfully submitted,

By: /s/ *Liza M. Velazquez*

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP
Bruce Birenboim
Michael E. Gertzman
Liza M. Velazquez
Gregory F. Laufer
Jonathan Hurwitz
Emily A. Vance
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
bbirenboim@paulweiss.com
mgertzman@paulweiss.com
lvelazquez@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com
evance@paulweiss.com

*Attorneys for NewYork-Presbyterian Healthcare System, Inc.*

cc: All counsel by ECF

# LIBERTY COUNSEL

FLORIDA OFFICE:

PO Box 540774
Orlando, FL 32854
Tel 407-875-1776
Fax 407-875-0770
www.LC.org

DISTRICT OF COLUMBIA OFFICE:

122 C Street NW, Ste 360
Washington, DC 20001
Tel 202-289-1776
Fax 407-875-0770

REPLY TO FLORIDA

VIRGINIA OFFICE:

PO Box 11108
Lynchburg, VA 24506
Tel 407-875-1776
Fax 407-875-0770
Liberty@LC.org

September 7, 2022

**Via ECF**
The Honorable Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, NY 11201

      RE:    *John Does 1-3, et al. v. Kathy Hochul, et al.*
             No. 1:21-cv-5067-AMD-TAM

Dear Judge Donnelly:

    Plaintiffs write in response to Defendants' joint letter (ECF No. 102) providing as supplemental authority the decision in *Lowe v. Mills*, No. 1:21-cv-242-JDL, 2022 WL 3542187 (D. Me. Aug. 18, 2022), and purporting to show that it supports Defendants' motions to dismiss (ECF Nos. 81–85, 87). For the following reasons, the district court's decision in *Lowe* is in error and demonstrates why Defendants' motions should be denied.

    First, as Defendants note (ECF No. 102 at 2), the court in *Lowe* erroneously held that Plaintiffs' Title VII claims were barred by an affirmative defense of undue hardship. 2022 WL 3542187, at *8. This is improper because "[o]rdinarily, a defendant may not raise affirmative defenses in a pre-answer motion to dismiss." *Edwards v. McMIllen Capital, LLC*, 574 F. Supp. 3d 52, 66 (D. Conn. 2021). The reason for this is simple: affirmative defenses involve factual questions that are not proper for resolution on a motion to dismiss. *See, e.g.*, *Garrigan v. Ruby Tuesday, Inc*, No. 14 Civ. 155 (LGS), 2014 WL 2134613, *5 (S.D.N.Y. May 22, 2014) (noting that factual questions on an affirmative defense, in Title VII cases, cannot be resolved at the dismissal stage); *Graham v. Prince*, 265 F. Supp. 3d 366, 385 (S.D.N.Y. 2017) (factual questions concerning an affirmative defense cannot be resolved on motion to dismiss); *Taylor v. Wilde*, No.. 11-CV-3608(JS)(ETB), 2012 WL 2860999, *4 (E.D.N.Y. July 10, 2012) (same).

    Here, resolution of Defendants' affirmative defense of undue hardship turns on a factual question. Regardless of whether Provider Defendants believe that an accommodation is possible under Title VII, the question of whether application of State Defendants' Vaccine Mandate and Provider Defendants' refusal to accommodate Plaintiffs' religious objections are justified by undue

The Honorable Ann M. Donnelly
*Does v. Hochul*, No. 1:21-cv-5067-ADM-TAM
September 7, 2022
Page 2

hardship under Title VII is a question of fact not suitable for determination on a motion to dismiss. As this Court has recognized, "whether an employer can reasonably accommodate a person's religious beliefs without undue hardship is basically a question of fact." *Jamil v. Sessions*, No. 14-CV-2355(PKC)(RLM), 2017 WL 913601, *14 (E.D.N.Y. Mar. 6, 2017); *see also D'Amico v. Port Auth. of N.Y. & N.J.*, No. 12-cv-4953(ENV)(VMS), 2016 WL 11469537, *10 (E.D.N.Y. Aug. 23, 2016) (whether accommodation "is an undue hardship is usually a question of fact for the jury"); *Walsh v. Coleman*, No. 3:19-cv-980 (JAM), 2020 WL 7024927, *6 (D. Conn. Nov. 30, 2020) ("Undue hardship is a question of fact" inappropriate for determination at the motion to dismiss stage (quoting *Wright v. N.Y. State Dep't of Corrections*, 831 F.3d 64, 76-77 (2d Cir. 2016)); *Antione v. First Student, Inc.*, 713 F.3d 824, 831 (5th Cir. 2013) ("[w]hether an accommodation is reasonable is a question of fact."); *McWright v. Alexander*, 982 F.2d 222, 227 (7th Cir. 1992) ("As for the balance between reasonable accommodation and undue hardship, these matters are questions of fact and thus generally inappropriate for resolution on the pleadings"); *Kimbro v. Atlantic Richfield Co.*, 889 F.2d 869, 877 (9th Cir. 1989) ("whether a particular accommodation would have imposed an undue hardship on the employer is a question of fact"); *Menuel v. Hertz Corp.*, No. 1:07-CV-3031-JTC-RGV, 2008 WL 11322934, *4 (M.D. Ga. Nov. 10, 2008) (noting question of undue hardship "is a question of fact that will depend on a variety of factors . . . thus precluding dismissal of the Title VII claim."); *Doe 1 v. NorthShore Univ. Healthsystem*, No. 21-cv-05683, 2021 WL 5578790, *4 (N.D. Ill. Nov. 30, 2021) ("whether an employer can 'reasonably accommodate a person's religious beliefs without undue hardship is basically a question of fact.'" (quoting *Minkus v. Metro. Sanitary Dist. Of Greater Chicago*, 600 F.2d 80, 81 (7th Cir. 1979))). Thus, resolving Provider Defendants' contentions concerning any purported hardship is inappropriate at this juncture, and Judge Levy's order in *Lowe* errs by making this determination on a motion to dismiss.

The court's error in *Lowe* is even more glaring because it misconstrued the pleadings in that matter. Judge Levy held that the only accommodation requested was an exemption, so no other accommodation could be had. That fundamentally misstated plaintiffs' claims in *Lowe*, and it certainly cannot be used as a basis for dismissal here. Plaintiffs here certainly requested an exemption from the compulsory vaccination that violates their sincerely held religious beliefs, but it was only the first step in the accommodation process. It cannot be gainsaid that Plaintiffs also proposed numerous other alternatives that could serve as a basis for a reasonable accommodation under Title VII. (*See* ECF No. 1, Verified Complaint, ¶¶ 70–77 (outlining other alternatives and potential accommodations that Plaintiffs would accept).)

Second, Defendants note the court's decision in *Mills* for its erroneous proposition that a mandatory vaccine policy exempting certain religious accommodations while permitting similarly situated nonreligious accommodations is neutral and generally applicable. (ECF No. 102 at 2 (citing *Lowe*, 2022 WL 3542187, at *12).) Importantly, the removal of a statutory exemption for sincerely held religious beliefs occurred over one year prior to the institution of the COVID-19 vaccine mandate in Maine. *See Lowe*, 2022 WL 3542187, at *12. Here, in stark contrast, the Verified Complaint plainly alleges that State Defendants originally included a religious accommodation in the COVID-19 vaccine mandate (ECF No. 1, Verified Complaint, ¶ 37), but then removed any accommodations for religious beliefs 8 days later. (ECF No. 1, Verified

The Honorable Ann M. Donnelly
*Does v. Hochul,* No. 1:21-cv-5067-ADM-TAM
September 7, 2022
Page 3

Complaint, ¶¶ 39-40.) Thus, even assuming for the sake of argument that Judge Levy's order in *Lowe* could overcome factual allegations that the removal of religious accommodations was not targeted at religion, an erroneous proposition to be sure, the same cannot be said of Plaintiffs' Complaint here.

More fatally for Defendants' contentions here, however, is that Judge Levy ignored the Second Circuit's decision in *New Hope Family Services, Inc. v. Poole*, 966 F.3d 145 (2d Cir. 2020), which this Court is not permitted to do. As a matter of binding precedent on *this* Court, the Second Circuit has held that, even if a plaintiff is unlikely to prevail on a free exercise claim, courts are not permitted to make conclusions of law contrary to the allegations of hostility in a plaintiffs' complaint. 966 F.3d at 160. Specifically, the Second Circuit explained,

> New Hope argues that the district court erred in concluding that it failed to plead a plausible Free Exercise claim against OCFS. Specifically, New Hope challenges the district court's determination that OCFS was simply enforcing a neutral and generally applicable anti-discrimination regulation when it insisted that New Hope either agree to approve unmarried and same-sex applicants for adoption or close its adoption service. For reasons explained herein, we conclude that the dismissal of New Hope's Free Exercise claim was premature. The pleadings allege that OCFS's actions preclude New Hope from pursuing its adoption ministry consistent with its religious beliefs. **Even if such intrusion on the exercise of religion would not violate the First Amendment if compelled by a valid and neutral law (or regulation) of general application, the pleadings here, when viewed in the light most favorable to New Hope, do not permit a court to conclude, as a matter of law, that OCFS's actions in promulgating and enforcing the regulation at issue were neutral and not informed by hostility toward certain religious beliefs**.

*Id.* (emphasis added). Here, Plaintiffs' well-pleaded allegations plainly demonstrate that the State removed a religious accommodation that had existed a mere 8 days prior *in the same mandate*, and that it did so out of hostility towards religious beliefs. (*See generally* ECF No. 1, Verified Complaint, ¶¶ 119–136.) When construed properly, and taking all Plaintiffs' allegations as true, which this Court must, "the pleadings give rise to a sufficient suspicion of religious animosity to warrant a pause for discovery before dismissing New Hope's claim as implausible." *New Hope*, 966 F.3d at 163.

For all these reasons, Judge Levy's erroneous order in *Lowe* is inapposite here, and Defendants' Motions should be denied.

Respectfully submitted,

Daniel J. Schmid
*Attorney for Plaintiffs*

The Honorable Ann M. Donnelly
*Does v. Hochul,* No. 1:21-cv-5067-ADM-TAM
September 7, 2022
Page 4


CC: **By ECF**
All counsel of Record

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

1285 AVENUE OF THE AMERICAS
NEW YORK, NEW YORK 10019-6064

TELEPHONE (212) 373-3000

LLOYD K. GARRISON  (1946-1991)
RANDOLPH E. PAUL  (1946-1956)
SIMON H. RIFKIND  (1950-1995)
LOUIS S. WEISS  (1927-1950)
JOHN F. WHARTON  (1927-1977)

WRITER'S DIRECT DIAL NUMBER

(212) 373-3096

WRITER'S DIRECT FACSIMILE

(212) 492-0096

WRITER'S DIRECT E-MAIL ADDRESS

lvelazquez@paulweiss.com

UNIT 5201, FORTUNE FINANCIAL CENTER
5 DONGSANHUAN ZHONGLU
CHAOYANG DISTRICT, BEIJING 100020, CHINA
TELEPHONE (86-10) 5828-6300

SUITES 3601 – 3606 & 3610
36/F, GLOUCESTER TOWER
THE LANDMARK
15 QUEEN'S ROAD, CENTRAL
HONG KONG
TELEPHONE (852) 2846-0300

ALDER CASTLE
10 NOBLE STREET
LONDON EC2V 7JU, UNITED KINGDOM
TELEPHONE (44 20) 7367 1600

535 MISSION STREET, 24TH FLOOR
SAN FRANCISCO, CA 94105
TELEPHONE (628) 432-5100

FUKOKU SEIMEI BUILDING
2-2 UCHISAIWAICHO 2-CHOME
CHIYODA-KU, TOKYO 100-0011, JAPAN
TELEPHONE (81-3) 3597-8101

TORONTO-DOMINION CENTRE
77 KING STREET WEST, SUITE 3100
P.O. BOX 226
TORONTO, ONTARIO M5K 1J3
TELEPHONE (416) 504-0520

2001 K STREET, NW
WASHINGTON, DC 20006-1047
TELEPHONE (202) 223-7300

500 DELAWARE AVENUE, SUITE 200
POST OFFICE BOX 32
WILMINGTON, DE 19899-0032
TELEPHONE (302) 655-4410

MATTHEW W. ABBOTT
EDWARD T. ACKERMAN
JACOB A. ADLERSTEIN
JUSTIN AMDERSON
ALLAN J. ARFFA
JONATHAN H. ASHTOR
ROBERT A. ATKINS
SCOTT A. BARSHAY
PAUL M. BASTA
J. STEVEN BAUGHMAN
LYNN B. BAYARD
CRAIG A. BENSON
JOSEPH J. BIAL
BRUCE BIRENBOIM
H. CHRISTOPHER BOEHNING
BRIAN BOLIN
ANGELO BONVINO
ANDRE G. BOUCHARD*
GERALD BRANT
ROBERT A. BRITTON
DAVID W. BROWN
WALTER F. BROWN*
SUSANNA M. BUERGEL
JESSICA S. CAREY
DAVID CARMONA
GEOFFREY R. CHEPIGA
ELLEN N. CHING
WILLIAM A. CLAREMAN
LEWIS R. CLAYTON
YAHONNES CLEARY
JAY COHEN
KELLEY A. CORNISH
CHRISTOPHER J. CUMMINGS
THOMAS V. DE LA BASTIDE III
MEREDITH R. DEARBORN*
ARIEL J. DECKELBAUM
KAREN L. DUNN
ALICE BELISLE EATON
ANDREW J. EHRLICH
GREGORY A. EZRING
ROSS A. FIELDSTON
ANDREW C. FINCH
BRAD J. FINKELSTEIN
BRIAN P FINNEGAN
ROBERTO FINZI
PETER E. FISCH
HARRIS FISCHMAN
ANDREW J. FOLEY
VICTORIA S. FORRESTER
HARRIS B. FREIDUS
CHRISTOPHER D. FREY
MANUEL S. FREY
ANDREW L. GAINES
KENNETH A. GALLO
MICHAEL E. GERTZMAN
ADAM M. GIVERTZ
SALVATORE GOGLIORMELLA
NEIL GOLDMAN
MATTHEW B. GOLDSTEIN
ROBERTO J. GONZALEZ*
CATHERINE L. GOODALL
CHARLES H. GOOGE, JR.
ANDREW G. GORDON
BRIAN S. GRIEVE
UDI GROFMAN
NICHOLAS P GROOMBRIDGE
BRUCE A. GUTENPLAN
MELINDA HAAG*
ALAN S. HALPERIN
CLAUDIA HAMMERMAN
BRIAN S. HERMANN
JOSHUA HILL JR.
MICHELE HIRSHMAN
JARRETT R. HOFFMAN
ROBERT HOLO
DAVID S. HUNTINGTON
AMRAN HUSSEIN
LORETTA A. IPPOLITO
WILLIAM A. ISAACSON*
JAREN JANGHORBANI
BRIAN M. JANSON
JEH C. JOHNSON
BRAD S. KARP
PATRICK N. KARSNITZ
JOHN C. KENNEDY
BRIAN KIM
KYLE J. KIMPLER
JEFFREY L. KOCHIAN
ALEXIA D. KORNBERG
ALAN W. KORNBERG
DANIEL J. KRAMER
CAITH KUSHNER
DAVID K. LAKHDHIR
GREGORY F. LAUFER
BRIAN C. LAVIN
XIAOYU GREG LIU
RANDY LUSKEY*
LORETTA E. LYNCH
JEFFREY D. MARELL
MARCO V. MASOTTI
DAVID W. MAYO
ELIZABETH R. MCCOLM
JEAN M. MCLOUGHLIN
ALVARO MEMBRILLERA
MARK F. MENDELSOHN
CLAUDINE MEREDITH-GOUJON
WILLIAM B. MICHAEL
JUDIE NG SHORTELL*
CATHERINE NYARADY
JANE B. O'BRIEN
BRAD R. OKUN
LINDSAY B. PARKS
ANDREW M. PARLEN
DANIELLE C. PENNALL
CHARLES J. PESANT
JESSICA E. PHILLIPS*
AUSTIN S. POLLET*
VALERIE E. RADWANER
JEFFREY J. RECHER
CARL L. REISNER
LORIN L. REISNER
JEANNIE S. RHEE*
WALTER G. RICCIARDI
RICHARD A. ROSEN
ANDREW N. ROSENBERG
JUSTIN ROSENBERG
JACQUELINE P RUBIN
CHARLES F. "RICK" RULE*
RAPHAEL M. RUSSO
ELIZABETH M. SACKSTEDER
JEFFREY D. SAFERSTEIN
JEFFREY B. SAMUELS
KENNETH M. SCHNEIDER
ROBERT B. SCHUMER
JOHN M. SCOTT
BRIAN SCRIVANI
KYLE T. SEIFRIED
KANNON K. SHANMUGAM*
CULLEN L. SINCLAIR
AUDRA J. SOLOWAY
SCOTT M. SONTAG
SARAH STASNY
TARUN M. STEWART
ERIC ALAN STONE
AIDAN SYNNOTT
BRETTE TANNENBAUM
RICHARD C. TARLOWE
DAVID TARR
MONICA K. THURMOND
DANIEL J. TOAL
LAURA C. TURANO
CONRAD VAN LOGGERENBERG
KRISHNA VEERARAGHAVAN
JEREMY M. VEIT
LIZA M. VELAZQUEZ
MICHAEL VOGEL
RAMY J. WAHBEH
JOHN WEBER
LAWRENCE G. WEE
THEODORE V. WELLS, JR.
LINDSEY L. WIERSMA
STEVEN J. WILLIAMS
LAWRENCE I. WITDORCHIC
AUSTIN WITT
MARK B. WLAZLO
ADAM WOLLSTEIN
JULIA TARVER MASON WOOD
JENNIFER H. WU
BETTY YAP*
JORDAN E. YARETT
KAYE N. YOSHINO
TONG YU
TRACEY A. ZACCONE
TAURIE M. ZEITZER
T. ROBERT ZOCHOWSKI, JR.

*NOT ADMITTED TO THE NEW YORK BAR

September 9, 2022

## By ECF

Hon. Ann M. Donnelly
United States District Court
Eastern District of New York
225 Cadman Plaza East, Courtroom 4GN
Brooklyn, New York 11201

*Does et al* v. *Hochul et al,* No. 1:21-cv-05067-AMD-TAM (E.D.N.Y.)

Dear Judge Donnelly:

We write jointly on behalf of Defendants in the above-captioned matter to briefly respond to two points raised in Plaintiffs' September 7, 2022 letter (ECF No. 103) purporting to distinguish the District of Maine's recent decision in *Lowe* v. *Mills*, No. 1:21-cv-242-JDL, 2022 WL 3542187 (D. Me. Aug. 18, 2022), in which the court dismissed claims identical to those asserted in this action. Plaintiffs' attempt to distinguish *Lowe* is unavailing because their arguments are both contrary to Second Circuit law and contradicted by the allegations of their Complaint.

*First*, with respect to Plaintiffs' Title VII claim, the Second Circuit has squarely held that dismissal at the pleading stage of such a claim on undue hardship grounds is appropriate where, as here, it is apparent from the face of the complaint that granting the accommodation sought would cause the employer to violate the law. *See Lowman* v. *NVI LLC*, 821 F. App'x 29, 31 (2d Cir. 2020). None of the cases cited in Plaintiffs' letter undermine that established principle. Nor do Plaintiffs' allegations leave any doubt that the relief they seek—to continue working in an unvaccinated state in their patient- and staff-facing positions—is expressly prohibited by the DOH Mandate. Even with masking and testing (the only accommodations referenced in the Complaint), the relief sought by Plaintiffs would be impermissible under state law and, therefore, not a reasonable accommodation under Title VII. *See, e.g.*, ECF No. 1 ¶¶ 8, 70–77 (indicating that the accommodation sought was an exemption from the State's requirement that patient- and staff-facing employees be vaccinated against COVID-19); *id.* ¶ 4 ("The dispute in this case is not about what accommodations are available to Plaintiffs or whether accommodation of Plaintiffs' sincerely held religious objections can be conditioned on compliance with certain reasonable requirements."). Indeed, there are no factual allegations in the Complaint concerning the individual Plaintiffs' job duties, about their individual accommodation requests, or about any requested relief that would not involve violating the DOH Mandate.

*Second*, as for Plaintiffs' First Amendment arguments that the DOH Mandate is neither neutral nor generally applicable and that the circumstances of its enactment reflect a hostility towards religion, these very same arguments were made by the plaintiffs—and flatly rejected by the Second Circuit—in *We The Patriots USA, Inc.* v. *Hochul*, 17 F.4th 266, 281–84 (2d Cir.), *reaffirmed by* 17 F.4th 368 (2d Cir. 2021), *cert. denied sub nom. Dr. A.* v. *Hochul*, 142 S. Ct. 2569 (2022). The *New Hope* case cited by Plaintiffs concerns an entirely different statute and provides absolutely no basis for this Court to disregard the reasoning in *We The Patriots*, a controlling decision that requires dismissal of Plaintiffs' First Amendment claim.

Defendants remain prepared to discuss this supplemental authority and to answer any questions the Court may have.

Respectfully submitted,

By: */s/ Liza M. Velazquez*

PAUL, WEISS, RIFKIND, WHARTON &
GARRISON LLP
Bruce Birenboim
Michael E. Gertzman
Liza M. Velazquez
Gregory F. Laufer
Jonathan Hurwitz
Emily A. Vance
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000

PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP

3

Fax: (212) 757-3990
bbirenboim@paulweiss.com
mgertzman@paulweiss.com
lvelazquez@paulweiss.com
glaufer@paulweiss.com
jhurwitz@paulweiss.com
evance@paulweiss.com

*Attorneys for NewYork-Presbyterian
Healthcare System, Inc.*

cc:    All counsel by ECF

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| JOHN DOES 1-2, *et al.* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 1:21-CV-05067-AMD-TAM |
| | ) | |
| KATHY HOCHUL, in her official capacity as | ) | |
| Governor of the State of New York, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>NOTICE OF APPEAL</u>

Pursuant to Fed. R. App. P. 3 and 28 U.S.C. §1291, Plaintiffs hereby notice their appeal to the United States Court of Appeals for the Second Circuit from this Court's Order on Defendants' Motions to Dismiss (ECF No. 105), which was issued September 30, 2022, and the Judgment of Dismissal (ECF No. 106), which was issued on September 30, 2022.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver*
Horatio G. Mihet*
Roger K. Gannam*
Daniel J. Schmid*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email: court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
*Admitted pro hac vice

*Attorneys for Plaintiffs*

1

```
 1   UNITED STATES DISTRICT COURT
     EASTERN DISTRICT OF NEW YORK
 2
     ------------------------------x
 3                                        21-CV-5067(AMD)
     JOHN DOES, et al.,
 4                                        United States Courthouse
               Plaintiffs,               Brooklyn, New York
 5
               - versus -                 August 2, 2022
 6                                        2:30 p.m.
     KATHY HOCHUL, et al.,
 7
               Defendants.
 8
     ------------------------------x
 9

10           TRANSCRIPT OF CIVIL CAUSE FOR MOTION HEARING
               BEFORE THE HONORABLE ANN M. DONNELLY
11                 UNITED STATES DISTRICT JUDGE

12
     APPEARANCES
13
     Attorney for Plaintiff:  LIBERTY COUNSEL
14                            1053 Maitland Center Commons Blvd
                              Maitland, Florida 32751
15                            BY:  ROGER GANNAM, ESQ.
                                   HORATIO G. MIHET, ESQ.
16

17
     For the Defendant:       STATE OF NEW YORK
18   Kathy Hochul             OFFICE OF THE ATTORNEY GENERAL
                              28 Liberty Street
19                            New York, New York 10005
                              BY:  SETH J. FARBER, ESQ.
20

21
     Attorney for Defendant:  PAUL, WEISS, RIFKIND,
22   New York Presbyterian    WHARTON & GARRISON LLP
                              1285 Avenue of the Americas
23                            New York, New York 10019-6064
                              BY:  LIZA M. VELAZQUEZ, ESQ.
24                                 EMILY VANCE, ESQ.

25
```

MOTION HEARING                    2

```
 1
    APPEARANCES:  (CONTINUED)
 2
    Attorney for Defendant:  GARFUNKEL, WILD, P.C.
 3  Westchester Medical       111 Great Neck Road
                              Suite 503
 4                            Great Neck, New York 10021
                              BY:  MARC A. SITTENREICH, ESQ.
 5

 6
    Court Reporter:          SHERNELLE GRIFFITH
 7                           225 Cadman Plaza East
                             Brooklyn, New York 11201
 8                           Phone:  718-613-2567
                             shernelle.griffith.edny@gmail.com
 9

10  Proceedings recorded by mechanical stenography.  Transcript
    produced by computer-aided transcription.
11

12                          *          *          *

13

14            (In open court.)

15            THE COURTROOM DEPUTY:  This is civil cause for a

16  motion hearing.  Docket No. 21-CV-5067, Does, et al. versus

17  Hochul, et. al.

18            Counsel, state your appearances, plaintiff's first.

19            MR. GANNAM:  Good afternoon.  Roger Gannam for the

20  plaintiffs.

21            THE COURT:  Do you mind turning on your microphone.

22  Thank you so much.

23            MR. GANNAM:  Roger Gannam for the plaintiffs.  I'm

24  joined by Horatio Mihet.

25            THE COURT:  Good afternoon.
```

MOTION HEARING                    3

1          MS. VELAZQUEZ:  Good afternoon, your Honor.

2          Liza Velazquez from Paul Weiss for New York

3     Presbyterian Healthcare.  And with me is my colleague Emily

4     Vance.

5          THE COURT:  Good afternoon.

6          MR. FARBER:  Good afternoon, your Honor.

7          Seth Farber from the New York Attorney General's

8     Office, appearing for Governor Hochul and Commissioner

9     Bassett.

10         THE COURT:  Good afternoon.

11         MR. SITTENREICH:  Good afternoon.

12         Marc Sittenreich for the defendant Westchester

13    Medical Center Advanced Physician Services, P.C.

14         THE COURT:  Good afternoon.

15         So just a couple of things.  I think only New York

16    Presbyterian requested an oral argument, but if anybody --

17    anybody can argue if they want to, but you don't have to.

18         Am I right about that though?

19         MS. VELAZQUEZ:  Correct, your Honor.

20         THE COURT:  So if you want to say something, I'm

21    fairly informal about these things.  So if anybody wants to

22    chime in on anything, that's completely fine.

23         One thing I am going to ask though is that you just

24    be mindful of speaking slowly and into the microphone.  The

25    masks complicate it for all of us, especially for our court

*SHERNELLE GRIFFITH – Official Court Reporter*

MOTION HEARING                    4

1    reporter.  If we talk too fast or too quietly, it makes her

2    job a little harder, so I just ask you to keep that in mind.

3            Just a couple of housekeeping things before we move

4    to the substance of the oral argument.  I think I'm right, but

5    the current status of the rule was that in June it was

6    extended; is that right?  Is it 2.61?

7            MR. FARBER:  Yes, your Honor.

8            I've been advised by the Department of Health that

9    it is now a permanent regulation.

10           THE COURT:  I see.

11           MR. FARBER:  No longer an emergency regulation

12   subject to renewal.  It's now permanent.

13           THE COURT:  Okay.  And just another bit of

14   housekeeping.  There was a request for a preliminary

15   injunction, which I think is moot now given the Second

16   Circuit's decision.  And I think the Supreme Court denied your

17   application, so I don't want to take on any more work than we

18   have to do, but I think that's been resolved by the Second

19   Circuit's decision; is that right?

20           MR. GANNAM:  Your Honor, the plaintiffs would

21   disagree that it is moot.  It may well be inevitable.

22   However, the Second Circuit's ruling, as we intended to argue

23   today, was based on the predominantly lack of factual

24   development of the record before it.  It doesn't necessarily

25   foreclose --

1          THE COURT:  I think you must have misunderstood me.

2     I'm just talking about there was a request before me.  The

3     same request that the Circuit already decided.  I'm talking

4     about the temporary restraining order preliminary injunction.

5          MR. GANNAM:  Yes, your Honor.

6          The preliminary injunction that the Second Circuit

7     ruled on from the two cases, *We the Patriots* and Dr. A is, of

8     course, is very similar to ours.  And in those cases the

9     Second Circuit said that the plaintiffs had not yet produced

10    sufficient evidence for several points and remanded it and

11    suggested that the plaintiffs may yet establish those facts.

12    I could compare those cases to ours as far as everything

13    that's in the record, but my point is that it may well be that

14    under that case, our preliminary injunction is due to be

15    denied, but we don't necessarily think it is moot because our

16    record could be different, could be better than theirs.

17         THE COURT:  It is what it is already.  I mean, I

18    think it's most important to focus on the more salient issues.

19    I mean, if you want to spend time talking about a preliminary

20    injunction where the Second Circuit has astoundingly ruled

21    that under those circumstances that the preliminary injunction

22    isn't warranted, I guess we can have that discussion; but that

23    seems like a colossal waste of time to me.  Because if I were

24    to say, here in my lonely position as a District Judge, that

25    Circuit was wrong, I have a feeling that they'd have something

MOTION HEARING                          6

1    to say about that.  I just don't think it's a good use of our

2    time.  And especially, I just can't envision how that would

3    happen.  Unless I really went rogue, which is not my plan,

4    so...

5            MR. GANNAM:  Your Honor, I don't disagree with

6    anything you just said.  I guess, my -- our point is that we

7    don't agree that it is moot, but it is likely inevitably due

8    to be denied under the findings of the Second Circuit.

9            THE COURT:  I see.  So based on the Second Circuit's

10    decision, unless you want to be heard further on it, I am

11    denying the request for preliminary injunction.  I just think

12    it's inevitable.

13            MR. GANNAM:  We don't wish to be heard further, your

14    Honor.

15            THE COURT:  You don't?

16            MR. GANNAM:  We don't wish to be heard further.

17            THE COURT:  Okay.  Thanks.  Sorry for the confusion

18    on that.

19            All right.  Then a couple of other things, just, you

20    know, the practical questions.  I mean, there's this issue of

21    accommodation versus exemption.  I don't know how many -- I

22    know we have the John Doe 2 and Jane Doe 1.  I don't know if

23    anybody -- what the current factual situation is.  I assume

24    that these things seem to be fairly fluid.  I don't know if

25    anybody, for example, has been fired.  I don't know if you've

1    been able to work out religious accommodations versus

2    exemptions.

3           And again, just in terms of the Circuit's decision,

4    they were pretty explicit they weren't deciding the merits of

5    the litigation, but they were also pretty clear about the

6    accommodation exemption situation.  So I don't know what that

7    landscape is right now.  And I think it might be good if you

8    can just -- is there anything new that I should know about

9    that's different from when you filed the lawsuit last year?

10          MR. GANNAM:  Your Honor, all the plaintiffs have

11   been fired at this point.  So none of them remain employed by

12   the defendant employers.  And I should also say that we still

13   await, and I realize I'm outside of the complaint at this

14   point, but we still await right to sue letters from the EEOC

15   for Title VII claims for all the plaintiffs.

16          THE COURT:  So I guess we can talk about that.

17   Don't you have to have the right to sue letter before you

18   bring the lawsuit?

19          MR. GANNAM:  No, your Honor.

20          We cited authority in our complaint where there is

21   an approachable and irreparable harm that the suit can be

22   filed in advance of receiving the right to sue letter.  It is

23   not a jurisdictional bar.  Certainly the case law also says

24   that a suit filed before the right to sue letter is subject to

25   dismissal, but it's not a requirement.  And we would argue in

MOTION HEARING                     8

1    this case given the nexus of the claims against of State and

2    the private employers, it would not do any service to the

3    Court, the Court would not achieve any efficiency to dismiss

4    those claims without prejudice now rather than to either

5    consider them held in abeyance.  I mean, there's no trial date

6    approaching.  There's nothing that threatens our ability to

7    just let those claims ride anticipating that those right to

8    sue letters will be issued.  We just can't make the EEOC act

9    any faster.

10            THE COURT:  Do you want to be heard on that?

11            You can stay seated.  I think it's so much easier to

12   use the microphone.

13            MR. GANNAM:  Will do, you Honor.  Thank you.  Again,

14   Liza Velazquez from the Paul Weiss law firm for New York

15   Presbyterian.

16            You know, obviously it's clear that plaintiffs have

17   admitted that they have failed to exhaust their administrative

18   remedies before filing this lawsuit.  That is a prerequisite,

19   you know, really under law of this Circuit.  It's well

20   established that Title 7 requires the plaintiff to exhaust

21   before filing suit.  Many courts in this Circuit have held

22   that a court should dismiss a Title VII claim where it is

23   clear that plaintiff has not exhausted administrative remedies

24   before filing suit.

25            In *Doe v Hochul*, which is a very similar case, the

MOTION HEARING                                    9

1   District Court dismissed the plaintiff's Title VII claim

2   against Our Lady of Lourdes Hospital.  Because in that case,

3   the complainant alleged that the plaintiffs had filed EEOC

4   charges and requested right to sue letters, but have not

5   received them.  There are several other cases that we can cite

6   to this point.

7           In _Selimovic v. South Side Associates_.

8           THE COURT:  I just want to make sure that our court

9   reporter can get the spelling of that.

10          MS. VELAZQUEZ:  _Selimovic,_ S-E-L-I-M-O-V-I-C, _versus_

11  _South Side Associates,_ 2020 WL 2522117, that's an Eastern

12  District of New York case dated May 18, 2020.  Chief Judge

13  Mauskopf found that where plaintiffs conceded that he had

14  failed to exhaust administrative remedies as plaintiffs have

15  conceded here before bringing a Title VII action.  The Court

16  was ordered to show cause in writing within 30 days why the

17  action should not be dismissed.

18          There are other cases.  _Arnold versus Research_

19  _Foundation for SUNY_, 216 F.Supp.3d 275, Eastern District of

20  New York 2016.  Judge Spatt denied plaintiff's motion to amend

21  the complaint to add a Title VII claim because it would be

22  futile given the failure to exhaust.

23          THE COURT:  That was Judge Spatt?

24          MS. VELAZQUEZ:  That was Judge Spatt, your Honor.

25          And _Syeed v. Bloomberg L.P._, another recent case,

1   568 F.Supp.3d 314 Southern District of New York, October 25,

2   2021.  In that case, Judge Wood dismissed the Title VII claim

3   for failure to exhaust, notwithstanding plaintiff's receipt of

4   the right to sue letter after filing the complaint.

5            It's clear under Second Circuit case law *Fowlkes v.*

6   *Ironworkers Local*.

7            THE COURT:  Folks?

8            MR. GANNAM:  *Fowlkes*, F-O-W-L-K-E-S, versus

9   Ironworkers Local, 790 F.3d 378, Second Circuit 2015.

10           And *Legnani*, L-E-G-N-A-N-I, versus Alitalia Linee

11  Aeree Italiane, 274 F.3d 683 (2d Cir. 2001), that a plaintiff

12  is obligated to exhaust administrative remedies before filing

13  suit.  And the fact that these plaintiffs have conceded that

14  they have not done this, requires the dismissal of this

15  lawsuit.

16           THE COURT:  So just as a practical matter, if -- I

17  mean, I agree.  I have to say that I've never had a case where

18  they haven't been, the remedies of an exhaustion requirement

19  hasn't been met.  And so, as a practical matter, if the

20  plaintiffs were -- it would be a dismissal without prejudice,

21  I assume.  And then once they got the right to sue letters

22  then they could refile the suit; is that right?

23           MR. GANNAM:  Yes, your Honor.

24           And the difference I would want to you point out, in

25  this case we sought preliminary injunctive relief when the

1    case was filed.  And under the authority of *Sheehan v.*

2    *Purolator*, which is a Second Circuit case from 1981.

3              THE COURT:  Sheehan verses?

4              MR. GANNAM:  Purolator.

5              THE COURT:  Okay.

6              MR. GANNAM:  In that case it was specifically held

7    that where the administrative agency has the first crack at

8    it, but there was some pending irreparable harm that the Court

9    could remedy under its power, that it was proper to file suit

10   before receiving the right to sue letter.  Now, what happened

11   next isn't dictated by that case, but in this case as long

12   there are claims against the private employers that remain,

13   then it wouldn't make much sense for us to proceed with those

14   claims, do discovery, only to have the Title VII claims

15   brought back in later.  When as soon as those right to sue

16   letters are issued, it cures the defect and that can happen

17   while the case is pending.  It doesn't have to be dismissed

18   even if dismissal would otherwise be proper.  It doesn't have

19   to be dismissed.  The Court has the discern to essentially

20   hold those claims in abeyance.  But we can do discovery

21   because all of the claims arise out of the same set of

22   operative facts.

23             THE COURT:  And I don't know what the average time

24   is to get a right to sue letter, but this lawsuit has been

25   filed for a good little while.  I don't have any recollection

1  of how long it takes, but do you have some insight into that?

2          MR. GANNAM:  It's supposed to be within 180 days,

3  but the EEOC can take additional 180 days.  We are into that

4  second 180 days now.  So we can say that we expect it any

5  minute, really, but we don't know and they won't tell us.

6          THE COURT:  And, you know, the right to sue and it's

7  not just a hurdle for you to -- it has important reasons for

8  it, and the courts are pretty strict about it.  But let me

9  just ask the defendants, if the plaintiffs, let's say, while

10 we're sitting here in this courtroom, that the EEOC gives them

11 the right to sue letter, what should we do then?

12         MR. GANNAM:  Your Honor, I think it's pretty clear

13 that under Second Circuit case law, that the case should be

14 dismissed.  They have not exhausted their administrative

15 remedies. Sheehan does not stand, respectfully, for the

16 proposition for which it has been put forward, your Honor.

17         In that case, the Circuit addressed a narrow

18 question of whether federal courts have jurisdiction to issue

19 temporary injunctive relief to preserve the status quo.  Here,

20 what plaintiffs are seeking to do, frankly, is to alter the

21 status quo.  What they are seeking, and this is why we think

22 actually, you know, it actually does not make sense to wait.

23 I mean, I think under Second Circuit case law, respectfully,

24 the Court is required to dismiss.  But I do believe this case,

25 this particular lawsuit, should be dismissed with prejudice.

MOTION HEARING                                      13

1        Because what they are asking you to do is issue a

2    legal ruling that flies in the face of the Second Circuit

3    decision in *We the Patriots*.  *We the Patriots* made very, very

4    clear that the Department of Health mandate is not preemptive

5    by Title VII.  That it does not conflict with Title VII.  You

6    look at the complaint, there are no specific factual

7    allegations about the individual employment circumstances of

8    any of these plaintiffs.  Instead, sort of a group of

9    plaintiffs who were employed by several different hospitals

10   have sued the hospitals and the State pretty squarely seeking

11   a legal ruling that these hospitals should be held liable for

12   complying with state law.

13        And you don't have to take my word for it.  I mean,

14   it's clear from the complaint.  Paragraph 4, "The dispute in

15   this case is not about what accommodations are available to

16   plaintiffs.  And, in fact, plaintiffs have made this clear in

17   no fewer than two briefs that they filed before the magistrate

18   judge in connection with their motion to proceed by

19   pseudonym."  This is from their moving brief, "This case is

20   not about whether plaintiffs religious beliefs are sincere nor

21   about whether individual defendants can accommodate plaintiffs

22   religious beliefs without undue burden.  This case is only

23   about the existence of federal protections for religious

24   objectors in New York, and that is a purely legal question

25   that does not depend at all on the identity of the

1   plaintiffs."

2          And that's from ECF 41 at page nine.  And it was in

3   fact cited by Magistrate Judge Merkl in her March 18, '22

4   opinion.  "This case involves purely legal issues about the

5   legality of defendants across of the board, categorical denial

6   of all religious exception irrespective of any individual

7   traits of any individual plaintiff." That's from ECF number 72

8   at page 15 also cited in Magistrate Merkl's opinion.

9          So, I guess, to sum it up your Honor, not only is

10  their complaint, their Title VII claim, not properly before

11  this Court, you can see that they failed to exhaust before

12  filing this lawsuit.  But frankly, it would be futile to wait

13  and to let them amend to bring a lawsuit which flies in the

14  face, in the teeth, of the Second Circuit's ruling in *We the*

15  *Patriots*.

16         THE COURT:  I do have one question and maybe this

17  isn't pertinent to what we are discussing, but the Second

18  Circuit also made it pretty clear particularly in their kind

19  of little second opinion, clarifying opinion, about the

20  question of accommodation versus exemption.

21         Am I just correct to say that your view is that you

22  don't want -- your clients didn't want an accommodation.  For

23  example, not working directly with, you know,

24  immunocompromised patients, let's say, people who could catch

25  COVID.  Your view is that because of the religious objection,

1    your clients were entitled to continue working even if it

2    meant working with people who were more susceptible to getting

3    COVID; is that correct?

4              MR. GANNAM:  No, your Honor.

5              What we pleaded is that all of our plaintiffs were

6    willing to adopt whatever conditions would be attached to any

7    exemption that they received.  For example, additional

8    personal protective equipment.  And the way we pleaded it

9    was --

10             THE COURT:  I'm just going to cut you off because I

11   know that part, but my specific question is if the

12   accommodation were -- do you want to consult for a second?

13   It's totally fine.

14             MR. GANNAM:  That's fine.

15             THE COURT:  If the accommodation were working

16   remotely, that's not something that you are willing to do?

17             MR. GANNAM:  That is not true, your Honor.

18             THE COURT:  Okay.

19             MR. GANNAM:  The crux of our claims is that no

20   consideration whatsoever was allowed by any of the employers.

21   Whether we call it an exemption or accommodation, I think as

22   we use those words, there's not much difference, not in the

23   precise way that the Second Circuit laid them out.  What the

24   Second Circuit said is an exemption would be business as

25   usual.  An accommodation would be something other than that.

MOTION HEARING                16

1   Some change to accommodate the beliefs, but without firing.

2   When we talk about --

3           THE COURT:  Well, I think they were interpreting

4   your -- well, not you, the plaintiffs in that case, what their

5   position was.

6           Is yours different than theirs?

7           MR. GANNAM:  Well, I haven't read their pleading, so

8   I don't know how they set it up.  But when we say exemptions,

9   I think we're clear in our complaint that that could be

10  exemptions with conditions imposed by the employer, which is

11  what I think the Second Circuit meant by an accommodation.

12  We're not tied to one word or the other.  Our point is that no

13  accommodation was even offered.

14          I'll give an example.  Our John Doe 2, who works for

15  New York Presbyterian, was a remote employee.  His

16  accommodation request after he was -- he had an accommodation

17  or an exemption, I believe they called it an exemption.  Then

18  when it was revoked following the Government's rule, he asked,

19  Well, what about me?  I'm 100 percent remote.  And they said,

20  We're not making any changes or special considerations for

21  people who are remote.  That's just an example.  Not all of

22  the plaintiffs were in that situation.

23          The point of our lawsuit is that they denied any

24  consideration whatsoever of any kind of accommodation,

25  exception, whatever you might call it.  It was, there is no

1   consideration or religious exemption to the vaccine at all.

2   And they claim that they were required to take that position

3   by the rule.  The Second Circuit has made it clear that's not

4   the case.  There is room for the accommodation on the face of

5   the rule, as the Second Circuit interpreted it, but no

6   accommodation that would have followed that line of reasoning

7   was offered either.

8           So when we say that this is a case about a question

9   of law, we think Title VII requires the employer to engage in

10  some process with the employee to offer or explore an

11  accommodation that maybe possible.  That was not done here.

12  And that's what we mean by this is really a question of law.

13  We think the employers had to do that, at least.  Even if at

14  the end of the day the accommodation they offered was not

15  something that one of the plaintiffs would have accepted, the

16  plaintiff was entitled to that process and to get to that

17  point.  Instead what they got was an across the board, there

18  is no consideration at all.

19          THE COURT:  Well, I'm sure you'll set me straight on

20  this, but I think one of the reasons would probably be -- I

21  mean, it's also clear that an employer is not required to

22  offer an accommodation that's not reasonable.  And it could be

23  that, you know, healthcare workers working remotely isn't

24  something that's reasonable.  I don't know if that's what your

25  position is, but...

MOTION HEARING                    18

1          MS. VELAZQUEZ:  Your Honor, I think that, you

2     know -- two points, I guess.  You know, one, you know -- and

3     respectfully, Mr. Gannam is arguing facts that are not pled in

4     the complaint.  There are no specific factual allegations

5     regarding the individual circumstances of John Doe 2.  And

6     that's why it is the EEOC should be the one to look at the

7     facts of each of these plaintiffs claims first before a

8     lawsuit is filed.

9          And again, you know, I just -- you know, read from

10    their complaint, "The dispute in this case is not about what

11    accommodations are available to plaintiffs or whether

12    accommodations of plaintiffs sincerely has religious

13    objections can be conditioned on compliance with certain

14    reasonable requirements."  Paragraph 75 of their complaint,

15    "Plaintiffs alleged that masking and testing protocols remain

16    sufficient to prevent the spread of Covid-19 among healthcare

17    workers and constitute a reasonable alternative to vaccination

18    as an accommodation of sincerely held religious beliefs."

19          Also, their prayer for relief is similar.  I

20    appreciate that given the Second Circuit's decision, they are

21    seeking to perhaps change the theory of their complaint, but I

22    think they should be held to the complaint that they have

23    pled.  They have been on notice of the deficiencies in the

24    pleading for months now.  Frankly, they've declined the

25    Court's invitation to amend.  I do think these claims should

1    be dismissed with prejudice.

2            THE COURT:  Anything else you want to say about

3    that?

4            MR. GANNAM:  Yes, your Honor.

5            Certainly counsel is reading accurately from our

6    papers.  But when we say, this isn't about the accommodations.

7    It's because there wasn't an unacceptable accommodation

8    offered that we are challenging.  It is that there were none

9    offered.  That's the point that we were trying to make, your

10   Honor.

11           THE COURT:  I think what she's saying is that it's

12   not in the complaint.  The thing about the accommodation.  I

13   just think for you to just sort of a general proposition, I've

14   got to decide a motion to dismiss the complaint based on the

15   complaint that's before me.  I think I did, we did talk about

16   amending it at one point and you decided you didn't want to do

17   it.

18           MR. GANNAM:  Your Honor, at that time we didn't have

19   any guidance from the Second Circuit or whatever guidance the

20   Supreme Court was offering.

21           THE COURT:  But I think that that decision was made

22   a long time ago, the Second Circuit's decision.  And I think,

23   my memory is not that fantastic and this is not my only case,

24   but I have a recollection that we did have a conversation

25   about that.  One of the things that, and correct me if I'm

1    wrong, but one of the things that plaintiffs were waiting for

2    was to see whether the Supreme Court would grant an emergency

3    relief and whether they would grant a petition for a writ of

4    certiorari.  And I think the denial of relief was in December

5    and the denial of the certiorari was more recently made within

6    the last three weeks or so.

7           And so, I thought we did have that conversation

8    about amending the complaint and you said that you didn't want

9    to do it.

10          MR. GANNAM:  May I be heard on that point?

11          THE COURT:  Sure, of course.

12          MR. GANNAM:  I think your memory is correct.  It was

13   the anticipation of possible action by the Supreme Court, not

14   the Second Circuit that we wanted to wait for.  But we also

15   wanted the benefit of the Court's analysis for the grounds of

16   dismissal that the defendants offered.  If perhaps looking

17   back it would have been more prudent to amend then, but not

18   amending then does not foreclose amendment now.

19          THE COURT:  Well, here's what I don't want to do, I

20   don't want to write a decision and then have you move to amend

21   the complaint after I write the decision.  That seems to me

22   like a colossal waste of time.  Well, at least it's a waste of

23   my time.

24          But, I mean, if there is some motion that you want

25   to make to amend your complaint, it's possible that time has

1   past for that since it's briefed, since the issue has been

2   briefed for quite sometime.  And I'm not sure I would grant

3   the motion to amend the complaint.  Nobody's asked me to, so I

4   haven't really thought about it.  But it's a little late in

5   the day for that, I think, just under these circumstances,

6   but, you know, again that's not before me. I think it would be

7   extremely unlikely that I would permit an amendment of the

8   complaint after I have made a decision, particularly since

9   you're on notice of what the arguable deficiencies in your

10  arguments are.  I think I would probably be well within my

11  discern to deny such an application.  May be I wouldn't be,

12  but I think I probably would be.

13          MR. GANNAM:  May I be heard?

14          THE COURT:  Sure.

15          MR. GANNAM:  Just briefly, your Honor.

16          It is our intention to request -- and I plan to say

17  this at the end of our argument.  Should the Court be inclined

18  to dismiss any of our claims, that we would be granted to

19  amend.  We think the rules on amendment, especially after a

20  first dismissal, are quite liberal.  I can't say that we are

21  entitled to it, but certainly the law favors allowance of

22  amendment after one dismissal on a motion to dismiss, on a

23  §12(b)(6) motion.

24          So that is, our position is that we should be given

25  leeway and we do request it to the extent that the Court

MOTION HEARING                    22

1    dismisses any of our claims.

2            THE COURT:  Do you want to be heard on that?

3            MS. VELAZQUEZ:  Yes, your Honor.

4            You know, we talked about them and the Title VII

5    claim.  Obviously, each of these plaintiffs need to receive

6    right to sue letters.

7            THE COURT:  This is a really dumb question and I'm

8    so sorry to cut you off, but how many plaintiffs are we

9    actually talking about?  It's all confusing to me because

10   there's no specificity as to the Jack Does.  There's nothing

11   and may be something happened that I just overlooked, but how

12   many plaintiffs are we actually talking about?

13           MR. GANNAM:  Just five, your Honor.

14           THE COURT:  Oh, five.  Okay.

15           MS. VELAZQUEZ:  Three different employers, your

16   Honor.

17           THE COURT:  Right.  Right.  Right.  But there was a

18   time -- I don't think I'm making this up, but there were a

19   whole host of other people that were really never specified.

20   But they're gone now, right?

21           MR. GANNAM:  We put them simply as placeholder

22   names, but they are not present in the suit.

23           THE COURT:  I'm so sorry to interrupt.  Go ahead.

24           MS. VELAZQUEZ:  Not at all, your Honor.

25           Obviously, it would be fairly unusual for five

*SHERNELLE GRIFFITH – Official Court Reporter*

JA 281

MOTION HEARING                    23

1    plaintiffs who are employed by three different healthcare

2    systems to file a joint lawsuit.  And again, you know, I

3    really do think that this demonstrates that, you know, what

4    plaintiffs are really seeking here is a legal ruling that they

5    don't need to comply with the Department of Health mandate.

6    You know, once they get their right to sue letters, can they

7    individually file lawsuits based on the circumstances of their

8    employment.  You know, not conceding the merits of those

9    claims.  You know, sure, they can do that.

10            You know, but to talk about the other two claims

11   briefly, there is no cause of action on the Supremacy Clause.

12   I think your Honor covered that at the status conference back

13   in November.  And as your Honor also pointed out in the status

14   conference, you know, there really is no viable conspiracy

15   claim based on the hospital defendants' compliance with state

16   law.  There's no allegations in the complaint showing a

17   meeting of the minds.  Certainly not showing that New York

18   Presbyterian had any involvement in the enactment of the

19   Department of Health mandate.

20            So we do think it would be futile to amend at this

21   point.  New York Presbyterian, we are a nonprofit.  We have

22   invested considerable resources in responding to the

23   complaint.  Notwithstanding, you know, plaintiffs being put on

24   notice of the deficiencies in their legal theories.  And we do

25   think that it is time to put an end to this.

1        THE COURT:  Again, there's currently at least as I

2   see it, no application before me.  And so, I do think that

3   while the Second Circuit was careful to say that they were not

4   deciding the ultimate merits of the legal claims, there is

5   some pretty powerful language in there that it would be

6   difficult for a district judge to rule otherwise.  I mean, in

7   terms of the Supremacy Clause, for example.

8        And I think we did discuss this before.  I think the

9   conspiracy claim is probably not a winner.  Particularly

10   since, I mean, that would say that any time an entity like the

11   defendants complies with the state law they're subject to the

12   conspiracy claim.  I don't know that there is any evidence

13   beyond the fact that they just complied with the state law,

14   which they are required to do.  And that's my thinking on

15   that.

16        I'm not going to speak to what the motivations are.

17   I mean, this is a lawsuit that's in front of me.  I'm handling

18   it the way I handle any case.  But I do believe -- I mean, I

19   do think that, you know, efficiency is not a goal just in and

20   of itself, but in terms of permitting the parties to move on

21   and things like that.

22        At least as I see it right now, that what's left for

23   me to do, is to make a decision.  And we haven't discussed

24   every aspect of the complaint and of the motion.  And if

25   there's anything else that anybody else wants to say about it.

1   I'm just looking to see what questions I have.

2            This is really probably more of a question for the

3   State defendants, but sort of the larger question of just the

4   history of vaccines, of vaccine requirements.  And I know some

5   of the cases are quite old, but the Jacobson case,

6   Ms. Jacobson -- Jacobs.  I can't remember.  You know, people

7   getting vaccinated for all kinds of things like measles and

8   chicken pox and things like that.  And I just don't know to

9   what extent what your response is to some of those.  You know,

10  those are public health decisions that have been around for

11  quite sometime.

12           MR. GANNAM:  Your Honor, the Jacobson precedent we

13  believe does not foreclosure our claims.  Primarily because we

14  haven't pleaded or ever argued that vaccine mandates are

15  unconstitutional per se, that they are never appropriate.  Our

16  claim is based on the availability of a nonreligious exemption

17  or accommodation for those seeking medical exemption while

18  denying a religious exemption or accommodation when in our

19  view the risks are the same, at least to the patient

20  population and to the spread of COVID that --

21           THE COURT:  Well, let me just ask you a question

22  about that because it seems to me that I don't know if those

23  two are, if you're looking for a comparator.  If somebody has

24  a legitimate health condition that makes getting a vaccination

25  dangerous to them, I think the rule says that they get an

1  exemption.  I mean, because it would make the person unhealthy

2  to have the vaccination.  One of the stated goals of

3  legislation was to protect the healthcare workers, patients,

4  and people that were--  I can't remember all the personnel,

5  but from COVID.  But part of protecting the health of the

6  employees, I would assume would be not subjecting them to a

7  vaccine that could make them sick.  That's a much different

8  thing and its got a limited scope that it's only applicable as

9  long as the risk to the person's health exists.

10          That's, I think, a different thing than what your

11  clients are asserting.  It's not because -- it's obviously

12  their right.  The First Amendment right is an important one,

13  but nobody -- courts have never held that it trumps everybody

14  else's interest.  I don't see those as treating one group, one

15  similarly situated group, different than another.  I think

16  that's at least my take on it.

17          MR. GANNAM:  Your Honor, the Second Circuit said

18  that it was a reasonable argument.  That in terms of the

19  interest of stopping the spread of the disease, that an

20  unvaccinated person with a medical exemption poses the same

21  risk as an unvaccinated person with a religious exemption.

22  What the Second Circuit, I believe, said regarding that is

23  there is an additional interest asserted by the state and that

24  is to protect the health of the healthcare worker.

25          And there's two points on that.  One is, I don't

1   think to the extent that the state just wants to keep people

2   in the state healthy, just requiring healthcare workers to be

3   vaccinated would be grossly under-inclusive.  I think that the

4   point that the state --

5           THE COURT:  I don't think that's what they said.  I

6   think it was they want to keep them healthy, but they don't

7   want to deplete their supply of healthcare workers.

8           MR. GANNAM:  And that's my second point.  I think

9   the interest, the only interest that the state can assert is

10  availability.  We don't want our healthcare workers too sick

11  to work and do what they do.  But we believe that we are

12  entitled, we at least pleaded enough to be able to show that

13  through discovery that by firing everybody with a religious

14  exemption, that the availability is made worse not better by

15  allowing medical exemptions but denying religious exemptions.

16          In other words, if it is an availability issue, many

17  people have been fired because they weren't given a religious

18  exemption that we believe discovery would show that is worse

19  than the state simply, you know, provided them as far as

20  availability goes.  But we think that's a matter that is open

21  to prove.  And that's what the Second Circuit said is that

22  maybe it will turn out that that interest wasn't served by

23  this particular rule, but the plaintiffs are entitled to go

24  forward and try to prove it even if the District Court thinks

25  it's improbable.

MOTION HEARING                    28

1        THE COURT:  Did you want to respond to that at all?

2        MR. FARBER:  Yes, your Honor.

3        We cited a long line of cases besides Jacobson.  The

4    Zucht case, which is 100 years old.

5        THE COURT:  Can you just spell that?

6        MR. FARBER:  Certainly, your Honor.

7        Z-U-C-H-T versus King, 260 U.S. 174 from 1922.

8    Other cases include *Prince v. Massachusetts*, 321 U.S. 158 from

9    1944.  Now, in the Second Circuit case of *Phillips versus The*

10   *City of New York*, 775 F.3d.538 (2d Cir 2015).  In Phillips it

11   involved school children.  The Circuit held that a mandatory

12   vaccination requirement for school children does not violate

13   the free exercise clause.  And in that decision, the Circuit

14   held that New York could constitutionally require all children

15   be vaccinated in order to attend public school without any

16   religious exemption at all.

17       Similarly, I would cite a recent case from state

18   court, which is in our papers F.F., that's the letter F as in

19   Frank.  That is 194 A.D.2d 80 from the 3rd.

20       THE COURT:  Is it maybe Appellate Division 3rd --

21       MR. FARBER:  Appellate Division 3rd, your Honor.

22   Yes, I'm sorry.

23       THE COURT:  Okay.

24       MR. FARBER:  A.D.3d 80 (3d Dept 2021).  And in that

25   case, that was a challenge through the state legislature's

*SHERNELLE GRIFFITH – Official Court Reporter*

1   elimination of religious exemption to vaccine requirements for

2   public school attendance.  In a situation where for many years

3   New York did permit a religious exemption and then removed it.

4   In that case, the state Appellate Court held that the

5   legislature was entitled to make that determination.  That it

6   should not subject certain school children to unhealthy

7   conditions in order to otherwise allow religious exemption.

8           So these distinctions have been made by the courts

9   before, notwithstanding the importance of people's religious

10  beliefs.  Nonetheless, courts and including the Second Circuit

11  have consistently held that the state is entitled to protect

12  the public health.

13          THE COURT:  Let me just ask you a question just

14  about, what I think the issue is that the plaintiff's counsel

15  is raising, is that he says that he's entitled to prove

16  that -- what, I guess, I don't know to what extent the numbers

17  of people that assert medical exemptions versus the numbers of

18  people that assert religious exemptions are known and I'm not

19  sure it's not appropriate considered on a motion to dismiss

20  because I'm not sure that it is within the four corners of the

21  complaint.

22          But what about the claim that at this stage where,

23  you know, Court is required to assume the truth of the

24  well-pleaded factual allegations, not the legal allegations,

25  but the factual allegations.  He's saying that, you know,

MOTION HEARING                    30

1  discovery might show that -- I'm not sure what you're saying.

2  Oh, sorry.  That it's going to show that maybe the -- what are

3  you saying that it is going to show?  You probably will say it

4  a lot better than I will.

5          MR. GANNAM:  For one thing, your Honor, as *We the*

6  *Patriots* court held, it may show the difference between

7  granting all of the medical exemptions and all the religious

8  exemptions may be some negligible change in the risk to the

9  system that it doesn't justify allowing the medical, but

10  denying the religious.

11          THE COURT:  Let me just stop you.  I know I keep

12  interrupting you, but I just want to make sure that I don't

13  forget.  You know, it was always my understanding that it was

14  the plaintiffs, and we talked about this a little bit before,

15  but that it was the plaintiff's position that they were

16  entitled to be, for lack of a better word, front-facing

17  medical workers if they tested regularly and wore masks and

18  things like that.  But I guess my question for a private and

19  not the state, but for a hospital; you know, if a patient at

20  one of these places were to get sick, were to get COVID, and

21  the healthcare worker who was caring for the person wasn't

22  vaccinated, it seems to me that they would be subject to a

23  lawsuit.  No?

24          MR. GANNAM:  Well, as I have often said, you can

25  never stop someone from suing you, but I think there is a

*SHERNELLE GRIFFITH - Official Court Reporter*

1    severe proof problem there to prove that any particular

2    employee caused an infection to any patient.

3              THE COURT:  I guess.

4              MR. GANNAM:  Anyone in the hospital can get sick

5    because that's where sickness is.  To tie that to a particular

6    person, I think that would be quite difficult and I don't

7    think that kind of suit would be successful absent some very

8    compelling proof.

9              THE COURT:  Whether they'll be successful or not,

10   they're still going to have to defend against it.

11             But putting aside the question of lawsuits, one of

12   the missions of the hospital is to protect sick people.  And

13   it just seems to me this is sort of an overarching thing

14   making sure that the people who take care of them don't make

15   them sicker is important.  I don't think anybody's disputing

16   the severity of the COVID pandemic.  I don't think anybody is

17   saying that it is not a danger even to helping people, at

18   least at the time that this rule was enacted.  Maybe the

19   variants are less, you know, dangerous.  I actually don't

20   happen to know the answer to that question.  I don't think

21   there's any serious dispute that this was a legitimate health

22   concern.  You're not disputing that?

23             MR. GANNAM:  The concern certainly is legitimate.

24   We would dispute that it could be established factually that

25   an unvaccinated healthcare worker is more likely to transmit

1  the disease than a vaccinated healthcare worker.  That science

2  continues to develop and I know we're going off the complaint.

3  You know, Dr. Burke's is one of the most prominent figures in

4  the early pandemic said, we always knew it wouldn't really

5  stop transmission.  It was about reducing the severity of

6  symptoms in hospitalizations.

7          So the idea that transmission was affected by a

8  vaccinated status, we believe that is a factual issue that is

9  not set -- that is not settled and that would be something

10  that is part of the proof that plaintiffs would put on.  You

11  know, we should have the opportunity to conduct discovery and

12  do that.

13          THE COURT:  Well, I think that was my fault.  I

14  think we've traveled outside of the complaint.  I am grateful

15  for the thorough briefing and for everybody's argument.  I

16  think it's fully briefed and I'll try to give you a decision

17  as soon as I can.

18          Anything else anybody wants to put on the record?

19

20          (Continued on the following page.)

21

22

23

24

25

MOTION HEARING                    33

1         MS. VELAZQUEZ:  No, your Honor.

2         THE COURT:  Okay.

3         MR. GANNAM:  Nothing else.

4         THE COURT:  Okay.  Thanks so much everybody.

5         MR. GANNAM:  Thank you, your Honor.

6         MS. VELAZQUEZ:  Thank you, your Honor.

7         MR. FARBER:  Thank you, your Honor.

8         THE COURT:  And thanks to the court reporter.  We've

9  worn you out.

10                 (Matter Concluded.)

11

12         (Whereupon, the matter was concluded.)

13

14                 *     *     *     *     *

15

16

17  I certify that the foregoing is a correct transcript from the
    record of proceedings in the above-entitled matter.

18

19      s/ Shernelle Griffith

20      SHERNELLE GRIFFITH
        Official Court Reporter
21      Eastern District of New York

22

23

24

25